1  David D. Lawrence, Esq. [State Bar No. 123039]
2  Christina M. Sprenger, Esq. [State Bar No. 205105]
   Daniel S. Cha, Esq. [State Bar No. 260256]
3  LAWRENCE BEACH ALLEN & CHOI, PC
   1600 North Broadway, Suite 1010
4  Santa Ana, California 92706
   Telephone No. (714) 479-0180
5  Facsimile No. (714) 479-0181
   E-Mail: csprenger@lbaclaw.com

6  Attorneys for Defendants,
7  COUNTY OF ORANGE, MICHAEL CARONA, SEAN HILLIARD, JAMES
   FOUSTE, JARRETT KURIMAY, DAVID HERNANDEZ, CYRIL FOSTER,
8  MANUEL GARCIA, MICHAEL PADILLA, IRA ESSOE, MARK
   HERGESHEIMER, MARK KUNAR, MATTHEW PRINCE, AND MICHAEL
9  CARONA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA RASHID RADWAN, | Case No. SACV 08-00786 AG (ANx) |
| Plaintiffs, | **DEFENDANTS JAMES FOUSTE'S, SEAN HILLIARD'S, MATTHEW PRINCE'S, MARK KUNAR'S, MARK HERGESHEIMER'S, IRA ESSOE'S, MICHAEL PADILLA'S, MANUEL GARCIA'S, CYRIL FOSTER'S, DAVID HERNANDEZ'S, AND JARRETT KURIMAY NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR IN THE ALTERNATIVE SUMMARY ADJUDICATION,** |
| vs. | |
| COUNTY OF ORANGE , MICHAEL CARONA, JAMES FOUSTE, SEAN HILLIARD, MATTHEW PRINCE, MARK KUNAR, MARK HERGESHEIMER, IRA ESSOE, MICHAEL PADILLA, MANUEL GARCIA, CYRIL FOSTER, THOMAS STREETER, DAVID HERNANDEZ, JARRETT KURIMAY and DOES 1 through 10, inclusive, | |
| Defendants. | Hearing:<br>Date:   March 29, 2010<br>Time: 10:00 a.m.<br>Crtrm.: 10D<br><br>Discovery Cut-Off: 2/22/10<br>Pre-Trial Conference: 5/3/10<br>Trial Date: 5/18/10 |

*[Individual Defendants' Separate
Statement Of Uncontroverted Facts In
Support Of Their Motion For Summary
Judgment/Summary Adjudication;
Declarations In Support of Defendants'
Motion For Summary Judgment/Summary
Adjudication With Exhibits Attached In
Support Thereof; Notice Of Manual
Filing; Notice Of Lodging Exhibits "A-*

1

*B"; Exhibits "E-G" And Exhibit "J" In Support Of Defendants' Motion For Summary Judgment/Summary Adjudication, Individual Defendants' [Proposed] Judgment, filed concurrently herewith]*

**MATTER FOR DETERMINATION BY THE HONORABLE ANDREW J. GUILFORD**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on March 29, 2010 at 10:00 a.m., in Courtroom 10D of the above-captioned Court located at 411 W. Fourth Street, Santa Ana, California, Defendants, will, and hereby do move for summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56.

This Motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the attached Declarations and Exhibits, and Individual Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law, the pleadings on file herein, and upon such further evidence as may be presented at or before the hearing of this motion.

Alternatively, Defendants James Fouste, Sean Hilliard, Matthew Prince, Mark Kunar, Mark Hergesheimer, Ira Essoe, Michael Padilla, Manuel Garcia, Cyril Foster, David Hernandez, and Jarrett Kurimay respectfully request that the Court summarily adjudicate issues in favor of Defendants as follows:

    1.    Deputy Jarrett Kurimay is entitled to summary adjudication of each of Plaintiff's claims against him because he was not present or otherwise involved in either the Paseo De Colinas or the jail incident.

    2.    Deputy Kunar is entitled to summary adjudication of Plaintiff's excessive force claims because he was not present or otherwise

1 involved in the alleged excessive force either at the Paseo De Colinas
2 or the jail incident.

3.  All individual Defendants except for Sergeant Fouste are entitled to
summary adjudication of Plaintiff's search and seizure claims, to the
extent based on Sergeant Fouste's seizure and search of Plaintiff,
because they were not present or otherwise involved in Sergeant
Fouste's seizure or search of Plaintiff.

4.  Sergeant Fouste is entitled to summary adjudication of Plaintiff's
excessive force claims because he was not present or otherwise
involved in the alleged excessive force either at Paseo De Colinas or
during the jail incident.

5.  Sergeant Essoe is entitled to summary adjudication of Plaintiff's
excessive force claims because he did not participate in any alleged
unreasonable force, and did not otherwise cause any Defendant to use
alleged unreasonable force.

6.  Deputy Hergesheimer is entitled to summary adjudication of
Plaintiff's search and seizure claims because he was not present or
otherwise involved in any search or seizure of Plaintiff or his vehicle.

7.  Deputy Hergesheimer is entitled to summary adjudication of
Plaintiff's excessive force claims to the extent that they are premised
on alleged unreasonable force used after Plaintiff was finished at the
jail's triage counter.

8.  Each individual Defendant is entitled to summary adjudication of each
of Plaintiff's state law claims to the extent that each acted reasonably
and constitutionally with regard to Plaintiff's parallel 42 U.S.C. § 1983
claims.  See, *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1412-
13 (2002).

9.  Plaintiff's 42 U.S.C. § 1983 search and seizure claims related to

3

Sergeant Fouste's seizure and search of Plaintiff fail because Plaintiff pleaded guilty to possession of marijuana in a criminal case arising out of the incident. *See, Heck v. Humphrey*, 512 U.S. 477, 489 (1994).

10. Plaintiff's state law claims related to Sergeant Fouste's seizure and search of Plaintiff fail because Plaintiff pleaded guilty to possession of marijuana in a criminal case arising out of the incident. *See, Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1412-13 (2002); *Yount v. County of Sacramento*, 43 Cal.4th 885, 902 (2008).

11. Defendants are entitled to qualified immunity as to Plaintiff's Fourth Amendment claims.

    a. Sergeant Fouste's initial detention of Plaintiff was a lawful investigatory detention supported by reasonable suspicion of criminal activity.

    b. A reasonable officer could conclude that Sergeant Fouste's initial detention of Plaintiff was a lawful investigatory detention supported by reasonable suspicion of criminal activity.

    c. Sergeant Fouste's investigatory detention of Plaintiff ripened into a lawful arrest of Plaintiff based on probable cause of marijuana possession, after Sergeant Fouste smelled marijuana on Plaintiff's person, and after he told Plaintiff that he smelled marijuana on his person.

    d. A reasonable officer could conclude that Sergeant Fouste's investigatory detention of Plaintiff ripened into a lawful arrest of Plaintiff based on probable cause of marijuana possession, after Sergeant Fouste smelled marijuana on Plaintiff's person, and after he told Plaintiff that he smelled marijuana on his person.

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

e.  Sergeant Fouste's search of Plaintiff's person was a lawful search incident to arrest.

f.  A reasonable officer could conclude that Sergeant Fouste's search of Plaintiff's person was a lawful search incident to arrest.

g.  The search of Plaintiff's Range Rover was a reasonable automobile search because probable cause existed to believe it contained marijuana and it was readily mobile.

h.  A reasonable officer could conclude that the search of Plaintiff's Range Rover was a reasonable automobile search based on probable cause that it contained marijuana and its ready mobility.

i.  The search of Plaintiff's Range Rover was within the scope of a lawful search incident to arrest.

j.  A reasonable officer could conclude that the search of Plaintiff's Range Rover was within the scope of a lawful search incident to arrest.

k.  Deputy Prince's decision to have Plaintiff arrested and booked for violating a court order was based on probable cause.

l.  A reasonable officer could conclude that Deputy Prince's decision to have Plaintiff arrested and booked for violating a court order was based on probable cause.

m.  Defendants' use of force at Paseo De Colinas was objectively reasonable.

n.  A reasonable officer could conclude that Defendants' use of force at Paseo De Colinas was objectively reasonable.

o.  Defendants' use of force at the jail was objectively reasonable.

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

1      p.     A reasonable officer could conclude that Defendants' use of

2              force at the jail was objectively reasonable.

