1  Carol E. Lavacot; SBN 101689
2  Law Offices of Carol E. Lavacot
   Irvine Center Towers
3  18500 Von Karman Avenue
4  Suite 560
   Irvine, CA, 92612
5  (949) 476-9000
6  Fax: (949) 476-0900
7  e-mail: law@lavacot.com

8  Jerry L. Steering; SBN 122509
9  Law Office of Jerry L. Steering
   4063 Birch Street
10 Suite 100
11 Newport Beach, CA 92660
12 (949) 474-1849
   (949) 474-1883 Fax
13 e-mail: info@steeringlaw.com

14
15 Attorneys for Plaintiff Joshua Radwan

16              UNITED STATES DISTRICT COURT

17             CENTRAL DISTRICT OF CALIFORNIA

18
   JOSHUA RASHID RADWAN,          )  Case No.  SACV 08-786 AG
19                                )  (ANx)
20      Plaintiff,                )
                                  )  PLAINTIFF'S SECOND
21   vs.                          )  AMENDED
22                                )  MEMORANDUM OF
   COUNTY OF ORANGE, MICHAEL      )  POINTS AND
23 CARONA, JAMES FOUSTE, SEAN     )  AUTHORITIES IN
24 HILLIARD, MATTHEW PRINCE,      )  OPPOSITION TO
25 MARK KUNAR, MARK               )  DEFENDANTS JAMES
   HERGESHEIMER, IRA ESSOE,       )  FOUSTE'S, SEAN
26 MICHAEL PADILLA, MANUEL        )  HILLIARD'S, MATTHEW
27 GARCIA, CYRIL FOSTER, THOMAS   )  PRINCE'S, MARK
   STREETER, DAVID HERNANDEZ,     )  KUNAR'S, MARK
28 JARRETT KURIMAY and DOES 1     )  HERGESHEIMER'S, IRA

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   through 10, inclusive,

2     Defendants.

3

4

5

6

7

8

9

10

11

12

| | |
|---|---|
| ) | ESSOE'S, MICHAEL |
| ) | PADILLA'S, MANUEL |
| ) | GARCIA'S, CYRIL |
| ) | FOSTER'S AND DAVID |
| ) | HERNANDEZ', MOTION |
| ) | FOR SUMMARY |
| ) | JUDGMENT / SUMMARY |
| ) | ADJUDICATION OF |
| ) | ISSUES |
| ) | |
| ) | DATE:  JULY 6, 2010 |
| ) | TIME:   10:00 A.M. |
| ) | CTRM:  10D |
| ) | |
| | JUDGE ANDREW J. GUILFORD |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.  PLAINTIFF'S UNLAWFUL SEARCH AND SEIZURE
    CLAIMS ARE PROPERLY SHOWN BY THE EVIDENCE
    IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   An Anonymous Tip Is Not Sufficient Evidence
         Of Criminality Afoot To Effect An Investigatory
         Detention Of A Person, Absent Independent
         Corroboration Or Observation Of Criminal Conduct . . . . . . . . . . . 2

    B.   Defendant Fouste's Initial Seizure Of The Plaintiff
         Was Unlawful Under Florida v. J.L., As It Was
         Based On A Bare Anonymous Tip, Without Any
         Independent Corroboration Of Any Criminal
         Conduct, Or Independent Observation Of Predictive
         Future Actions, By The Police. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.   Even If This Honorable Court Determines That The
         Initial Detention Of The Plaintiff Was Proper,
         The Full-Blown Search Of The Plaintiff Cannot
         Be Justified, And Violated The Plaintiff's
         Fourth Amendment Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

         1.   Pat-Down Searches Of Lawfully Detained Suspects. . . . . . . 8

         2.   Because The Full-Blown Search Of The Plaintiff
              Exceeded A Pat-Down Search For Weapons,
              Not Only Were The Plaintiff's Fourth Amendment
              Rights To Be Free From An Unlawful Search
              Of His Person Violated, But The Marijuana
              On His Person Was Also Unlawfully Discovered,
              And His Continued Detention Or An Arrest
              Based On The Discovery Of The Marijuana
              Was Also, Thereby, Unlawful, And Constituted An
              Unreasonable Seizure Of His Person Under
              The Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO COUNTY'S MOTION FOR SUMMARY JUDGMENT

D.   Defendants Hilliard, Fouste and Prince Also Violated The Plaintiff's Right To Be Free From An Unlawful Seizure Of His Person, As They Decided To Make A Custodial Arrest Of The Plaintiff For Violation Of A Court Order, Without Probable Cause ............................... 10

E.   Defendants Are Not Entitled To Qualified Immunity For Their Unlawful Seizure Of The Plaintiff. ................ 13

F.   Defendants Are Not Entitled To Qualified Immunity For Their Unlawful Search Of The Plaintiff And His Vehicle. .... 13

II.   PLAINTIFF'S FEDERAL UNLAWFUL SEARCH AND SEIZURE CLAIMS ARE NOT BARRED BY HECK v. HUMPHREY. ................................... 14

III.   PLAINTIFF'S STATE LAW SEARCH AND SEIZURE CLAIMS, ARE NOT BARRED BY YOUNT v. CITY OF SACRAMENTO, OR SUSAG v. CITY OF LAKE FOREST. ...................... 18

IV.   PLAINITFF'S FEDERAL CLAIM FOR UNREASONABLE FORCE AND STATE LAW CLAIM FOR BATTERY ARE PROPERLY SHOWN IN THIS ACTION. ................................18

A. Plaintiff's Claims Against Defendants Prince, Hilliard and Hergesheimer For Unreasonable Force Are Properly Brought In This Action And Are Not Subject To Qualified Immunity.....18

B. Plaintiff's Claims Against Defendants Padilla, Garcia, Foster, Hernandez And Hergesheimer For Unreasonable Force Are Properly Brought In This Action, And Are Not Subject To Qualified Immunity. ...................................21

V.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT BARRED BY CAL. GOV'T CODE SECTION 821.6 IMMUNITY.............. 24

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO COUNTY'S MOTION FOR SUMMARY JUDGMENT

ii

A. <u>Cal. Gov't Code § 821.6 Does Not Provide Immunity For A Violation Of Cal. Civil Code § 52.1.</u> . . . . . . . 24

B. <u>Cal. Gov't Code § 821.6 Does Not Provide Immunity For A False Arrest By A Peace Officer.</u> . . . . . . . . . . . . . . . . . . 25

C. <u>Cal. Gov't Code § 821.6 Does Not Provide Immunity For Negligence By A Peace Officer.</u> . . . . . . . . . . . 25

VI.   DEFENDANTS ARE LIABLE FOR FAILING TO INTERVENE TO PREVENT THE USE OF UNREASONABLE FORCE ON THE PLAINTIFFS BY THE OTHER DEFENDANTS TO THIS CASE. . 25

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COUNTY'S MOTION FOR SUMMARY JUDGMENT

iii

## TABLE OF AUTHORITIES

UNITED STATES SUPREME COURT CASES:

*Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921,
32 L.Ed.2d 612 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8,9

*Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412,
110 L.Ed.2d 301 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

*Arizona v. Evans*, 514 U.S. 14, 115 S. Ct. 1185 (1995) . . . . . . . . . . . . . . . . 4,17

*Arizona v. Gant*, 556 U.S. ___ (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Atwater v. Lago Vista*, 532 U.S. 318 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Florida v. J.L.*, 529 U.S. 513, 120 S.Ct. 1375 (2000) . . . . . . . . . . . . 2,3,4,5,6,13