3      q.     Sergeant's Fouste and Essoe did not personally participate in, or

4              otherwise cause, any other Defendants' alleged violations of

5              Plaintiff's First or Fourth Amendment rights, for purposes of a

6              supervisory theory of liability.

7      r.      A reasonable officer could conclude that Sergeants Fouste and

8              Essoe did not violate Plaintiff's First or Fourth Amendment

9              rights under a supervisory theory of liability.

10     s.      No Defendants are liable under a bystander theory of liability

11            for Sergeant Fouste's search and seizure of Plaintiff because no

12            other Defendant had a realistic ability to intercede.

13     t.      A reasonable officer could conclude that no other Defendant had

14            a realistic ability to intercede with regard to Sergeant Fouste's

15            search and seizure.

16     u.     Sergeant Fouste and Deputy Kunar are not liable under a

17            bystander theory of liability for Plaintiff's excessive force

18            claims because they left the scene and did not have a realistic

19            ability to intercede in any alleged excessive force.

20     v.     A reasonable officer could conclude that Sergeant Fouste and

21            Deputy Kunar did not have a realistic ability to intercede in any

22            alleged excessive force.

23     w.    Deputy Hergesheimer is not liable under a bystander theory of

24            liability for Plaintiff's excessive force claims to the extent they

25            are based on Plaintiff's being Tasered and events in the jail after

26            triage, because he did not have a realistic ability to intercede.

27   ///

28   ///

x.   A reasonable officer could conclude that Deputy Hergesheimer did not have a realistic ability to intercede with regard to the Taser and events in the jail after triage.

12. Defendants are entitled to qualified immunity with regard to Plaintiff's First Amendment claims.

a.   There is no evidence any Defendants intended to chill or deter Plaintiff's speech.

b.   Defendants' actions were based on Plaintiff's conduct.

c.   A reasonable officer could conclude that Defendants' actions did not violate Plaintiff's First Amendment rights.

13. There is no separate, cognizable 42 U.S.C. § 1983 claim for conspiracy and Plaintiff cannot show material, specific facts that show a "meeting of the minds" to commit constitutional deprivations in any event.

14. Statutory immunities bar Plaintiff's state law causes of action.

a.   Government Code § 821.6 bars Plaintiff's 7th, 11th, 12th, 13th, and 14th Causes of Action with regard to the Paseo De Colinas incident.

b.   Government Code § 820.8 bars any Defendants' liability for any other Defendant's actions.

15. There is no independent state law cause of action for negligent infliction of emotional distress. *See, Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993).

///
///
///

1    This motion is made following Defendants' good faith attempt to arrange a

2   conference of counsel pursuant to Local Rule 7-3.  (Cha Decl., ¶ 5; Exhibit "N".)

3

4                                  Respectfully submitted,

5   DATED: March 1, 2010            LAWRENCE BEACH ALLEN, & CHOI, PC

6

7                          By_____

8                              DAVID D. LAWRENCE
                               CHRISTINA M. SPRENGER
9                              DANIEL S. CHA
                               Attorneys for Defendant,
10                             COUNTY OF ORANGE, MICHAEL
                               CARONA, SEAN HILLIARD, JAMES
11                             FOUSTE, JARRETT KURIMAY, DAVID
                               HERNANDEZ, CYRIL FOSTER,
12                             MANUEL GARCIA, MICHAEL
                               PADILLA, IRA ESSOE, MARK
13                             HERGESHEIMER, MARK KUNAR,
                               MATTHEW PRINCE, AND MICHAEL
14                             CARONA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.   INTRODUCTION. ..................................................................................... 1

  A.  PARTIES. ............................................................................................. 1

  B.  CAUSES OF ACTION ........................................................................ 1

II.  STATEMENT OF FACTS ......................................................................... 2

III. MANY DEFENDANTS INDISPUTABLY DID NOT USE ANY
     FORCE AT ALL AND/OR DID NOT SEARCH OR SEIZE
     PLAINTIFF. ............................................................................................. 4

IV.  THE *HECK* DOCTRINE BARS PLAINTIFF'S UNREASONABLE
     SEARCH AND SEIZURE CLAIMS REGARDING FOUSTE'S
     SEARCH AND SEIZURE. ....................................................................... 5

V.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY
     AS TO THE FOURTH AMENDMENT CLAIMS. ................................ 7

  A.  The Individual Defendants Are Entitled to Qualified Immunity For
     Plaintiff's Search And Seizure-Related Claims. ................................... 9

    1.   Plaintiff Was Initially Subject To A Reasonable Investigatory
        Detention ......................................................................................... 9

    2.   Sergeant Fouste Arrested Plaintiff Based Upon Probable Cause ............. 10

    3.   Sergeant Fouste's Search of Plaintiff's Person Was A Lawful
        Search Incident To Arrest ............................................................. 11

    4.   The Search Of Plaintiff's Vehicle Was Lawful ........................................ 12

     i.   There Was Probable Cause To Search Plaintiff's Vehicle For
        Drugs. ........................................................................................ 12

     ii.  The Search Of Plaintiff's Vehicle Was A Lawful Search Incident
        To Arrest. ................................................................................... 13

5.    The Decision To Transport Plaintiff To Jail For Booking Was Supported By Probable Cause. ................................................................ 14

B.   The Individual Defendants Are Entitled To Qualified Immunity As To Plaintiff's Excessive Force Claims. ................................................ 15

1.    The Use Of Force At The Arrest Scene Was Reasonable Under The Circumstances. ........................................................................... 16

2.    The Use Of Force At The Jail Was Reasonable Under The Circumstances. ........................................................................... 17

i.    Removing Plaintiff From The Patrol Car And Lifting Him By His Arms And Ankle Cuffs Was Reasonable Under The Circumstances. ........................................................................ 18

ii.    The Placement Of Plaintiff Into A Medical Observation Cell Was Reasonable. .................................................................... 19

C.   The Individual Defendants Are Entitled to Qualified Immunity As To Plaintiff's Fourth Amendment Bystander/Supervisor Liability Claims And First Amendment Supervisory Liability Claims. ............................... 20

VI.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S FIRST AMENDMENT CLAIMS. ........ 21

VII.   PLAINTIFF CANNOT SUPPORT HIS CLAIMS OF A CONSPIRACY UNDER § 1983. ................................................................................. 22

VIII.   STATUTORY IMMUNITIES BAR SEVERAL OF PLAINTIFF'S STATE LAW CLAIMS. ...................................................................... 23

A.   Government Code § 821.6 Bars Plaintiff's 7th, 11th, 12th, 13th, and 14th Causes Of Action With Regard To The Paseo De Colinas Incident. .................................................................................... 23

B.   Government Code § 820.8 Bars Liability For Others' Actions .................... 24

IX.   THERE IS NO SEPARATE CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS. ............................................ 24

ii

1

X.   CONCLUSION. ............................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allyson v. Department of Transp.,*
   53 Cal.App.4th 1304 (1997) ............................................................ 23

*Amylou R. v. County of Riverside,*
   28 Cal.App.4th 1205 (1994) ............................................................ 23

*Arizona v. Gant, __ U.S.__,*
   129 S.Ct. 1710 (2009) .................................................................... 13

*Blackburn v. County of Los Angeles,*
   42 Cal.App.3d 175 (1974) .............................................................. 24

*Burns v. County of King,*
   883 F.2d 819 (9th Cir. 1989) .......................................................... 22

*Caldwell v. Montoya,*
   10 Cal.4th 972 (1995) .................................................................... 23

*Cunningham v. Gates,*
   229 F.3d 1271 (9th Cir. 2000) .................................................. 20, 21

*Eberle v. City of Anaheim,*
   901 F.2d 814 (9th Cir. 1990) .......................................................... 19

*Edson v. City of Anaheim,*
   63 Cal.App.4th 1269 (1998) ............................................................ 16

*Elder v. Holloway,*
   510 U.S. 510 (1994) ........................................................................ 7

*Forrester v. City of San Diego,*
   25 F.3d 804 (9th Cir. 1994) ............................................................ 20

*Gallegos v. City of Los Angeles,*
   308 F.3d 987 (9th Cir. 2002) ............................................................ 9

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

*Gasho v. United States,*
  39 F.3d 1420 (9th Cir. 1994) ........................................................... 7

*Gates v. Superior Court,*
  32 Cal.App.4th 481 (1995) ............................................................. 23

*Graham v. Connor,*
  490 U.S. 386 (1989) ......................................................... 15, 16, 17