*Heck v. Humphrey* , 512 U.S. 487, 114 S.Ct. 2364,
129 L.Ed.2d 383 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14,15,16

*Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) . . 20

*Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) . . . 13,14

*Minnesota v. Dickerson*, 506 U.S. 814, 113 S.Ct. 808,
121 L. Ed.2d 681 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768,
reh'g denied, 453 U.S. 950 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) . . . . . .16

*Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) . . . . .8

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) . . . . . . . 3,4,8,9

*United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870,
64 L.Ed.2d 497 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wallace v. Kato*, 127 S.Ct. 1091,166 L.Ed.2d 973 (2007) . . . . . . . . . . . . . 15,17

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO COUNTY'S MOTION FOR SUMMARY JUDGMENT

iv

*Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031,
28 L.Ed.2d 306 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4,16

OTHER FEDERAL CASES:

*Ayers v. City of Richmond*, 895 F.2d 1267 (9th Cir. 1990) . . . . . . . . . . . . . . . 17

*Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002) . . . . . . . . . . . . . . . . 21

*Barlow v. Ground*, 943 F.2d 1132 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 13

*Bryan v. McPherson*, No. 08-55622 (9th Cir. 12/28/2009) . . . . . . . . . . . . . 14,20

*Duran v. City of Douglas*, 904 F2d 1372 (9th Cir. 1990) . . . . . . . . . . . . . . . . . 20

*Espinoza v. San Francisco*, No. 08-16853 (9th Cir. 3/9/10). . . . . . . . . . . . . . .21

*Kennedy v. City of Ridgefield*, 439 F3d 1055 (9th 2006) . . . . . . . . . . . . . . . . . 13

*Mendocino Environmental Ctr. v. Mendocino County*,
14 F.3d 457 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Morgan v. Woessner*, 997 F.2d 1244 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . .13

*Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 13

*Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2002) . . . . . . . . 25

*Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892
(7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) . . . . . . . . . . . . . . . . . 15,18

*United States v. Koon*, 34 F.3d 1416, 1424-25 (9th Cir. 1994) . . . . . . . . . . . . . 21

*United States v. Morales*, 252 F.3d 1070 (9th Cir. 2001) . . . . . . . . . . . . . . . . 3,4

*United States v. Salas*, 879 F.2d 530, 535 (9th Cir.),
cert. denied, 493 U.S. 979 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Thomas*, 211 F.3d 1186 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . 3

*United States v. Vasey*, 834 F.2d 782, 787 (9th Cir. 1987) . . . . . . . . . . . . . . . . 13

*United States v. Westbrook,* 896 F.2d 330 (8th Cir. 1990) . . . . . . . . . . . . . . . . 7

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO COUNTY'S MOTION FOR SUMMARY JUDGMENT

v

*Weinberg v. Shapiro*, 488 F.3d 1202 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . 16

FEDERAL STATUTES:

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

FEDERAL CONSTITUTIONAL PROVISIONS:

U.S. Const. Amend. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3,10

FEDERAL RULES OF COURT:

Local Rules of the Central District of California: L.R. 56-1 Papers
Required From Moving Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Local Rules of the Central District of California: L.R. 56-4
Motions Under F.R.Civ.P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CALIFORNIA CASES:

*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744,
63 Cal.Rptr.2d 842 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Gillan v. City of San Marino*, 147 Cal.App.4th 1033 (2007) . . . . . . . . . . . . . . 24

*Hamilton v. City of San Diego,* 217 Cal.App.3d 838, 844, 266
Cal.Rptr. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*In re Joseph F.,* 85 Cal.App.4th 975, 982 (2000) . . . . . . . . . . . . . . . . . . . . . . . 16

*Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991) . . . . . . . . . . . . . . . . . .25

*People v. Curtis*, 70 Cal.2d 347 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*People v.. Olguin,*119 Cal.App.3d 39, 45 (1981). . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Simons,* 42 Cal.App.4th 1100, 1109 (1996) . . . . . . . . . . . . . . . . . . . 18

*Ogborn v City of Lancaster,*101 Cal.App.4th 448,
124 Cal.Rptr.2d 238 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Susag v. City of Lake Forest,* 94 Cal.App.4th 1401 (2002) . . . . . . . . . . . . . . .18,19

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO COUNTY'S MOTION FOR SUMMARY JUDGMENT

vi

*Yount v. City of Sacramento*, 35 Cal.Rptr.3d 563, 574 (2005) . . . . . . . . . . . 18,19

CALIFORNIA STATUTES:

Cal. Civil Code § 52.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

Cal Civil Code § 1714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

Cal. H & S Code § 11357(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal Gov't Code § 815.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

Cal Gov't Code § 820 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Cal. Gov't Code § 820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Cal. Gov't Code § 821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24,25

Cal. Penal Code § 1018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Cal. Penal Code § 1019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Cal. Penal Code § 148(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17,18

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO COUNTY'S MOTION FOR SUMMARY JUDGMENT
vii

1  Jerry L. Steering; SBN 122509
2  Law Office of Jerry L. Steering
3  4063 Birch Street, Suite 100
   Newport Beach, CA 92660
4  (949) 474-1849; (949) 474-1883 Fax

5
6  Attorneys for Plaintiff Joshua Radwan

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9  JOSHUA RASHID RADWAN,              ) Case No. SACV 08-786 AG
10                                    ) (ANx)
            Plaintiff,                )
11                                    )
                                      ) PLAINTIFF'S SECOND
12     vs.                            ) AMENDED
13                                    ) MEMORANDUM OF
   COUNTY OF ORANGE, MICHAEL          ) POINTS AND
14 CARONA, JAMES FOUSTE, SEAN         ) AUTHORITIES IN
   HILLIARD, MATTHEW PRINCE,          ) OPPOSITION TO
15 MARK KUNAR, MARK                   ) DEFENDANTS JAMES
16 HERGESHEIMER, IRA ESSOE,           ) FOUSTE'S, SEAN
17 MICHAEL PADILLA, MANUEL            ) HILLIARD'S, MATTHEW
18 GARCIA, CYRIL FOSTER, THOMAS       ) PRINCE'S, MARK
   STREETER, DAVID HERNANDEZ,         ) KUNAR'S, MARK
19 JARRETT KURIMAY and DOES 1         ) HERGESHEIMER'S, IRA
20 through 10, inclusive,             ) ESSOE'S, MICHAEL
                                      ) PADILLA'S, MANUEL
21          Defendants.               ) GARCIA'S, CYRIL
22                                    ) FOSTER'S AND DAVID
23                                    ) HERNANDEZ', MOTION
                                      ) FOR SUMMARY
24                                    ) JUDGMENT / SUMMARY
25                                    ) ADJUDICATION OF
                                      ) ISSUES
26                                    )
27                                    ) DATE: JULY 6, 2010
28                                    ) TIME: 10:00 A.M.
                                        CTRM: 10D

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

I.   **PLAINTIFF'S UNLAWFUL SEARCH AND SEIZURE CLAIMS ARE PROPERLY SHOWN BY THE EVIDENCE IN THIS CASE.**

A.   <u>An Anonymous Tip Is Not Sufficient Evidence Of Criminality Afoot To Effect An Investigatory Detention Of A Person, Absent Independent Corroboration Or Observation Of Criminal Conduct.</u>

In *Florida v. J.L.*, 529 U.S. 513, 120 S.Ct. 1375 (2000), an anonymous tipster telephoned the Miami-Dade Police Department, and related that a young black male standing was at a certain bus stop, wearing a plaid shirt, and was carrying a conceal pistol. Miami-Dade Police Department officers went to the bus stop and saw three black males, one of whom, J. L., a minor, was wearing a plaid shirt. Aside from the tip, the officers had no reason to suspect any of the three youths of unlawful conduct, as they did not see a firearm, observe any suspicious movements, or witness anything indicative of criminal conduct.