*Hansen v. Black,*
  885 F.2d 642 (9th Cir. 1989) ......................................................... 20

*Heck v. Humphrey,*
  512 U.S. 477 (1994) ................................................................ passim

*Hunter v. Bryant,*
  502 U.S. 224 (1991) ........................................................... 7, 8, 11

*Illinois v. Wardlow,*
  528 U.S. 119 (2000) ...................................................................... 9

*In re Demetrius A.,*
  208 Cal.App.3d 1245 (1989) .......................................................... 12

*Johnson v. City of Pacifica,*
  4 Cal.App.3d 82 (1970) ................................................................ 24

*Johnson v. Duffy,*
  588 F.2d 740 (9th Cir. 1978) ......................................................... 20

*Malley v. Briggs,*
  475 U.S. 335 (1986) ...................................................................... 7, 8

*Maryland v. Dyson,*
  527 U.S. 465 (1999) ...................................................................... 12

*Mendocino Environmental Center v. Mendocino County,*
  192 F.3d 1283 (9th Cir. 1999) ....................................................... 21

*Michigan v. Summers,*
  452 U.S. 692 (1981) ...................................................................... 10

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

*Milton v. Nelson,*
   527 F.2d 1158 (9th Cir. 1975) ................................................................ 24

*New York v. Belton,*
   453 U.S. 454 (1981) ............................................................................. 13

*Pearson v. Callahan,*
   129 S.Ct . 808 (2009) ............................................................................ 7

*Pennsylvania v. Labron,*
   518 U.S. 938 (1996) ............................................................................. 13

*Perkins v. City of West Covina,*
   113 F.3d 1004 (9th Cir. 1997) ................................................................ 8

*Potter v. Firestone Tire & Rubber Co.,*
   6 Cal.4th 965 (1993) ...................................................................... 7, 24

*Ramirez v. City of Buena Park,*
   560 F.3d 1012 (9th Cir. 2009) .............................................................. 10

*Rawlings v. Kentucky,*
   448 U.S. 98 (1980) .............................................................................. 12

*Reynolds v. County of San Diego,*
   84 F.3d 1162 (9th Cir. 1996) ................................................................. 8

*Richardson v. Oldham,*
   12 F.3d 1373 (5th Cir. 1994) ................................................................. 8

*Richardson-Tunnell v. School Ins. Program for Employees,*
   157 Cal.App.4th 1056 (2007) ............................................................... 23

*Rizzo v. Goode,*
   423 U.S. 362 (1976) ............................................................................ 20

*Saucier v. Katz,*
   533 U.S. 194 (2001) ................................................................ 7, 8, 18, 19

*Sloman v. Tadlock,*
   21 F.3d 1462 (9th Cir. 1994) ................................................................ 21

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

*Susag v. City of Lake Forest,*
   94 Cal.App.4th 1401 (2002) ................................................................... passim

*Thornton v. United States,*
   541 U.S. 615 (2004) ................................................................................ 13

*Thorsted v. Kelly,*
   858 F.2d 571 (9th Cir. 1988) ................................................................. 7

*Ting v. United States,*
   927 F.2d 1504 (9th Cir. 1991) ............................................................... 22

*U.S. v. Richard,*
   732 F.Supp. 656 (W.D. Va. 1990) ................................................... 10, 11

*United States v. Del Vizo,*
   918 F.2d 821 (9th Cir.1990) .................................................................. 10

*United States v. Humphries,*
   372 F.3d 653 (4th Cir. 2004) ................................................................. 11

*United States v. Robertson,*
   833 F.2d 777 (9th Cir. 1987) ................................................................. 10

*United States v. Robinson,*
   414 U.S. 218 (1973) ............................................................................... 12

*United States v. Ross,*
   456 U.S. 798 (1982) .......................................................................... 12, 13

*Virginia v. Moore,*
   553 U.S. 164 (2008) ............................................................................... 10

*Woodrum v. Woodward County, Okl.,*
   866 F.2d 1121 (9th Cir. 1989) ............................................................... 22

*Yount v. County of Sacramento,*
   43 Cal.4th 885 (2008) ...................................................................... passim

**Statutes**

42 U.S.C. § 1983 ..................................................................................... passim

California Civil Code § 52 ..................................................................... 24

California Civil Code § 52.1 ............................................................ 2, 24

California Government Code § 820.8 ...................................................... 24

California Government Code § 821.6 ............................................... 23, 24

California Health & Safety Code § 11357(b) ......................................... 14

California Penal Code § 166(a)(4) ......................................................... 15

**Other Authorities**

United States Constitution, Fourth Amendment ............................... passim

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION.**

This case arises from the interaction between Plaintiff Radwan and Orange County Sheriff's Deputies during his arrest and subsequent booking at the Orange County Jail on December 23-24, 2006.  Plaintiff alleges that his detention, search and arrest violated the Fourth Amendment and state law; that the force used against him during his arrest was unreasonable under the Fourth Amendment and state law; that his First Amendment rights were violated; and that his treatment at the jail violated the Fourth Amendment and state law.

**A.    PARTIES.**

The parties in this lawsuit are as follows:

**Plaintiff**:  Joshua Rashid Radwan

**Defendants**:  County of Orange, Michael Carona[1], Sean Hilliard, James Fouste, Jarrett Kurimay, David Hernandez, Cyril Foster, Manuel Garcia, Michael Padilla, Ira Essoe, Mark Hergesheimer, Mark Kunar, and Matthew Prince.

**B.    CAUSES OF ACTION:**

**1st Cause of Action**: 42 U.S.C. § 1983 – 4th Amendment Unlawful Search and Seizure (against County of Orange, Carona, Fouste, Hilliard, Prince, Kunar, and Hergesheimer);

**2nd Cause of Action**: 42 U.S.C. § 1983 – 4th Amendment Excessive Force (against all Defendants);

**3rd Cause of Action**: 42 U.S.C. § 1983 – 1st Amendment Free Speech (against all Defendants);

**4th Cause of Action**: 42 U.S.C. § 1983 – 4th Amendment Bystander Liability (against All Defendants);

---

[1] Plaintiff's claims against Defendant County of Orange and Defendant Carona are addressed in a separate Motion for Summary Judgment/Summary Adjudication filed concurrently herewith.

1     **5th Cause of Action**: 42 U.S.C. § 1983 – 1st and 4th Amendments

2 Supervisor Liability (against Fouste and Essoe);

3     **6th Cause of Action**: 42 U.S.C. § 1983 – 4th Amendment Failure to Train

4 (against County of Orange and Carona);

5     **7th Cause of Action**: State Law – False Arrest/False Imprisonment (against

6 all Defendants);

7     **8th Cause of Action**: State Law – Battery (against all Defendants);

8     **9th Cause of Action**: State Law – Assault (against all Defendants);

9     **10th Cause of Action**: State Law – Negligence [Supervision and Training]

10 (against County of Orange and former Sheriff Carona);

11     **11th Cause of Action**: State Law – Negligence (against all Defendants);

12     **12th Cause of Action**: State Law – Negligent Infliction of Emotional

13 Distress (against all Defendants);

14     **13th Cause of Action**: Intentional Infliction of Emotional Distress (against

15 all Defendants); and

16     **14th Cause of Action**: State Law – Violation of Civil Code § 52.1 (against

17 all Defendants).

18 **II.    STATEMENT OF FACTS.**[2]

19     On December 23, 2006, Orange County Sheriff's Deputies received a report

20 that a person had been observed kicking another individual next to a Range Rover.

21 Sergeant Fouste made contact with Joshua Radwan ("Plaintiff") and Cassandra

22 Fults, a girlfriend, next to Plaintiff's Range Rover. Fults was crying. After Fouste

23 ordered Plaintiff to approach, Fouste smelled unburned marijuana on Plaintiff's

24 person. Fouste told Plaintiff he smelled the marijuana. Fouste then searched

25 Plaintiff. This search revealed pepper spray and a tablespoon of marijuana.

26

27   [2] The following is a brief summary of the material facts in this case. Defendants'

28 Separate Statement of Undisputed Material Facts and supporting evidence are filed concurrently herewith.

1    In the meantime, Deputies Hilliard, Prince, and Kunar[3] had arrived.  Deputy

2    Prince informed Plaintiff he had been placed under arrest for possession of

3    marijuana and began a search of the vehicle.  Prince found three knives in the

4    vehicle, which Plaintiff later admitted were in his possession.  Hilliard ran a records

5    check on Plaintiff, and discovered he was subject to a protective order.  One

6    database showed Plaintiff was prohibited from possessing firearms or "other

7    weapons;" another database only showed a prohibition on firearms.  Prince decided

8    to also arrest and book Plaintiff for violation of the protective order based on the

9    pepper spray and knives.