One of the Miami-Dade Police Department officers frisked J.L. and seized a pistol from his pocket. J.L. was then charged and convicted of carrying a concealed firearm, and possessing a firearm while under the age of 18.

Up the appellate ladder, the Supreme Court affirmed the Florida Supreme Court, ruling that the frisk of the youth, J.L., violated his fourth amendment rights, as the officer who frisked J.L. did not possess sufficient reasonable suspicion of criminality afoot by him to have detained or frisked him. In reaching their decision, a unanimous Supreme Court noted:

> "the officers' suspicion that J. L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see Adams v. Williams , 407 U. S. 143, 146-147 (1972), "an anonymous tip alone seldom demonstrates the

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

2

> *informant's basis of knowledge or veracity". . . . . The anonymous call concerning J. L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J. L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L."*

Following *Florida v. J.L.,* the Ninth Circuit held that an anonymous tip about another's engagement in general criminal conduct was not sufficient for police authorities to effect an investigatory detention on two men traveling in a car who were suspected of transporting methamphetamine, because an anonymous tip alone cannot provide the police with the reasonable suspicion of criminality afoot required by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As the Ninth Circuit explained, sufficient reasonable suspicion of criminal activity requires:

> *"a particularized and objective basis for suspecting the particular person stopped of criminal activity". United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000) . . . "Reasonable suspicion requires specific, articulable facts which, together with "objective and reasonable" inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." Id. (citation omitted)."*

*United States v. Morales*, 252 F.3d 1070 (9th Cir. 2001).

An anonymous tip is not deemed reliable, because the tipster cannot be held accountable for providing false information, and the police cannot assess the tipster's reputation. *Florida v. J.L., supra.* The Supreme Court, therefore, requires "something more" than the anonymous tip alone to establish reasonable suspicion that criminal activity is afoot. *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct.

2412, 110 L.Ed.2d 301 (1990). In order for an anonymous tip to have sufficient "indicia of reliability" to serve as the basis for a *Terry* stop, the tip must include a "range of details", and it must predict future actions by the suspect that are subsequently corroborated by the police. *Id.*

### B. Defendant Fouste's Initial Seizure Of The Plaintiff Was Unlawful Under *Florida v. J.L.*, As It Was Based On A Bare Anonymous Tip, Without Any Independent Corroboration Of Any Criminal Conduct, Or Independent Observation Of Predictive Future Actions, By The Police.

On December 23, 2006 at approximately 9:30 p.m., defendants Sgt. James Fouste and Deputy Sheriffs Mark Kunar, Matthew Prince, and Sean Hilliard received an Orange County Sheriff's Department ("OCSD") radio dispatch, requesting that "deputies respond to the area of Paseo De Colinas and Cabot Road in Laguna Niguel, regarding a report that a person was being kicked by another person next to a Range Rover". See, Defendants' Statement Of Undisputed Facts In Support of Defendants' Motion For Summary Judgment ("DUF") No. 7. The dispatch, however, was a mischaracterization of the report from the anonymous informant, who reported that she was:

> ". . . *calling to report something. I'm not sure if it's a fight, or what's going on, but I drive by, and . . . There's a Range Rover and there was a man outside. He's obviously yelling and kicking, and there's someone on the ground*" . . . *next to the dark colored Range Rover . . . huddled down in a hooded sweatshirt . . .I would guess someone younger. . . And the man, I would guess, would be in his 30's.*"

Exhibit "M" (OCSD 911 / radio communications transcript) pp.1-2 of 18; Exhibit "U" (CD of 911 / radio transcript) 00:00-01:07[1].

---

[1] See also, Separately Filed Exhibit "P"; CAD[1] printout of incident of December 23, 2006, p.3 showing "Unit 443" as defendant Prince, "Unit 342" as defendant Kunar, "Unit 341" as defendant Hilliard, and "Unit 4S40" (4-Sam-40) as defendant Sgt. Fouste ("Sam" for Sergeant).

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

4

They were also told that the informant was "anonymous". Exhibit "M", pp.3 and 4 of 18; 01:27-03:02. To the extent that the defendants were provided erroneous information by the dispatcher, and that erroneous information increased the deputies' suspicion of criminal conduct by the plaintiff to the point where any arguable "reasonable suspicion" to detain existed that wouldn't have otherwise, plaintiff's fourth amendment rights were nonetheless violated. *See, Arizona v. Evans*, 514 U.S. 14, 115 S.Ct. 1185 (1995)[2]; *See also, Whiteley v. Warden*, 401 U.S. 560, 564, 91 S.Ct. 1031, 1034, 28 L.Ed.2d 306 (1971)[3].

"Sergeant Fouste was the first patrol car to arrive at Paseo De Colinas near Del Cerro, and saw Radwan's Range Rover parked in a driveway for a school." DUF No. 8. "Sergeant Fouste saw Radwan and a woman, later identified as Cassandra Fults, next to the Range Rover". DUF No. 9. "Sergeant Fouste exited his patrol vehicle and asked Radwan to approach him by walking backwards towards him." DUF, No. 10.

Although Fouste claims that as plaintiff thereafter approached him that he smelled unburned marijuana on his person, DUF, No. 10, plaintiff refutes this by showing that: 1) he only had a teaspoon size amount of marijuana in his pocket in a tightly sealed/closed plastic container; 2) that he is very familiar with the smell of marijuana (burned and unburned); 3) that he had not smoked any marijuana that day; 4) that it was after 9:30 p.m. on December 23, 2006, outside, in the cold air, with all there wearing heavy jackets; and 5) that it would have been impossible for anyone, including Fouste, to have smelled the small amount of

---

[2] Court clerical error in not showing arrest warrant quashed that resulted in arrest of defendant fourth amendment violation, although exclusionary rule inapplicable)
[3] One police agency relying on warrant unlawfully procured without probable cause by another police agency in deciding to arrest defendant named in warrant, nonetheless a fourth amendment violation.

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

plaintiff Joshua Radwan in Opposition to Defendant's Motion for Summary Judgment ("JOSH DECL"), ¶¶ 24-25,30. Also, it was only after Fouste searched plaintiff and emptied out his pockets[4], taking the container with the marijuana out of plaintiff's pocket and discovering the marijuana, and thereafter taking plaintiff over to a wall and having plaintiff sit down, when Fouste first told plaintiff that he smelled like marijuana. JOSH DECL ¶ 31. Moreover, as shown below, notwithstanding the fact that Fouste and the rest of the deputies were required by the OCSD Operations and Procedures Manual to audio record their contact(s) with the plaintiff[5], Fouste and the other deputies did not do so; without explanation. See, Plaintiff's Statement of Genuine Material Facts In Dispute In Opposition To Defendants' Motion For Summary Judgment ("PDF"), 188. Moreover, notwithstanding the fact that Patrol Sergeants, were and are required to maintain daily Patrol Sergeant's Activity Reports showing what happened during their duty shifts, Fouste claims that he did not author one, because there was

---

[4] After defendant Fouste had the plaintiff walk over to him, he held plaintiff's hands together behind plaintiff's back with one of his hands, and searched and emptied-out the plaintiff's pockets with his other hand; placing the contents of the plaintiff's pockets on the hood of defendant Fouste's patrol car. That is how he discovered the subject small amount of marijuana in the plaintiff's pockets. JOSH DECL ¶¶ 28-31. See also, Exhibit "C"; copy of the Patrol Video System recording of defendant Sgt. James Fouste of December 23, 2006 ("FOUSTE VIDEO"), Windows Media Player Counter No. 01:10-04:28, showing the search of the plaintiff by defendant Sgt. Fouste.