10   Fouste and Kunar left the scene.  Reserve Deputy Hergesheimer[4] arrived to

11   transport Plaintiff to jail.  Hergesheimer began searching Plaintiff and switching out

12   the handcuffs.  Plaintiff physically resisted the Deputies.  He was also verbally

13   aggressive and did not comply with their orders.  This eventually resulted in

14   Prince's placing Plaintiff on the grass part of the sidewalk.  When Plaintiff

15   continued to struggle, Prince thought he may have been trying to get to a fighting

16   stance.  Prince thereupon used a single, five second "drive stun" Taser shot against

17   Plaintiff, after which Plaintiff stopped resisting.  He was then secured by ankle

18   cuffs and placed in the back of Hergesheimer's patrol car.

19   At the jail, Plaintiff refused to extract himself from the patrol car, screamed

20   as he refused to walk, and demanded to be carried.  When he dropped to the

21   ground, the Deputies at the jail carried him inside; once Deputy Garcia lifted

22   Plaintiff's legs by the ankle cuffs, Plaintiff stopped screaming.  Once inside,

23   Plaintiff made suicidal comments.  Plaintiff again refused to walk, screamed, and

24   dropped to the ground.  This prompted Deputy Padilla to divert Plaintiff to a

25   medical observation cell.  Deputies once again had to carry him.  Inside the cell,

26   Plaintiff was laid prone on the floor, his clothes were removed as a safety measure

27   _____

28   [3] Now Sergeant Kunar.
     [4] Now Reserve Lieutenant Hergesheimer.

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

1   due to his suicidal ideations, and his restraints were removed.  The Deputies

2   utilized control holds to prevent Plaintiff from being able to strike or struggle.  In

3   addition, Garcia was able to remove Plaintiff's socks without difficulty, even

4   though the ankle cuffs had been applied over them.

5       Plaintiff eventually pled guilty to his possession of marijuana.

6   **III.**   **MANY DEFENDANTS INDISPUTABLY DID NOT USE ANY FORCE**

7   **AT ALL AND/OR DID NOT SEARCH OR SEIZE PLAINTIFF.**

8       Plaintiff alleges violations of both federal constitutional and state law, based

9   on his allegations of excessive force and unreasonable seizure against all individual

10  Defendants.  However, undisputed material facts clearly demonstrate that

11  Plaintiffs' claims are not equally founded.

12      First, it is undisputed that Deputy Jarrett Kurimay was not present or

13  otherwise involved in either the patrol or the jail incident. (SS 181, 183)

14  Accordingly, each of Plaintiff's claims against Deputy Jarrett Kurimay must fail on

15  this basis alone.  Second, it is undisputed that Kunar did not use any physical force

16  against Plaintiff, and that he did not arrive at the subject location until after the

17  detention and arrest for possession of marijuana, and that he left the scene before

18  any alleged excessive force took place.  Moreover, Kunar undisputedly was not

19  involved in the decision whether Plaintiff should be arrested and booked for

20  apparently violating a court's restraining/protective order.  Therefore, Plaintiff's

21  claims against Kunar should be dismissed on this basis alone.

22      Third, it is also undisputed that Fouste left the scene of the patrol incident

23  before any alleged excessive force.  Accordingly, any force-related claims against

24  Fouste should be dismissed on this basis alone.  In addition, it is undisputed that

25  Fouste initiated the contact with Plaintiff without other deputies present, and that he

26  began searching Plaintiff before other deputies were present.  As a result, Plaintiff's

27  unreasonable search and seizure-related claims based on Fouste's actions cannot

28  survive as against any other Defendants.

Fourth, it is undisputed that Essoe did not even touch Plaintiff, much less use any excessive or unreasonable physical force against Plaintiff. Nor did he cause any Defendant to use unreasonable force against Plaintiff. Plaintiff's excessive force claims against Essoe should therefore be dismissed on this basis alone.

Fifth, it is undisputed that none of the jail deputy Defendants related to the incident at the Orange County Jail were at Paseo De Colinas during the incident in which Plaintiff was seized. As a result, claims related to the Paseo De Colinas incident should be dismissed with regard to Hernandez, Garcia, Padilla, and Essoe on this basis alone. Similarly, none of the deputies involved in the incident at Paseo De Colinas were involved in the jail incident, except Hergesheimer. As a result, any claims regarding the jail incident should be dismissed with regard to Prince, Hilliard, Kunar, and Fouste on this basis alone.

Sixth, Hergesheimer was not present for the search and seizure of Plaintiff. Furthermore, Hergesheimer's involvement at the jail terminated after the triage screening. Accordingly, Hergesheimer is entitled to summary adjudication of any search and seizure-related claims, and with regard to any excessive force-related claims regarding any use of force after the triage screening, on that basis alone.

Finally, as these Defendants acted reasonably and constitutionally, as set forth below, they are also entitled to have the related state law claims dismissed as well. *See, Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1412-13 (2002).

## IV.   THE *HECK* DOCTRINE BARS PLAINTIFF'S UNREASONABLE SEARCH AND SEIZURE CLAIMS REGARDING FOUSTE'S SEARCH AND SEIZURE.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court addressed the connection between a 42 U.S.C. § 1983 action and a plaintiff's criminal conviction:

" [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it

1    would, the complaint must be dismissed unless the plaintiff can

2    demonstrate that the conviction or sentence has already been

3    invalidated."

4    *Id.* at 486-87.

5        The Supreme Court clarified that a cause of action under 42 U.S.C. § 1983

6    that would imply the invalidity of a conviction does not even accrue until the

7    conviction or sentence has been invalidated. *Id.* at 489. Similarly, the California

8    Court of Appeal in *Susag, supra*, held that a state law cause of action that would

9    imply the invalidity of a criminal conviction is barred unless and until the

10   conviction has been invalidated. *Susag*, 94 Cal.App.4th at 1412-13. Subsequently,

11   the California Supreme Court affirmed *Susag* and confirmed that state law causes

12   of action that would imply the invalidity of a conviction are barred until they have

13   been invalidated. *Yount v. County of Sacramento*, 43 Cal.4th 885, 902 (2008).

14       In this case, it is undisputed that Plaintiff pled guilty to, and was convicted

15   of, possession of marijuana as a result of his arrest during the incident. (Separate

16   Statement of Undisputed Material Fact ("SS") 181) Plaintiff's claim that Fouste's

17   search of Plaintiff was unconstitutional necessarily implies the invalidity of his

18   conviction as the search revealed the marijuana in his possession. Similarly,

19   Plaintiff's claim that the initial investigatory detention/arrest was unconstitutional

20   also necessarily implies the invalidity of Plaintiff's conviction. That is because the

21   investigatory detention/arrest led directly to the search. Therefore, under *Heck*,

22   Plaintiff has no § 1983 claim for unreasonable search or seizure for Fouste's initial

23   investigatory detention/arrest or search of his person. Similarly, under

24   *Susag/Yount*, Plaintiff has no state law causes of action with regard to Fouste's

25   initial investigatory detention/arrest and search of his person.

26   ///

27   ///

28   ///

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

## V.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO THE FOURTH AMENDMENT CLAIMS.

Notwithstanding *Heck* and *Susag/Yount*, the individual Defendants are entitled to qualified immunity. Police officers are entitled to qualified immunity from liability under 42 U.S.C. § 1983. *Thorsted v. Kelly*, 858 F.2d 571 (9th Cir. 1988). Qualified immunity is designed to shield from liability, "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). "The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510 (1994).[5] A determination of qualified immunity is particularly appropriate for summary judgment. The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "[T]he entitlement is an *immunity from suit* rather than a mere defense to liability." *Id.* (emphasis in original).