[5] See, Exhibit "V"; pp. 3-4 of Section 61 of the OCSD Operations and Procedures Manual; Revised July 20, 2006. Although Fouste's patrol video recording of the December 23, 2006 incident contains no sound, it is evident that his remote microphone was working. After Fouste's recording of incident ends, the recording shows static, and then for two seconds, one can see the characteristic "M" on the video display five minutes later; indicating the activation of Fouste's remote mic).

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1 | marijuana that was in the plaintiff's pocket in the closed container. Declaration of

1  nothing significant that happened during his shift, and that he was not required to

2  do so. DUF, 188.[6]

3      Moreover, in his declaration in support of defendant's instant motion,

4  Fouste admits that it was not until after he ordered the plaintiff to walk over to

5  him that he thereafter smelled marijuana on the plaintiff's person. Declaration of

6  James Fouste, ¶¶ 7-9. Accordingly, all of the evidence shown in this instant

7  motion shows that Fouste's initial detention of the plaintiff was based on an

8  uncorroborated tip from an anonymous informant; in violation of the plaintiff's

9  fourth amendment rights. *Florida v. J.L., supra.*

10

11     Moreover, Fouste's declaration is devoid of any claim that Fouste knew

12  what unburnt marijuana smelled like, and, therefore, Fouste's claim of smelling

13  unburnt marijuana on the plaintiff's person has no evidentiary value. *See, United*

14  *States v. Westbrook*, 896 F.2d 330 (8th Cir. 1990)[7]. As the plaintiff was ordered

15  by defendant Fouste to approach him, which he thereupon did, a reasonable

16  person would not feel free to have left the presence of Fouste, and plaintiff was,

17  therefore, detained by him; seized within the meaning of the forth amendment.

18  _____

19  [6] This is even more suspect, as defendant Prince shows in his Initial Crime Report

20  of 12/23/06 about plaintiff's arrest, Exhibit "H", Prince's Daily Activity Report,
    Exhibit "I", and **Prince's Probable Cause Declaration, Exhibit "J", that Fouste**

21  **searched the plaintiff pursuant to a "consent search"; something that Prince**

22  **testified in his deposition was told to him by Fouste,** *See,* Exhibit "U". However, in
    Fouste's deposition in this action, he testified that plaintiff refused to consent to being

23  searched, and that Fouste did so anyway. *See,* Exhibit "S".

24  [7] Two lay witnesses who were heavy amphetamine users properly permitted to testify
    that substance was amphetamine; but error to permit another witness to make such an

25  identification, where she had no experience with amphetamines. This honorable court
    may opine that Fouste may have come upon the smell of unburnt marijuana in the

26  course of his training or duties, but there is no evidence of the same presented in this
    instant motion. To give evidentiary value to his declaration on this issue, given without

27  proper foundation, would be as erroneous as permitting the lay witness to identify the

28  subject amphetamine in *Westerbrook, supra.*

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*See, United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Therefore, plaintiff was unlawfully detained (seized) by Fouste, in violation of his fourth amendment rights, and defendants' motion for summary judgment should be denied.

### C. Even If This Honorable Court Determines That The Initial Detention Of The Plaintiff Was Proper, The Full-Blown Search Of The Plaintiff Cannot Be Justified, And Violated The Plaintiff's Fourth Amendment Rights.

#### 1. Pat-Down Searches Of Lawfully Detained Suspects.

Even if this honorable court finds that defendant Fouste had sufficient objectively reasonable suspicion of criminality afoot to have initially detained the plaintiff, Fouste still did not have the right to have performed a full-blown search of him[8]; save some proven super-human olfactory ability of Fouste to have smelled the small amount of marijuana in the closed plastic container in plaintiff's pocket; something in dispute. During an investigative detention of a suspect, police may, in some circumstances, conduct a limited protective search or "frisk" of a person who is lawfully detained, when he has an objectively reasonable belief that the suspect is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)[9]. The purpose of the limited search (frisk) is not to discover evidence of crime, but to allow the officer to conduct an investigation without fear for his or her own safety. *Adams v. Williams*, 407 U.S.

---

[8] That is shown in Fouste's own patrol video recording (Separately Filed Exhibit "C", Windows Media Player Counter Numbers 01:10-04:28, showing Fouste's search of the plaintiff), and that is referenced in defendant Fouste's own declaration in support of his instant motion; ¶¶ 8-11.

[9] The officer, however, must be aware of additional specific and articulable facts from which it can reasonably be inferred that the individual being confronted is dangerous. *Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). If the initial detention was not based on a reasonable suspicion of criminal activity, the frisk will be improper as well. *United States v. Salas*, 879 F.2d 530, 535 (9th Cir. 1989). Because "[t]he sole justification for the search ... is the protection of the police officer and others nearby ... [the search] must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer." *Terry, supra.* Accordingly, when a police officer who is lawfully detaining another has a reasonable concern for his safety, the officer may conduct a pat-down of the detainee's outer clothing to feel for hard objects which may be weapons. *Sibron, supra.* Police may also seize narcotics detected while frisking a suspect for concealed weapons, so long as the contraband is instantly recognizable to the officer by "plain feel", and the illegal nature of the object is immediately apparent to the officer. *Minnesota v. Dickerson*, 506 U.S. 814, 113 S.Ct. 808, 121 L.Ed.2d 681 (1993).

> **2.   Because The Full-Blown Search Of The Plaintiff Exceeded A Pat-Down Search For Weapons, Not Only Were The Plaintiff's Fourth Amendment Rights To Be Free From An Unlawful Search Of His Person Violated, But The Marijuana On His Person Was Also Unlawfully Discovered, And His Continued Detention Or Arrest Based On The Discovery Of The Marijuana Was Also, Thereby, Unlawful, And Constituted An Unreasonable Seizure Of His Person Under The Fourth Amendment.**

As shown in the video recording made by Fouste on his Patrol Video System[10], his search of the plaintiff exceeded any sort of search even closely resembling a pat-down for weapons. In Fouste's declaration in support of his

---

[10] Separately Filed Exhibit "C"; Windows Media Player Counter No. 01:10-04:28.

instant motion for summary judgment, he makes no claim that either he suspected that the plaintiff was armed and/or otherwise dangerous, or that he was aware of any facts indicating any such thing. Fouste merely claims that he smelled marijuana on the plaintiff, and, therefore, he did a full-blown search of him. Therefore, any continued detention of the plaintiff based on the discovery of the marijuana on him, or an any more restrictive seizure of the plaintiff (i.e. an arrest) was unlawful, and also violated the plaintiff's fourth amendment rights.

### D. Defendants Hilliard, Fouste and Prince Also Violated The Plaintiff's Right To Be Free From An Unlawful Seizure Of His Person, As They Decided To Make A Custodial Arrest Of The Plaintiff For Violation Of A Court Order, Without Probable Cause.