In a suit against a police officer for an alleged violation of a constitutional right, the court must consider a two-part test. *Saucier v. Katz*, 533 U.S. 194 (2001) (abrogated as to the rigidity of the sequence of the test in *Pearson v. Callahan*, 129 S.Ct . 808, 818 (2009)). The first inquiry is whether the facts alleged, in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right. *Id.* at 2156. If no constitutional right would have been violated, the defendant is entitled to qualified immunity.[6] *Id.*

---

[5] The doctrine assumes that officers do not "knowingly violate the law." *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). To overcome the presumption of immunity, "a plaintiff must show that the officer's conduct was so egregious that any reasonable person would have recognized a constitutional violation."

[6] In addition, any state law claims based on the same alleged misconduct should also be dismissed. *See, Susag*, 94 Cal.App.4th at 1412-13.

Assuming a plaintiff clears the first hurdle of the qualified immunity test, the second inquiry is whether the right was clearly established. *Saucier*, 533 U.S. at 2156. A broad inquiry is not enough: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. The plaintiff has the burden to establish the right allegedly violated was clearly established at the time of the alleged misconduct. *Perkins v. City of West Covina*, 113 F.3d 1004, 1008 (9th Cir. 1997). The inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201; *see*, *Richardson v. Oldham*, 12 F.3d 1373, 1381 (5th Cir. 1994) (the plaintiff must demonstrate "the illegality of the challenged conduct was clearly established in factual circumstances closely analogous to those of [the] case [at bar].").

If a reasonable officer in the defendant's position could have believed his conduct was lawful in light of clearly established law, he is entitled to qualified immunity. *Hunter*, 502 U.S. at 227. "The inquiry is not 'whether another reasonable or more reasonable interpretation of the events can be constructed... after the fact.' [Citation]. Rather, the issue is whether a reasonable officer could have believed that his conduct was justified." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996) (citation omitted). Hence, if government agents "of reasonable competence" could disagree on whether a chosen course of action is constitutional, "immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As discussed above, several Defendants patently could not have violated Plaintiff's constitutional rights (either at all, or with regard to specific claims and incidents), and therefore, are entitled to qualified immunity on this ground alone.

8

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

In addition, as set forth more fully below, the individual Defendants are entitled to qualified immunity because the search and seizure of Plaintiff was reasonable, any use of force against Plaintiff was reasonable, and in any event reasonable officers could have believed that the search and seizure, and uses of force were reasonable under the circumstances.

### A.   The Individual Defendants Are Entitled to Qualified Immunity For Plaintiff's Search And Seizure-Related Claims.

Again, notwithstanding the *Heck* and *Susag/Yount* bar, Plaintiff's search and seizure claims fail and/or Defendants are entitled to qualified immunity.

### 1.   Plaintiff Was Initially Subject To A Reasonable Investigatory Detention.

The Fourth Amendment authorizes brief, investigatory seizures (or *Terry* stops), so long as police have reasonable, articulable suspicions of criminal activity. *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002). "The reasonable suspicion standard 'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). When Fouste arrived at the scene, he was responding to reports of an assault next to a Range Rover. Accordingly, when he saw Plaintiff and a crying woman next to Plaintiff's Range Rover, there was reasonable suspicion that Plaintiff was the reported assaulter.

Therefore, Fouste's initial commands for Plaintiff to approach and turn around were part of a reasonable investigatory detention and such conduct was not an unreasonable seizure. Moreover, against this legal backdrop, even if these actions are deemed to have been unconstitutional—which they did not—a reasonable officer in Fouste's position could have believed his actions were reasonable under the circumstances. Accordingly, Defendants are entitled to qualified immunity for unreasonable seizure claims related to the initial detention.

## 2.   <u>Sergeant Fouste Arrested Plaintiff Based Upon Probable Cause.</u>

Even if *Heck* and *Susag/Yount* did not bar Plaintiff's search and seizure claims regarding Fouste's initial detention/arrest, his actions were reasonable and constitutional.  The Fourth Amendment requires probable cause before making a warrantless arrest. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009); *see also, Michigan v. Summers*, 452 U.S. 692, 700 (1981).  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Ramirez*, 560 F.3d at 1023. "[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 1604 (2008).

The first issue is when the investigatory detention of Plaintiff turned into an arrest.  "A *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons." *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir. 1987).  If the stop proceeds beyond these limitations, an arrest occurs, which requires probable cause. *Id.*  "There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning." *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir.1990).  Accordingly, a *Terry* stop ripens into an arrest at the point where the police have probable cause to arrest. *See, U.S. v. Richard*, 732 F.Supp. 656, 663 (W.D. Va. 1990).  In *Richard*, several criminal defendants were subject to an investigatory detention when a police dog alerted to the presence of drugs among their possessions. *Id.* at 659.  The defendants were not formally told they were placed under arrest until after they had been transported from the scene and further investigation revealed the precise location and amount of drugs. *Id.*  The

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

1  court ruled the seizure had ripened into an arrest the moment the dog alerted to
2  the drugs, because at that moment, "the suspects were no longer free to leave, nor
3  would a reasonable man have felt that they were." *Id.* at 663.  Similarly, in the
4  instant case, Plaintiff could not have felt that he was free to leave when Fouste
5  told him that he had detected the marijuana.

6      Specifically, Fouste smelled the odor of unburned marijuana when Plaintiff
7  approached him. (SS 11) Accordingly, Fouste had probable cause to arrest
8  Plaintiff for possession of marijuana.  *United States v. Humphries*, 372 F.3d 653,
9  659-660 (4th Cir. 2004) ("[I]f an officer smells the odor of marijuana in
10  circumstances where the officer can localize its source to a person, the officer has
11  probable cause to believe that the person has committed or is committing the
12  crime of possession of marijuana.").  Moreover, Fouste told Plaintiff that he
13  smelled marijuana on his person (SS 12); Prince also informed Plaintiff he was
14  under arrest before Prince began searching the Range Rover (SS 39).
15  Accordingly, as in *Richards*, Plaintiff was not free to leave, nor would a
16  reasonable person have felt that he was.  As a result, at that point, Plaintiff was
17  under arrest.

18      Therefore, Fouste's arrest of Plaintiff did not violate the Fourth
19  Amendment.  Furthermore, even if Fouste's arrest in fact lacked probable cause,
20  though it did not, a reasonable officer in his position could have believed the
21  arrest was justified.  Even an officer who reasonably, but incorrectly, concludes
22  probable cause exists for an arrest is entitled to qualified immunity.  *Hunter*, 502
23  U.S. at 227.  For that reason as well, Defendants are entitled to qualified
24  immunity for Plaintiff's unreasonable seizure-related claims.

25      **3.    Sergeant Fouste's Search of Plaintiff's Person Was A**
26          **Lawful Search Incident To Arrest.**

27      Again notwithstanding *Heck* and *Susag/Yount*, Fouste's search of
28  Plaintiff's person was a lawful search incident to arrest.  "A custodial arrest of a

1  suspect based on probable cause is a reasonable intrusion under the Fourth

2  Amendment; that intrusion being lawful, a search incident to the arrest requires no

3  additional justification… a full search of the person [arrested] is not only an

4  exception to the warrant requirement of the Fourth Amendment, but is also a

5  'reasonable' search under that Amendment." *United States v. Robinson*, 414 U.S.

6  218, 235 (1973).  Indeed, a search incident to arrest is lawful even where the

7  officer has no present intention of booking the suspect.  *In re Demetrius A.*, 208

8  Cal.App.3d 1245, 1248 (1989).

9          In this case, as noted above, Fouste arrested Plaintiff on probable cause of

10  marijuana possession.  Accordingly, the search of his person was reasonable under

11  the Fourth Amendment.  Even if, for purposes of argument only, Plaintiff was not

12  arrested until he was handcuffed shortly after the search, it still was a constitutional

13  search incident to arrest, because there was probable cause independent of the fruits

14  of the search, and the arrest followed quickly on the heels of the search.  *Rawlings*

15  *v. Kentucky*, 448 U.S. 98, 110-111 n. 6 (1980).  And, even if the search violated the

16  Fourth Amendment, though it did not, a reasonable officer in Fouste's position

17  could have believed the search was reasonable.  For that reason as well, Fouste is

18  entitled to qualified immunity for Plaintiff's unreasonable search-related claims[7].

19          **4.    The Search Of Plaintiff's Vehicle Was Lawful.**

20          **i.    There Was Probable Cause To Search Plaintiff's Vehicle**

21          **For Drugs.**

22          "[W]here there was probable cause to search a vehicle 'a search is not

23  unreasonable if based on facts that would justify the issuance of a warrant, even

24  though a warrant has not been actually obtained.'"  *Maryland v. Dyson*, 527 U.S.