As shown above, the unlawful detention of the plaintiff at the onset of defendants Fouste's, Hilliard's, Kunar's and Prince's contact with plaintiff was unlawful, as was the search of the plaintiff's person, that led to the discovery of the marijuana on him. Thereafter, Fouste continued to detain the plaintiff by escorting him to a wall, and having him sit there; allegedly for further investigation of any possible battery by him of Fults[11]. Thereafter, Fouste claims to have taken and placed plaintiff into Prince's patrol car, because plaintiff was allegedly distracting Fouste's investigation[12]. While the plaintiff was detained in Prince's patrol car, defendant Hilliard "ran" plaintiff for wants, warrants and protective / restraining orders, and discovered that plaintiff had a criminal case protective order against him, that prohibited him from possessing any **firearms**. DUF, Nos. 31-32. "Another database listed that Radwan was not to possess any firearms pursuant to that court order." DUF, No. 33. Although defendants claim

---

[11] See, Declaration of James Fouste in support of instant motion, ¶ 12.

[12] Declaration of James Fouste ¶ 16; something in dispute. JOSH DECL ¶¶ 30-34.

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

that: *"Deputy Hilliard informed Deputy Prince of the existence of the court order and the fact that one database showed that Radwan was not to possess any weapon whereas another database showed only that Radwan was not to possess any firearm"*, DUF, No. 34, this claim is dubious, and belied by other evidence. DUFs, No. 35 *("Deputy Prince contacted "Control One" (custodian of Orange County-based restraining orders) regarding the possible inconsistency between the databases and whether the pepper spray and knives fell under the provision of "other weapons")*, and 36 *(""Control One" was unable to shed any light on either issue")*, are equally suspect, and are also belied by other evidence. *See*, PDF, No. 34. None of this alleged checking with Control One, and efforts to determine proper protective order (or even that there was information from more than one database) is even mentioned in any of Prince's three reports[13], and if he had actually contacted, "Control One", he should have been able to "shed light" on the discrepancy, as the OCSD was the agency in possession of the protective order. Moreover, both printouts stated not to detain or arrest based solely on the printouts. Exhibits "K and "N". The actual protective order only prohibited the plaintiff from possessing firearms. Exhibit "K"; copy of August 11, 2006 protective order.[14]

   As Fouste admits to approving the plaintiff's arrest for violation of a court order, DUF No. 37, he, along with defendants Prince and Hilliard, are also liable for the plaintiff's arrest without probable cause. Moreover, as shown above, to the extent that the arrest was predicated on faulty information, plaintiff's fourth amendment rights were nonetheless violated. *Arizona v. Evans, supra.* In

---

[13] Prince's Daily Activity Report, Prince's Initial Crime Reports, and Prince's Probable Cause Declaration.

[14] The Orange County District Attorney's Office ultimately determined that the robbery charge was bogus, and dismissed it; ending the protective order.

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

11

addition, notwithstanding *Atwater v. Lago Vista*, 532 U.S. 318 (2001), plaintiff was not subjected to an actual custodial arrest for marijuana possession[15], and according to Fouste, was only detained in Prince's patrol car because plaintiff was "verbally uncooperative and agitated"[16]. In fact, Cal. H & S Code § 11357(b) prohibits taking a person into custody for possessing less than an ounce of marijuana, and defendants were only detaining the plaintiff while they unlawfully searched his Range Rover. Moreover, defendants were not entitled to search the plaintiff's Range Rover, as they had not arrested him but only detained him for a citeable only offense. *See, Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)[17]

As both defendants' search and seizure of plaintiff (and his vehicle) were unlawful, the evidence obtained from the Range Rover (the knives) that were the basis for plaintiff's custodial arrest, was obtained unlawfully; making the arrest itself unlawful, as the fruit of the poisonous tree.

---

[15] Cal. H & S Code § 11357(b) is a non-jailable offense, and provides that a person may not be booked for a violation thereof, but may only be issed a citation, unless the person demands to be taken before a magistrate.

[16] In his crime report of 12/23/06, Prince claims that plaintiff was detained in his car for being uncooperative, Exhibit "H", p.2, ¶ 4, and that plaintiff was not arrested until 2230 hours; after Hilliard determined that the plaintiff was in violation of a restraining order. Exhibit "H", p.2, ¶ 4. Admittedly, plaintiff was removed from Prince's car, and was then arrested and was placed in Hergesheimer's car about 14 minutes after Hilliard ran plaintiff on his patrol car computer (See, Exhibit "N"; CLETS and NCIC printouts of December 23, 2006, showing the transmission of said information to Hilliard's computer at 22:14:38 hours). In his declaration in support of this instant motion, Prince also claims that Fouste ordered that plaintiff be [and was] placed in his patrol car because he became more verbally uncooperative and agitated. ¶¶ 10-13. Plaintiff denies any such uncooperative behavior. Not because he was arrested.

[17] Search of car incident to arrest exception to warrant requirement prohibited for citeable offenses, when no custodial arrest made, and only citation issued).

1

2

**E. Defendants Are Not Entitled To Qualified Immunity For Their Unlawful Seizure Of The Plaintiff.**

3

4

5

6

7

8

9

10

11

12

13

14

15

A peace officer is not entitled to qualified immunity for detentions of persons in the absence of reasonable cause to do so. *Morgan v. Woessner*, 997 F.2d 1244 (9th Cir. 1993). *Florida v. J.L., supra*, was well established law for over six years prior to plaintiff's unlawful detention by Fouste. Similarly, peace officers who arrest persons without probable cause are not entitled to qualified immunity. *Barlow v. Ground*, 943 F.2d 1132 (9th Cir. 1991); *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993); *Mendocino Environmental Ctr. v. Mendocino County*, 14 F.3d 457 (9th Cir. 1994). Moreover, when a particular factual scenario has not been held unlawful by the courts, so long as the unlawfulness of the conduct would be apparent to a reasonably well trained officer, qualified immunity does not lie. *Kennedy v. City of Ridgefield*, 439 F3d 1055 (9th 2006).

16

17

**F. Defendants Are Not Entitled To Qualified Immunity For Their Unlawful Search Of The Plaintiff And His Vehicle.**

18

19

20

21

22

23

24

25

26

27

As shown above, defendants justify the unlawful search of the plaintiff's Range Rover by the discovery of evidence from the unlawful search of his person. Even under the Supreme Court law that existed at the time of the December 23, 2006 incident, *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the search of the passenger compartment of a person's vehicle while the person is handcuffed in a police car was prohibited. *United States v. Vasey*, 834 F.2d 782, 787 (9th Cir. 1987). Moreover, under *Arizona v. Gant*, 556 U.S. ___ (2009), a peace officer may only search the passenger compartment of an arrestee's vehicle to look for evidence of the crime for which

28

the person was "arrested".[18] Because the plaintiff had only been "detained" at the time of the search of his vehicle, and not under "arrest", the actions of the officers in searching his vehicle were unlawful, and any evidence obtained thereby cannot serve as a proper basis for the plaintiff's arrest. Moreover, as discussed above, plaintiff's person was unlawfully searched, and, therefore, the defendant's search of his vehicle cannot be justified from the unlawful discovery of marijuana on his person. All of these principles being well established, defendants are not entitled to qualified immunity from suit on plaintiff's unlawful search and seizure claims.