25  465, 467 (1999) (quoting, *United States v. Ross*, 456 U.S. 798, 809 (1982)).  "If a

26

----

27  [7] Hergesheimer's search of Plaintiff was similarly reasonable as he took custody of

28  Plaintiff, Plaintiff remained under arrest, and the original search was conducted by
Fouste, who was no longer at the scene.

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Id.* (quoting, *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)).

In this case, a lawful search[8] of Plaintiff's person revealed a quantity of marijuana. (SS 17) Plaintiff had been recently driving his Range Rover. On that basis alone, probable cause existed to believe that the vehicle contained more contraband, and the Range Rover was readily mobile. As a result, the search of the vehicle was a valid and lawful "automobile search" that did not violate the Fourth Amendment. In addition, even if the search violated the Fourth Amendment, which it did not, a reasonable officer could have believed the search was justified as an "automobile search." For that reason as well, Defendants are entitled to qualified immunity as to Plaintiff's claims related to the search of the car.

### ii. The Search Of Plaintiff's Vehicle Was A Lawful Search Incident To Arrest.

A search incident to the lawful arrest of a recent occupant of an automobile may include the passenger compartment of the automobile where it is reasonable to believe that evidence of the offense of arrest is in the vehicle. *Arizona v. Gant*, __ U.S.__, 129 S.Ct. 1710, 1723 (2009); *see also, Thornton v. United States*, 541 U.S. 615, 629-31 (2004) (Scalia, J., concurring).

> "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' [Citation]. In [... cases], including [*New York v. Belton*, 453 U.S. 454 (1981) (possession of marijuana)] and *Thornton* [*supra*, (possession of marijuana and cocaine)], the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein."

---

[8] Again, *Heck* and *Susag/Yount* prevent Plaintiff from claiming otherwise.

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

1   *Gant*, 129 S.Ct at 1719 (citations omitted).

2       As established above, Fouste arrested Plaintiff on probable cause that he

3   possessed marijuana.  Moreover, a search of Plaintiff's person incident to the arrest

4   revealed that he indeed possessed marijuana.  Accordingly, Plaintiff's offense of

5   arrest (possession of marijuana) and his actual possession of marijuana supplied the

6   basis for searching the passenger compartment of his vehicle.  Therefore, the search

7   of the Range Rover was a lawful search incident to arrest, and did not violate the

8   Fourth Amendment.  In addition, even if the search violated the Fourth

9   Amendment, which it did not, a reasonable officer could have believed the search

10  was a lawful search incident to arrest.  For that reason as well, Defendants are

11  entitled to qualified immunity as to Plaintiff's claims related to the vehicle search.

12      **5.   The Decision To Transport Plaintiff To Jail For Booking**

13           **Was Supported By Probable Cause.**

14      When Fouste arrested Plaintiff, there was probable cause to believe he

15  possessed an unknown quantity of marijuana.  The search of his person revealed

16  approximately one tablespoon of marijuana.  Pursuant to the search of the Range

17  Rover, no further marijuana was discovered.  Accordingly, based on the amount of

18  marijuana, Plaintiff would not have been taken to jail for booking if he had

19  satisfactory evidence of identity and agreed to appear in court.  Health & Safety

20  Code § 11357(b).

21      However, Fouste's search of Plaintiff's person discovered a can of pepper

22  spray foam. (SS 17) In addition, Prince discovered three knives in the Range Rover.

23  (SS 24-26) Hilliard had performed a records check and discovered Plaintiff was

24  subject to a court protective/restraining order.  One database showed the order

25  prohibited him from possessing any firearms "or other weapons."  Another

26  database did not mention a prohibition on weapons other than firearms. (SS 31-34)

27  Prince then called "Control One," the Orange County Sheriff's Department's

28  custodian of Orange County-issued court orders, for guidance.  "Control One" was

1   unable to shed any light, either on the issue of whether the order in fact prohibited

2   "other weapons" or whether pepper spray or knives constituted such "other

3   weapons." (SS 35-36)

4        Based on the information known to Prince, there was probable cause to

5   believe Plaintiff violated the court order, a misdemeanor. Penal Code § 166(a)(4).

6   As a result, the decision to transport Plaintiff to jail for booking did not violate the

7   Fourth Amendment. Furthermore, a reasonable officer in his position could have

8   reasonably believed that the decision to arrest and book Plaintiff for violation of

9   Penal Code § 166(a)(4) was justified. For that reason as well, Defendants are

10  entitled to qualified immunity for Plaintiff's unreasonable seizure-related claims.

11      **B.**   **The Individual Defendants Are Entitled To Qualified Immunity**

12          **As To Plaintiff's Excessive Force Claims.**

13       Under the Fourth Amendment, "the right to make an arrest or investigatory

14  stop necessarily carries with it the right to use some degree of physical coercion or

15  threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). A court

16  must consider "the severity of the crime at issue, whether the suspect poses an

17  immediate threat to the safety of the officers or others, and whether he is actively

18  resisting arrest or attempting to evade arrest by flight." *Id.* "The reasonableness of

19  a particular use of force must be judged from the perspective of a reasonable officer

20  on the scene, rather than the 20/20 vision of hindsight. *Id.* Indeed, "[t]he calculus

21  of reasonableness must embody allowance for the fact that police officers are often

22  forced to make split-second judgments-in circumstances that are tense, uncertain,

23  and rapidly evolving-about the amount of force that is necessary in a particular

24  situation." *Id.* at 396-97.

25       Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in

26  the peace of a judge's chambers… violates the Fourth Amendment. The calculus of

27  reasonableness must embody allowance for the fact that police officers are often

28  forced to make split-second judgments-in circumstances that are tense, uncertain,

1   and rapidly evolving-about the amount of force that is necessary in a particular

2   situation." *Graham*, 490 U.S. at 396-97 (internal quotation omitted).  California

3   courts apply the same analysis to related state claims of assault and battery by

4   police officers, and the burden is on the plaintiff to demonstrate the force used was

5   unreasonable.  *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998).

### 1. The Use Of Force At The Arrest Scene Was Reasonable Under The Circumstances.

8       The undisputed facts regarding the use of force at Paseo De Colinas,

9   including the conclusive patrol video footage from Hergesheimer's patrol car,

10  establish that Prince, Hilliard, and Hergesheimer only used reasonable force to

11  overcome Plaintiff's physical resistance.  Once Plaintiff was walked over to the

12  hood of Hergesheimer's patrol car, Hergesheimer began to search Plaintiff and

13  began to change the handcuffs on his wrists.  Hergesheimer began to bend Plaintiff

14  over the hood of the car so he could facilitate his search and the exchange of

15  handcuffs without placing Plaintiff into a more uncomfortable position.  (SS 58-60,

16  62) Hergesheimer told Plaintiff to spread his feet apart.

17      As shown in the video footage, Plaintiff refused to comply and physically

18  resisted.  Plaintiff turned his upper body to look back at the Deputies, arched his

19  back, and kept trying to bring his legs together – aggressive actions that a

20  reasonable officer would have interpreted as posing a risk of danger (from spitting

21  or turning to strike and kick). (SS 64, 68) Then, Prince placed his hand on

22  Plaintiff's neck to keep him from turning or arching his back up off the hood.  The

23  video shows Plaintiff's neck straining to arch his neck and back; at one point, he

24  suddenly relaxed, and Prince's counter-pressure pushes Plaintiff's head into the

25  hood. (SS 72, 76) Plaintiff aggressively challenged them to kill him. (SS 77)

26      Despite repeated warnings to stop resisting, Plaintiff continued to physically

27  resist and Prince took Plaintiff down to the grass portion of the sidewalk, as

28  Hergesheimer went to the trunk to retrieve ankle cuffs. (SS 70-82) Hilliard held

1  Plaintiff's legs to prevent Plaintiff from kicking. (SS 84) Plaintiff was rolling back
2  and forth, and attempting to lift his legs. (SS 83) Prince reasonably thought Plaintiff
3  was attempting to get to his knees to establish a fighting stance. (SS 85) When
4  Plaintiff continued to physically resist, Prince deployed a single five-second "drive
5  stun" Taser shock to Plaintiff. (SS 87)

6      Immediately after the application of the Taser, Plaintiff stopped physically
7  resisting and the Deputies were able to secure his legs in ankle cuffs. (SS 88-90)
8  Plaintiff was then placed in the back seat of Hergesheimer's vehicle.  Plaintiff
9  complained once that the ankle cuffs were tight, but later, at the jail, Plaintiff's
10 shoes and socks were removed without difficulty, though the ankle cuffs had been
11 applied outside his socks. (SS 143-144) Moreover, during the trip to jail, Plaintiff is
12 seen moving about in the back seat without pain, further indicating Plaintiff was not
13 in great pain or discomfort; at one point, he tries to shrug his jacket back over his
14 shoulders. (SS 96-99)

15      In light of the foregoing evidence, the situation facing Prince, Hilliard, and
16 Hergesheimer constituted a paradigm of "circumstances that are tense, uncertain,
17 and rapidly evolving." *Graham*, 490 U.S. at 396-97.  Therefore, the "split-second
18 judgments" to use force and to apply the Taser to subdue Plaintiff were not
19 unreasonable.  Moreover, a reasonable officer in the Defendants' position could
20 have reasonably believed that the force used against Plaintiff, including the one
21 five-second "drive stun" application of the Taser, was reasonable and justified.  For
22 that reason as well, the individual Defendants are entitled to qualified immunity for
23 Plaintiff's unreasonable force claims related to the Paseo De Colinas incident.