## II.   PLAINTIFF'S FEDERAL UNLAWFUL SEARCH AND SEIZURE CLAIMS ARE NOT BARRED BY *HECK v. HUMPHREY.*

In *Heck v. Humphrey*, 512 U.S. 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) the Supreme Court held that a Section 1983 action for damages is unavailable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence", unless the conviction or sentence has been invalidated. *Id.* at 487. That does not mean, however, that a conviction is necessarily dispositive of a Section 1983[19] claim. If a district court determines that a judgment for the plaintiff on the Section 1983 damages action would not "demonstrate the invalidity of any **"outstanding criminal judgment"** against the plaintiff," the action is cognizable and should be allowed to proceed, in the absence of some other bar to the suit. *Id.*:

---

[18] *Arizona v. Gant* 556 U.S. ____ (2009) held that police may search the vehicle of its recent occupant after his "arrest" only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search, or that the vehicle contains evidence of the offense of the arrest. The Court reasoned that "warrantless searches are per se unreasonable" and subject only to a few, very narrow exceptions. Mr. Gant was arrested for a suspended license and the narrow exceptions did not apply to his case.
[19] 42 U.S.C. § 1983.

> *"[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the sec. 1983 **plaintiff's still-outstanding conviction**[20]. Because of doctrines like independent source and inevitable discovery, see Murray v. United States, 487 U.S. 533, 539 (1988), and especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991), such a sec. 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the sec. 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, see Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308 (1986), which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned)."*

*Heck,* 512 U.S. at 487 n.7.

> *A Section "1983 claim for damages resulting from a false arrest is not barred by Heck and accrues immediately after the arrest, because such alleged violations of the Fourth Amendment would not necessarily impugn the validity of a conviction . . . . We have applied this principle categorically to all sec. 1983 claims for false arrest, ruling that "Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid, so in all cases these claims can go forward."*

*Snodderly v. R.U.F.F. Drug Enforcement Task Force,* 239 F.3d 892 (7th Cir. 2001).

So, for example, in *Smith v. City of Hemet,* 394 F.3d 689 (9th Cir. 2005) the Ninth Circuit held that Smith's conviction for resisting / obstructing / delaying a peace officer did not bar a Section 1983 claim for the use of unreasonable force upon him, as Smith could have resisted the arresting officer, prior to their use of unreasonable force. Although an officer's use of unreasonable force is a defense

---

[20] "As the above excerpts show, the *Heck* rule for deferred accrual is called into play only when there exists "a conviction or sentence that has *not* been … invalidated," that is to say, an "outstanding criminal judgment."" *Wallace v. Kato,* 127 S.Ct. 1091,166 L.Ed.2d 973 (2007).

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

15

to violation of Cal. Penal Code § 148(a)(1), because an officer using unreasonable force is acting unlawfully, and, therefore, not in performance of duties[21], police are still not entitled to use excessive force following even a righteous arrest for a Section 148(a)(1) violation. Moreover, as shown above, cases such as *Arizona v. Evans*, 514 U.S. 14, 115 S.Ct. 1185 (1995) show that a person can suffer a violation of their fourth amendment rights, such as an unlawful seizure of their person, and still be convicted using evidence obtained from the constitutional violation. *See also, Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)[22]; *See also, Whiteley v. Warden*, 401 U.S. 560, 564, 91 S.Ct. 1031, 1034, 28 L.Ed.2d 306 (1971)[23]. Even a false arrest claim is not necessarily barred by a conviction, since a false arrest is not a defense to a conviction for a substantive offense, unless the lawfulness of the arrest is an element of the crime for which one is convicted.[24]   It is only when the civil judgment "impugns" issues adjudicated against the Section 1983 plaintiff, that *Heck* bars his Section 1983 claim. Moreover, on May 6, 2010, plaintiff was permitted to withdraw his plea of

---

[21] *See, People v. Curtis*, 70 Cal.2d 347 (1969) (peace officer not engaged in performance of duties if acting unlawfully); *See also, In re Joseph F.*, 85 Cal.App.4th 975, 982 (2000) (excessive force by a police officer not within the performance of officer's duty).

[22] Notwithstanding unconstitutional coerced confession, evidence obtained still admissible in criminal prosecution, as evidence would have been inevitably discovered.

[23] One police agency relying on warrant unlawfully procured without probable cause by another police agency in deciding to arrest defendant named in warrant, a fourth amendment violation. However, exclusionary rule not applicable. **In this case, Fouste would have assuredly asked the plaintiff his name, and upon running the same, would have discovered the protective order, that would have led to the arrest for the alleged violation of the same, which would have inevitably led to the discovery of the pot.**

[24] *Weinberg v. Shapiro*, 488 F.3d 1202 (9th Cir. 2007)."*An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.*"

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

16

guilty to marijuana possession, to change his guilty plea to a plea of not guilty[25], and thereafter, the Superior Court dismissed the very marijuana possession charge upon which defendants claim now bar plaintiff's unlawful search and seizure claims. Accordingly, there is no **"outstanding conviction"** to impugn.[26]

If the defendants are now claiming that the plaintiff's remedy to redress the unconstitutional searches and seizures complained of, was a motion to suppress the marijuana unlawfully obtained, they are estopped from taking that position, because all three of reports of the arresting deputy, defendant Matthew Prince, claim that the marijuana was obtained pursuant to a consent search of the plaintiff. Under those apparent facts, a reasonable criminal defense lawyer would likely believe that a motion to suppress in state court not only would have likely resulted in a denial of the motion[27], but would also have resulted in the plaintiff being collaterally estopped from raising those same search and seizure issues in this instant action by the denial of any such motion. *See, Ayers v. City of Richmond*, 895 F.2d 1267 (9th Cir. 1990) (collateral estoppel via the denial of a motion to suppress). It was not until December 31, 2009, at Fouste's deposition, that the plaintiff first learned of Fouste's (recent) claim that he did not have consent from plaintiff to search him, and that he based his search of the plaintiff on the alleged smell of unburnt pot[28]. Also, the remedies of withdrawal of plaintiff's plea via Cal. Penal Code § 1018, and of a *writ of habeas corpus*

---

[25] Under Cal. Penal Code § 1019: "1019.  The plea of not guilty puts in issue every material allegation of the accusatory pleading, except those allegations regarding previous convictions of the defendant to which an answer is required by Section 1025"
[26] "In *Heck*, a state prisoner filed suit under §1983 raising claims which, if true, would have established the invalidity of his **outstanding conviction**." *Wallace v. Kato*; 127 S.Ct. 1091,166 L.Ed.2d 973 (2007).
[27] Because the police are the only ones who usually testify, and almost always win a swearing contest in such a motion.

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

were/are unavailable to him as he was not placed on probation. Therefore, unlike other *Heck* type cases (i.e. *Kato, supra*) where the courts have held that the vehicle to attack a guilty plea is *habeas corpus* here no such remedy was available to the plaintiff. Accordingly, plaintiff's Section 1983 search and seizure claims are not barred by *Heck*, and defendants' motion for summary judgment should be denied.

### III. PLAINTIFF'S STATE LAW SEARCH AND SEIZURE CLAIMS, ARE NOT BARRED BY *YOUNT v. CITY OF SACRAMENTO*, OR *SUSAG v. CITY OF LAKE FOREST*.

Both *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401 (2002), and *Yount v. City of Sacramento*, 43 Cal.4th 885, 35 Cal.Rptr.3d 563, 574 (2008) involve cases where Section 1983 plaintiffs were convicted of violations of Cal. Penal Code § 148(a)(1)[29]; an element of which is that the victim peace officer was engaged in the lawful performance of his duties[30]. Not unlike *Smith v. City of Hemet, supra,* these cases hold that a plaintiffs' Section 1983 and analogous state law claims, are barred if an issue necessary to prevail in the plaintiff's civil action would be inconsistent with an issue already adjudicated (by plea or verdict) in the underlying criminal case. Moreover, in *Yount*, notwithstanding the plaintiff's no contest plea to violation of Section 148(a)(1), the California Supreme Court nonetheless held that Yount's claim for unreasonable force (i.e. being shot by police after his violent resistance) was not barred by *Heck*, as doing so would give the police *carte blanche* to shoot anyone that resisted them; regardless of the propriety of such use of force.