24      ## 2.   The Use Of Force At The Jail Was Reasonable Under The
25      ## Circumstances.

26      The video footage from Hergesheimer's patrol car and the handheld jail
27 video establish that Defendants used only as much force as was reasonable.

28

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

### i. Removing Plaintiff From The Patrol Car And Lifting Him By His Arms And Ankle Cuffs Was Reasonable Under The Circumstances.

First, the videos establish that the Defendants cautiously and carefully removed Plaintiff from the patrol vehicle. Padilla initially opened the right rear door, but since Plaintiff's back was facing the door and he had ankle restraints, Padilla moved to the left rear door (SS 105, 107-108); otherwise, Plaintiff could have fallen backward out of the car. Plaintiff was then ordered to exit feet-first. Plaintiff slid over, but said he could not go further. Plaintiff specifically asked the Deputies to pull his feet out for him. (SS 110-111) Accordingly, pulling Plaintiff out was the only way to extract Plaintiff from the patrol car; Padilla and Foster pulled his feet out. Then, Hergesheimer and Padilla began to lead Plaintiff to the entry door. Plaintiff began screaming and asked to be carried. After several steps, Plaintiff stopped walking and went to the ground. (SS 118) Garcia then lifted Plaintiff's legs by picking up the ankle cuffs' chain as Hergesheimer and Padilla each held one of Plaintiff's arms. (SS 120) Significantly, Plaintiff stopped screaming, indicating that any pain or discomfort had been alleviated when Garcia lifted the chain. This lifting scenario was repeated inside the jail after triage – Plaintiff screamed, refused to walk, and was lifted by his arms and his ankle cuffs (Foster took Hergesheimer's place at Plaintiff's left arm). (SS 129-132, 135-136) Plainly, these actions were reasonable. Plaintiff expressly requested to be carried, and stopped screaming once Garcia lifted his legs by grabbing the ankle cuff chain. The same holds true for the repeat scenario inside the jail. Accordingly, the individual Defendants did not use unreasonable force in removing Plaintiff from the patrol car and by carrying him by his arms and legs.

Moreover, a reasonable officer in Defendants' position could reasonably have believed that such actions were reasonable. Indeed, in the seminal case of *Saucier v. Katz*, the defendant and another officer carried the plaintiff away from a

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

1   demonstration by his arms. *Saucier*, 533 U.S. at 198. The Supreme Court

2   determined that the defendant was entitled to qualified immunity because there was

3   no clearly established law that the use of force was prohibited. *Id.* at 209.

4   Similarly, Plaintiff cannot meet his burden of showing clearly established law

5   prohibited Defendants' extraction and carrying of Plaintiff. For this reason as well,

6   Defendants are entitled to qualified immunity with regard to Plaintiff's removal

7   from the patrol car and carrying into the jail, and to the medical observation cell.

8        ii.   **The Placement Of Plaintiff Into A Medical Observation Cell**

9             **Was Reasonable.**

10       The evidence demonstrates that Plaintiff was uncooperative and that the

11  limited actions depicted in the conclusive jail video footage were necessary to

12  effectuate his diversion to a medical observation cell. Jail personnel must be

13  allowed to employ reasonable and limited physical actions to complete these

14  procedures in the jail setting, especially when dealing with persons who may be

15  intoxicated and assaultive, and who are not complying with orders. Indeed,

16  Plaintiff had exhibited bizarre behavior consistent with intoxication, expressing

17  suicidal thoughts to the triage nurse, screaming, falling to the floor and refusing to

18  walk. (SS 125-127, 133) Moreover, the minimal physical contact during the

19  diversion was reasonable to maintain control of Plaintiff and prevent any

20  opportunity for him to resist or strike a deputy. The contact was no more than

21  necessary; indeed, the footage shows that after the Deputies exited the cell, Plaintiff

22  was able to roll on his right side and move his arms. (SS 168) Moreover, the

23  Sobering Cell Activity Log shows that Plaintiff was subsequently able to move

24  about, stand, and even kick the door. (SS 170-179)

25       Furthermore, even if the control holds used by Hernandez, Foster, Garcia,

26  and Padilla caused some pain, their use was objectively reasonable and a

27  reasonable officer could conclude that they were reasonable. *See, Eberle v. City of*

28  *Anaheim*, 901 F.2d 814, 819-20 (9th Cir. 1990) (use of a finger-hold

to prevent belligerent football fan from entering altercation between another individual and officers was objectively reasonable); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (use of "pain compliance techniques" to remove demonstrators blocking access to an abortion clinic was objectively reasonable).  At the very least, the alleged actions of Hernandez, Foster, Garcia, and Padilla cannot be said to have violated clearly established Fourth Amendment law.

C.  **The Individual Defendants Are Entitled to Qualified Immunity As To Plaintiff's Fourth Amendment Bystander/Supervisor Liability Claims And First Amendment Supervisory Liability Claims.**

A plaintiff must establish a § 1983 defendant's personal participation in a constitutional deprivation, or a causal connection between the defendant's conduct and the deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978); *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989); *Rizzo v. Goode*, 423 U.S. 362, 374-77 (1976) (rejecting city officials liability under § 1983 absent a showing of "direct responsibility").  There is no evidence Essoe had any personal participation in, or otherwise caused, any of the alleged uses of excessive force at the jail.  Indeed, Essoe was not notified of Plaintiff's presence until after his diversion to the medical observation cell had begun, and he was only present to observe. (SS 180) With regard to Fouste, Prince, as the handling deputy, made the decision to arrest and book Plaintiff for being in violation of the court order.  Moreover, Fouste left before the alleged excessive force occurred at Paseo De Colinas, and there is no evidence he otherwise caused the alleged excessive force.  Accordingly, the supervisor liability claims against Fouste and Essoe fail.

To the extent Plaintiff's "bystander" claims are based on an alleged failure to intercede to prevent a search, seizure, or use of force, the claim fails because those actions were reasonable and lawful. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).  In addition, even assuming Plaintiff's constitutional rights were violated, liability for failing to intercede attaches only where a defendant has a

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

1   realistic opportunity to intercede. *Id.* at 1289-90. In this case, Fouste had arrested

2   and searched Plaintiff before other Defendants arrived on the scene. Accordingly,

3   no other Defendant can be liable under a failure to intercede theory for Plaintiff's

4   search and seizure claims. Second, Fouste and Kunar left the scene before the

5   alleged use of excessive force at Paseo De Colinas. (SS 45-53) Therefore, they

6   cannot be liable under such a theory for Plaintiff's excessive force claim. Third,

7   when Prince tased Plaintiff, Hergesheimer had gone to retrieve ankle cuffs, so he

8   had no reasonable opportunity to intercede. Similarly, after Plaintiff left the triage

9   counter, Hergesheimer was no longer in contact with Plaintiff and did not observe

10  his diversion to the medical observation cell. (SS 81-89) As a result, Hergesheimer

11  cannot be liable under a failure to intercede theory for those events either.

12        In any event, a reasonable officer could conclude that the Defendants'

13  actions were not unconstitutional under a supervisory or bystander theory of

14  liability. Accordingly, Defendants are entitled to qualified immunity.