---

[28] As mentioned above, Fouste's Patrol Sergeant's Activity Report is missing.
[29] Yount also pleaded no contest to a DUI.
[30] *See, People v. Simons,* 42 Cal.App.4th 1100, 1109 (1996) (officer not in performance of duties when making false arrest; *See also, People v.Olguin,* 119 Cal.App.3d 39, 45 (1981).

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Moreover, neither *Yount* nor *Susag* deal with the issue posited by the defendants in this action; whether a civil judgment for the plaintiff on his search and seizure claims would be inconsistent with (would "impugn") his conviction for possession of marijuana. The answer is no; especially in light of the conviction now being deemed to have never existed via withdrawal, change of plea and dismissal. Defendants' instant motion for summary judgment should be denied.

### IV.   PLAINITFF'S FEDERAL CLAIM FOR UNREASONABLE FORCE AND STATE LAW CLAIM FOR BATTERY ARE PROPERLY SHOWN IN THIS ACTION.

#### A. <u>Plaintiff's Claims Against Defendants Prince, Hilliard And Hergesheimer For Unreasonable Force / Battery Are Properly Brought In This Action, And Are Not Entitled To Qualified Immunity.</u>

As plaintiff was unlawfully detained and arrested, all of the force used upon him was necessarily unreasonable. Moreover, there was no reason to have used any force on the plaintiff at all, as he was completely cooperative. While Hergesheimer pinned plaintiff's torso and face down onto the hood of his patrol car, he pulled plaintiff's handcuffed hands and arms high up behind his back; causing him to suffer substantial pain, attempting to provoke him. Exhibit "R"; at Windows Media Player Counter ("WMP") 07:44 / screen time 00:11:58 ("07:44/00:11:58"). Hergesheimer also grabbed plaintiff's testicles *("I'll get him good")*, that hurt him a lot[31]. Hergesheimer was still holding onto plaintiff, when plaintiff felt him and Hilliard kick his leg-iron chains; causing him great pain. Although the defendants claim that they applied leg-irons to plaintiff after he was

---

[31] When Hergesheimer was told that "the Sarge" had already searched plaintiff, he responded by stating: *"I'll get him good"*. Exhibit "R", 05:09/00:09:22.

tased, plaintiff shows otherwise. JOSH DECL ¶¶ 46-47. Plaintiff's head was also already turned to his right side and slightly backwards, from being pinned on the hood, Exhibit "R", 07:34/11:48-07:55-12:08, and he told the deputies that he was cooperating and that he did not deserve this brutal treatment. Exhibit "R", 08:04-12:20. A person may protest police actions, even with obscene words. *Duran v. City of Douglas*, 904 F2d 1372 (9th Cir. 1990); *See also, Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Prince was in front of the patrol car, watching what Hergesheimer and Hilliard were doing to plaintiff. Exhibit "R"; 08:25/00:12:39. After plaintiff began verbally protesting his treatment, Prince walked behind plaintiff, and grabbed onto the back of his neck with his hand. Exhibit "R"; 08:40/00:12:54. Plaintiff told the deputies that he didn't do anything wrong, and continued to verbally protest to them and tell then that he had rights. Exhibit "R"; 08:40/00:13:20. Plaintiff was not arching his back, nor standing-up, nor pushing back against the deputies, nor kicking, striking, pushing, resisting, or doing anything other than cooperating with them. Plaintiff also protested: *"I didn't do anything wrong. Don't tell me to keep my mouth shut"*, told them that he wanted their badge numbers, and that they weren't going to get away with this. Exhibit "R"; 09:18/00:13:31. In response to plaintiff's statements, Prince slammed his face into the hood of Hergesheimer's car; breaking his glasses, and causing a contusion to the bridge of his nose. Exhibit "R"; 09:23/00:13:36. See, Exhibit "W"; Photos of Injuries from shoving of plaintiff's face into hood. Plaintiff continued to protest, Exhibit "R"; 10:07/00:14:20, and told the deputies that they were all getting sued. Exhibit "R"; 10:30/00:14:44. Thereafter, plaintiff was grabbed by Prince and thrown to the ground in a violent manner; all while he was handcuffed and leg-ironed. Exhibit "R"; 0:54/00:15:07.

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
20

Plaintiff was then, without any warning, tased three times his rear/left lower back area, causing excruciating pain and leaving taser burn marks. See, Exhibit "X"; photos of taser burn marks; JOSH DECL ¶ 67. Plaintiff became unconscious from the pain, and the deputies pounced on him on the ground, and slammed his head against the car to wake him up. JOSH DECL ¶ 69. He felt like his legs were broken. Exhibit "R"; 12:30-12:45/00:16:41. He also complained that the leg-irons were way too tight. Exhibit "R"; 12:41/00:16:54. There was no justification for any of this, and police officers are not entitled to qualified immunity when there use of force was objectively unreasonable, such as here. See, *Bryan v. McPherson*, No. 08-55622 (9th Cir. 12/28/2009)[32]. Defendants Prince's, Hergesheimer's and Hilliard's motion for summary judgment should be denied, as principals, and as bystanders. See, *United States v. Koon*, 34 F.3d 1416, 1424-25 (9th Cir. 1994). Moreover, state law claims are not subject to qualified immunity. *Ogborn v City of Lancaster*,101 Cal.App.4th 448 , 124 Cal.Rptr.2d 238 (2002). Moreover, even if the plaintiff had "resisted the deputies in some manner, under the provocation doctrine, a police officer cannot escape civil liability by provoking a forceful or violent reaction from a person, and then claiming that the reaction to the officer's provocation as a basis to use force that would have otherwise not been necessary See, *Espinoza v. San Francisco*, No. 08-16853 (9th Cir. 3/9/10).[33]

---

[32] Even the Sheriff's Department own policy on taser use requires a warning, if practical. See, Exhibit "JJJ"; Section 77 of Orange County Sheriff's Department Operations and Procedures Manual; Electronic Control Weapon, I(A)(1)(g).

[33] "Where a police officer "intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, he may be held liable for his otherwise defensive use of deadly force." Billington v. Smith, 292 F.3d 1177, 1189 (9th Cir. 2002)".