15  **VI.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED**

16  **IMMUNITY AS TO PLAINTIFF'S FIRST AMENDMENT CLAIMS.**

17        In order to demonstrate a First Amendment violation, a plaintiff must provide

18  evidence showing that "by his actions [the defendant] deterred or chilled [the

19  plaintiff's] political speech and such deterrence was a substantial or motivating

20  factor in [the defendant's] conduct." *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th

21  Cir. 1994). Intent to inhibit speech is an element of the claim. *Mendocino*

22  *Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

23        In this case, there is no evidence any Defendants acted with the intent to

24  inhibit speech. Rather, Defendants arrested and searched Plaintiff based on the

25  odor and presence of marijuana on his person. Eventually, the decision to arrest

26  and book Plaintiff for probably being in violation of a court order was based on his

27  possession of pepper spray and three knives. The use of force at Paseo De Colinas

28  was in response to Plaintiff's physical resistance. The extraction and carrying of

Plaintiff at the jail were results of Plaintiff's refusal to walk, physically manifested by his slumping or dropping to the ground.[9]  The force used during Plaintiff's diversion to the medical observation cell was only that which was necessary to ensure Plaintiff did not strike or physically resist.  Therefore, there was no violation of Plaintiff's First Amendment rights.  Moreover, the individual Defendants are entitled to qualified immunity because a reasonable officer in their position could reasonably have concluded that their actions did not violate the First Amendment.

## VII.  PLAINTIFF CANNOT SUPPORT HIS CLAIMS OF A CONSPIRACY UNDER § 1983.

There is no separate, cognizable claim for conspiracy under § 1983.  Rather, claims of conspiracy are only another way of alleging defendants' participation in an underlying constitutional violation.  The elements of conspiracy for § 1983 are:

(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and

(2) an actual deprivation of those rights resulting from that agreement.

*Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991) (Bivens action, the federal counterpart of a § 1983 action).  The plaintiff must show an agreement or meeting of the minds to commit a constitutional violation.  *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).  A plaintiff must show specific, material facts that support his claim of conspiracy.  *Id.*; *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).

As established above, there was no violation of Plaintiff's constitutional rights.  In addition, Plaintiff has failed to show any material, specific facts that show a "meeting of the minds" to commit constitutional deprivations.  As a result, Plaintiff's claims of conspiracy fail.

---

[9] To the extent the extraction and carrying was based on Plaintiff's literal speech, it was at his behest, and not a response to chill First Amendment activity.

22

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

## VIII. <u>STATUTORY IMMUNITIES BAR SEVERAL OF PLAINTIFF'S STATE LAW CLAIMS</u>.

An immunity provision of the California Government Claims Act generally prevails over a liability provision. *Allyson v. Department of Transp.*, 53 Cal.App.4th 1304, 1313, 1318 (1997). In *Caldwell v. Montoya*, 10 Cal.4th 972 (1995), the California Supreme Court held that public employees' statutory immunities prevail over statutes generally imposing liability unless there is "a clear indication of legislative intent that statutory immunity is withheld or withdrawn in the particular case." *Id.* at 986. "Stated differently, the general rule is that the governmental immunity will override a liability created by a statute outside of the [Government] Claims Act. Further, unless an immunity otherwise provides, the governmental tort immunities apply to intentional tortious conduct." *Gates v. Superior Court*, 32 Cal.App.4th 481, 510 (1995). Indeed, statutory immunities also prevail over claims arising under the State Constitution. *Richardson-Tunnell v. School Ins. Program for Employees*, 157 Cal.App.4th 1056, 1066 (2007).

A. <u>Government Code § 821.6 Bars Plaintiff's 7th, 11th, 12th, 13th, and 14th Causes Of Action With Regard To The Paseo De Colinas Incident</u>.

Government Code § 821.6 immunizes public employees from liability for injuries "caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The scope of § 821.6 "extends to actions taken in preparation for formal proceedings. Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.'" *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209-10 (1994). This immunity has been expanded from protecting only against malicious prosecution to immunize against a variety of torts. *See, Id.* (intentional infliction of emotional distress), *Gates v. Superior Court*, 32 Cal.App.4th 481 (1995) (violations of civil

1   rights under Civil Code §§ 52 and 52.1), and *Johnson v. City of Pacifica*, 4

2   Cal.App.3d 82 (1970) (negligence).  The primary justification in expanding the

3   scope of § 821.6 is the important public interest in criminal investigation.

4   *Blackburn v. County of Los Angeles*, 42 Cal.App.3d 175, 178 (1974), ("[w]hen the

5   duty to investigate crime and to institute criminal proceedings is lodged with any

6   public officer, it is for the best interests of the community as a whole that [the

7   officer] be protected from harassment in the performance of that duty.").

8       Accordingly, as the Defendants were investigating Plaintiff's involvement in

9   possible criminal activity at Paseo De Colinas, they are entitled to Government

10  Code § 821.6 immunity against Plaintiff's state law claims related to their actions

11  during their investigation.

12      **B.     Government Code § 820.8 Bars Liability For Others' Actions.**

13      Even if one or more Defendants violated state law, no other Defendants can

14  be held liable.  Government Code § 820.8 provides in pertinent part: "a public

15  employee is not liable for an injury caused by the act or omission of another

16  person."  Govt. Code § 820.8.  Moreover, this immunity even applies to supervisors

17  such as Fouste and Essoe.  *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975)

18  ("[S]upervisory personnel whose personal involvement is not [proved] may not be

19  held responsible for the acts of their subordinates under California law.").

20  **IX.    THERE IS NO SEPARATE CAUSE OF ACTION FOR NEGLIGENT**

21      **INFLICTION OF EMOTIONAL DISTRESS.**

22      Negligent infliction of emotional distress is not an independent tort.  *Potter v.*

23  *Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993).  The tort is simply

24  negligence.  *Id.*  Plaintiff has already pled negligence as the Eleventh Cause of

25  Action, so Plaintiff's Twelfth Cause of Action for negligent infliction of emotional

26  distress fails to state a claim for relief.  Accordingly, this Court should grant

27  Defendants summary adjudication of Plaintiff's Twelfth Cause of Action.

28  ///

# X. **CONCLUSION.**

For the foregoing reasons, these individual Defendants respectfully request that this Court grant them summary judgment, or in the alternative, summary adjudication of the issues identified in the notice of this Motion, and enter judgment in their favor.

Respectfully submitted,

DATED: March 1, 2010          LAWRENCE BEACH ALLEN, & CHOI, PC


By _____

      DAVID D. LAWRENCE
      CHRISTINA M. SPRENGER
      DANIEL S. CHA
      Attorneys for Defendant,
      COUNTY OF ORANGE, MICHAEL
      CARONA, SEAN HILLIARD, JAMES
      FOUSTE, JARRETT KURIMAY, DAVID
      HERNANDEZ, CYRIL FOSTER,
      MANUEL GARCIA, MICHAEL
      PADILLA, IRA ESSOE, MARK
      HERGESHEIMER, MARK KUNAR,
      MATTHEW PRINCE, AND MICHAEL
      CARONA

INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT/SUMMARY ADJUDICATION

# PROOF OF SERVICE

STATE OF CALIFORNIA; COUNTY OF ORANGE

I, Debbie Pryor, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1600 North Broadway, Suite 1010, Santa Ana, California 92706.

On March 1, 2010, I electronically filed the foregoing **DEFENDANTS JAMES FOUSTE'S, SEAN HILLIARD'S, MATTHEW PRINCE'S, MARK KUNAR'S, MARK HERGESHEIMER'S, IRA ESSOE'S, MICHAEL PADILLA'S, MANUEL GARCIA'S, CYRIL FOSTER'S, DAVID HERNANDEZ'S, AND JARRETT KURIMAY NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR IN THE ALTERNATIVE SUMMARY ADJUDICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

1.  Jerry L. Steering, Esq.    jerrysteering@yahoo.com
2.  Carol E. Lavacot, Esq.    law@lavacot.com

\_\_\_\_    BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business.

\_\_\_\_    BY FEDERAL EXPRESS
I caused such envelope to be delivered via Federal Express to the offices of the address(es) listed above.

\_\_\_\_    BY PERSONAL SERVICE

\_    I hand delivered such envelope by hand to the addressee(s) listed above.

<u>X</u>    (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 1, 2010 at Santa Ana, California

_Debbie Pryor_
Declarant