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
21

**B. Plaintiff's Claims Against Defendants Padilla, Garcia, Foster, Hernandez And Hergesheimer For Unreasonable Force Are Properly Brought In This Action, And Are Not Subject To Qualified Immunity.**

On the way to the jail, plaintiff repeatedly told Hergesheimer that he will not be a problem and will cooperate with the deputies. Exhibit "R"; 43:16-44:23/00:28:47-00:29:54. When they arrived at the Jail entrance gate, Hergesheimer announced into the speaker phone: "18, one male, uncooperative." Exhibit "R"; 01:01:59/00:47:31. Plaintiff explained to defendant Padilla that he was cooperative. Exhibit "R"; 46:43/00:50:57. Padilla told plaintiff to get out of the car and after trying, he told Padilla that his feet were chained together, so he was going to have to help him by dragging him out of the car. Exhibit "R"; 47:24/00:51:37. Padilla and defendant Deputy Cyril Foster brutally yanked plaintiff out of the car, hurting his arm and causing him to fall to the ground; injuring him. Exhibit "R"; 48:08 / 00:52:22; Exhibit "G"; combined fixed video monitoring and hand held video of December 24, 2006 of plaintiff at the Orange County Jail; 05:36. Plaintiff then begged to be helped-up off of the ground, and Padilla and Hergesheimer picked him up. Exhibit "G"; 05:47. When they did so, plaintiff's ankles felt swollen from the leg-irons being applied to tightly, and as a result of the deputies kicking and stepping on the chain at the roadside scene. JOSH DECL ¶ 81. The leg-irons were causing plaintiff tremendous pain when he was lifted-up to a standing position, and he yelled out in pain; complaining that he couldn't walk in the leg-irons as his ankles were too tight, that he couldn't move them, and that they were extremely painful. Exhibit "G"; 05:51-06:00; JOSH DECL ¶ 84. The deputies ignored plaintiff's pleas for mercy, and made him walk in incredible pain. Exhibit "G"; 06:00; ultimately resulting in plaintiff twice collapsing from the pain while attempting to walk into the Jail. Exhibit; "G";

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

22

05:54 – 06:36. Finally, defendant Garcia picked-up plaintiff's leg-iron chain and Padilla and Hergesheimer grabbed him by his upper arms; causing excruciating pain in his shoulders and literally carried him into the jail. JOSH DECL ¶¶ 85-86. Garcia dropped the chain causing plaintiff's feet to thud to the floor, causing pain to radiate in his feet up through his ankles, and into his legs. Exhibit "G"; 06:36 – 07:14. During plaintiff's interview at Triage Counter; Padilla was standing and stepping on plaintiff's leg-irons chain for approximately 3 minutes, causing him to suffer more pain, and would not stop even when plaintiff complained to Padilla about his breaking his ankles. Exhibit "G"; 08:13 – 11:15. JOSH DECL ¶ 89.When plaintiff was done talking to the Triage Nurse, Padilla and Foster began to walk him toward the un-cuff area. Exhibit "G"; 11:16. However, they refused to take-off his leg-irons, or to even loosen them, and when he began to walk, and he again collapsed to the floor; screaming out in pain that he could not walk. Exhibit "G"; 11:16–11:24. Rather than take off or loosen the leg-irons, Padilla and Foster picked plaintiff up off of the floor by holding onto his shoulders, and Garcia picked-up his leg-iron chain; all three carrying plaintiff to a cell (along with Streeter), which again, caused excruciating pain in plaintiff's ankles, legs and shoulders. Exhibit "G"; 11:24 – 12:12[34]. Plaintiff felt like his arms were being ripped-off and his chest, back and shoulders were in severe pain. JOSH DECL ¶¶ 91-94.

Once plaintiff was in the cell, he was smothered by the body weight of deputies, and tortured by their wrist locks and literal twisting of his arms. JOSH DECL ¶ 95. He begged for mercy, for the deputies to stop torturing him, and prayed to God to help him. Exhibit "G"; 13:05. Padilla held onto plaintiff's right

---

[34] In his Jail Incident Report, Deputy Padilla again wrote that that plaintiff threw himself to the ground and refused to walk. Exhibit "F", p.1, ¶ 3.

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

23

arm and was holding it and bending it in a very painful way. Exhibit "G";
Counter 13:05-14:28; JOSH DECL ¶ 96. Foster held onto his left arm and was
also holding it and bending it in a very painful way. JOSH DECL ¶ 97. Exhibit
"G"; 13:05-14:28. Defendant David Hernandez and Deputy Streeter pinned
plaintiff's legs down, bending them onto plaintiff's rear end area with their body
weight; also causing him to suffer great pain. Exhibit "G";13:05-14:32. Foster
and Padilla kept on twisting plaintiff's arms, causing him to suffer great pain;
especially to his shoulders, until finally, Padilla twisted his right arm so severely,
that he dislocated it out of plaintiff's right arm socket. One can actually hear it
crack when Padilla bent it all the way over. Exhibit "G";14:32; JOSH DECL ¶
101. This caused plaintiff to suffer incredible pain, and to this day, plaintiff's
right shoulder remains dislocated, and often pops out of his right arm socket.
JOSH DECL ¶ 101. Notwithstanding plaintiff screaming out in agony, none of
the deputies would stop torturing him. Padilla then warned plaintiff that he had a
taser pointed at his back, and if he did follow his directions, or if he moved before
the deputies left the cell that he would be tased again. Exhibit "G"; 14:51-16:40.
Plaintiff also suffered multiple contusions, scrapes, cuts and other injuries from
being tortured and brutalized as described above; many of said injuries being
shown in separately filed Exhibit "Z". Defendants motion for summary judgment
should be denied.

### V.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT BARRED BY CAL. GOV'T CODE SECTION 821.6 IMMUNITY.

#### A. Cal. Gov't Code § 821.6 Does Not Provide Immunity For A Violation Of Cal. Civil Code § 52.1.

See, *Gillan v. City of San Marino*, 147 Cal.App.4th 1033 (2007) (no 821.6
immunity for a violation of Cal. Civil Code § 52.1).

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
24

**B. Cal. Gov't Code § 821.6 Does Not Provide Immunity For A False Arrest By A Peace Officer.**

*See, Hamilton v. City of San Diego,* 217 Cal.App.3d 838, 844, 266 Cal.Rptr. 215 (1990) and *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 63 Cal.Rptr.2d 842 (1997) (peace officer liable for false arrest).

**C. Cal. Gov't Code § 821.6 Does Not Provide Immunity For Negligence By A Peace Officer.**

*See, Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 208-210 (1991); Cal Civil Code § 1714, Cal Gov't Code § 815.2 and Cal Gov't Code § 820 (public entity liable for negligent acts of public employee.

## VI.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT BARRED BY CAL. GOV'T CODE SECTION 820.2 IMMUNITY.

Cal Gov't Code § 820.2 is discretionary act immunity. It provides immunity to public officers for discretionary acts, such as deciding whether or not to arrest a person, whether or not to investigate, and other discretionary acts. However, a peace officer does not have the discretion to violate the law. Accordingly, the discretionary act immunity does not immunize the defendants in this action.

## VII.   DEFENDANTS ARE LIABLE FOR FAILING TO INTERVENE TO PREVENT THE USE OF UNREASONABLE FORCE ON THE PLAINTIFFS BY THE OTHER DEFENDANTS TO THIS ACTION.

*See, Ramirez v. Butte-Silver Bow County,* 298 F.3d 1022 (9th Cir. 2002).

Respectfully submitted,

Dated: May 14, 2010

_____
Jerry L. Steering

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
25

## PROOF OF SERVICE

I declare that I am employed in the County of Orange, State of California. I am over the age of eighteen years and not a party to the within cause; my business address is 4063 Birch Street, Suite 100, Newport Beach, California 92660.

On May 14, 2010, I served:

PLAINTIFF'S SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO INDIVIDUAL COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT / SUMMARY ADJUDICATION OF ISSUES

On the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Daniel Cha, Esq.
Christina Sprenger, Esq.
Lawrence, Beach, Allen and Choi, PC
1600 North Broadway
Suite 1010
Santa Ana, CA 92706

( X ) BY MAIL I placed each sealed envelope with postage there prepaid, for collection and mailing at Newport Beach, California, following ordinary business practices. I am readily familiar with the practice that in the ordinary course of business, correspondence is deposited in the United Stated Postal Service the same day as it is placed for processing.

( X ) BY E-MAIL (via e-filing)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This 14th day of May, 2010, at Newport Beach, California.

Belinda Hernandez

SECOND AMENDED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT