1 David D. Lawrence, Esq. [State Bar No. 123039]
  E-Mail: dlawrence@lbaclaw.com
2 Christina M. Sprenger, Esq. [State Bar No. 205105]
  E-Mail: csprenger@lbaclaw.com
3 Daniel S. Cha, Esq, [State Bar No. 260256]
  E-Mail: dcha@lbaclaw.com
4 LAWRENCE BEACH ALLEN & CHOI, PC
  1600 North Broadway, Suite 1010
5 Santa Ana, California 92706
  Telephone No. (714) 479-0180
6 Facsimile No.  (714) 479-0181

7 Attorneys for Defendants,
  COUNTY OF ORANGE, SEAN HILLIARD, JAMES FOUSTE, JARRETT
8 KURIMAY, DAVID HERNANDEZ, CYRIL FOSTER, MANUEL GARCIA,
  MICHAEL PADILLA, IRA ESSOE, MARK HERGESHEIMER, MARK
9 KUNAR, MATTHEW PRINCE and MICHAEL CARONA

10                      **UNITED STATES DISTRICT COURT**

11                      **CENTRAL DISTRICT OF CALIFORNIA**

12

13 JOSHUA RASHID RADWAN,                ) Case No. SACV 08-00786 AG (ANx)
                                        )
14         Plaintiffs,                  )
                                        ) **INDIVIDUAL DEFENDANTS' REPLY**
15    vs.                               ) **MEMORANDUM OF POINTS AND**
                                        ) **AUTHORITIES TO PLAINTIFF'S**
16 COUNTY OF ORANGE ,                   ) **OPPOSITION TO INDIVIDUAL**
   MICHAEL CARONA, JAMES                ) **DEFENDANTS' MOTION FOR**
17 FOUSTE, SEAN HILLIARD,               ) **SUMMARY JUDGMENT/SUMMARY**
   MATTHEW PRINCE, MARK                 ) **ADJUDICATION**
18 KUNAR, MARK HERGESHEIMER,            )
   IRA ESSOE, MICHAEL PADILLA,          )
19 MANUEL GARCIA, CYRIL                 )
   FOSTER, THOMAS STREETER,             ) Hearing:
20 DAVID HERNANDEZ, JARRETT             ) Date:   June 7, 2010, 2010
   KURIMAY and DOES 1 through 10,       ) Time: 10:00 a.m.
21 inclusive,                           ) Crtrm.: 10D
                                        )
22         Defendants.                  ) Discovery Cut-Off: 2/22/10
                                        ) Pre-Trial Conference: 6/21/10
23 ──────────────────────────────       ) Trial Date: 7/6/10

24                                        **MATTER FOR DETERMINATION**
25                                        **BY THE HONORABLE ANDREW J.**
                                          **GUILFORD**
26

27 ///
28 ///

                                        1

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.  *HECK* BARS PLAINTIFF'S CLAIMS ARISING FROM FOUSTE'S
SEARCH AND SEIZURE. ................................................................................ 1

 A.  Plaintiff's Search And Seizure Claim For Fouste's Seizure And Search
 Necessarily Implies The Invalidity Of His Conviction. .............................. 1

 B.  Withdrawal Of Plaintiff's Guilty Plea And Dismissal Of His Marijuana
 Count Pursuant to Penal Code § 1203.4/1203.4a Does Not Invalidate
 Plaintiff's Conviction ................................................................................. 3

II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO
PLAINTIFF'S FOURTH AMENDMENT CLAIMS. ..................................... 6

 A.  Defendants Are Entitled To Qualified Immunity As To Plaintiff's
 Search And Seizure Claims. ........................................................................ 6

  1.  A 911 Call Is Sufficient To Establish Reasonable Suspicion. .................. 6

  2.  Sergeant Fouste Searched Plaintiff Incident To An Arrest Based On
  Probable Cause. ........................................................................................ 9

  3.  The Search Of Plaintiff's Vehicle Was Reasonable ................................ 10

   i.  Defendants Had Probable Cause To Believe There Were Drugs In
   Plaintiff's Vehicle ................................................................................. 10

   ii. The Search Of Plaintiff's Vehicle Was A Reasonable Search Incident
   To Arrest ................................................................................................. 11

  4.  The Decision To Transport Plaintiff To Jail For Booking Was
  Supported By Probable Cause .................................................................. 15

 B.  Defendants Are Entitled To Qualified Immunity As To Plaintiff's
 Unreasonable Force Claims. ....................................................................... 17

  1.  The Use Of Force At The Arrest Scene Was Reasonable ........................ 17

  2.  The Use Of Force At The Jail Was Reasonable ...................................... 21

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

    i.   Removing Plaintiff From The Car And Carrying Him At His
Request Was Reasonable......................................................................... 21

    ii.  Placement Of Plaintiff In A Medical Observation Cell Was
Reasonable.......................................................................................... 21

III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY
AS TO PLAINTIFF'S FEDERAL BYSTANDER/SUPERVISORY
CLAIMS. ............................................................................................ 22

IV. INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED
IMMUNITY AS TO PLAINTIFF'S FIRST AMENDMENT CLAIMS. ....... 23

V.  PLAINTIFF CONCEDES THERE IS NO LIABILITY FOR
CONSPIRACY. ................................................................................... 24

VI. STATUTORY IMMUNITIES BAR SEVERAL OF PLAINTIFF'S
STATE LAW CLAIMS........................................................................ 24

  A.  Government Code § 821.6 Bars Plaintiff's 11th, 12th, 13th, and 14th
Causes Of Action With Regard To The Arrest Incident. ........................... 24

  B.  Plaintiff Concedes Government Code § 820.8 Bars Liability For
Others' Actions. ............................................................................... 25

VII.  PLAINTIFF CONCEDES NO SEPARATE CAUSE OF ACTION FOR
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS........................ 25

VIII.    CONCLUSION. ......................................................................... 25

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Agner v. City of Hermosa Beach,*

5

   315 Fed.Appx. 29 (9th Cir. 2008) ..................................................................... 6

6

*Alabama v. White,*

7

   496 U.S. 325 (1990)........................................................................................... 9

8

*Arizona v. Gant,*

9

   __ U.S. __, 129 S.Ct. 1710 (2009) ............................................................. 1, 14

10

*Asgari v. City of Los Angeles,*

11

   15 Cal.4th 744 (1997).................................................................................... 24

12

*Brooks v. City of Seattle,*

13

   599 F.3d 1018 (9th Cir. 2010) .................................................................. 19, 22

14

*Bryan v. McPherson,*

15

   590 F.3d 767 (9th Cir. 2009) ........................................................................ 18

16

*Campos v. City of Merced,*

17

   __ F.Supp.2d __, 2010 WL 1729798 at *15 (E.D. Cal. 2010)........................... 5

18

*Copus v. City of Edgerton,*

19

   151 F.3d 646 (7th Cir. 1998) .......................................................................... 2

20

*Coscia v. McKenna & Cuneo,*

21

   25 Cal.4th 1194 (2001) ................................................................................... 6

22

*Cunningham v. Gates,*

23

   229 F.3d 1271 (9th Cir. 2000) ...................................................................... 23

24

*Dominguez-Curry v. Nevada Transp. Dept.,*

25

   424 F.3d 1027 (9th Cir. 2005) ...................................................................... 16

26

*Florida v. J.L.,*

27

   529 U.S. 266 (2000)..................................................................................... 7, 8

28

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

1    *Forrester v. City of San Diego,*
2      25 F.3d 804 (9th Cir. 1994) ................................................................ 22
3    *Gallegos v. City of Los Angeles,*
4      308 F.3d 987 (9th Cir. 2002) .......................................................... 6, 7
5    *Gaudreault v. Municipality of Salem, Mass.,*
6      923 F.2d 203, 207 fn. 3 (1st Cir. 1990) ...................................... 23
7    *Gerstein v. Pugh,*
8      420 U.S. 103 (1975) ........................................................................ 16
9    *Gillan v. City of San Marino,*
10     147 Cal.App.4th 1033 (2007) ....................................................... 24
11   *Graham v. Connor,*
12     490 U.S. 386 (1989) ................................................................. 17, 20
13   *Hansen v. Black,*
14     885 F.2d 642 (9th Cir. 1989) ...................................................... 23
15   *Harvey v. Waldron,*
16     210 F.3d 1008 (9th Cir. 2000) ..................................................... 2, 3
17   *Heck v. Humphrey,*
18     512 U.S. 477 (1994) ................................................................. passim
19   *Hunter v. Bryant,*
20     502 U.S. 224 (1991) ........................................................................ 17
21   *Illinois v. Wardlow,*
22     528 U.S. 119 (2000) .......................................................................... 7
23   *In re Demetrius A.,*
24     208 Cal.App.3d 1245 (1989) ....................................................... 14
25   *In re Phillips,*
26     17 Cal. 2d 55 (1941) ......................................................................... 5
27   *Jennings v. Mukasey,*
28     511 F.3d 894 (9th Cir. 2007) ......................................................... 4

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

*Johnson v. City of Pacifica,*

   4 Cal.App.3d 82 (1970) ........................................................................... 25

*Johnson v. Duffy,*

   588 F.2d 740 (9th Cir. 1978) .................................................................. 23

*Knowles v. Iowa,*

   525 U.S. 113 (1998) ........................................................................ 11, 13

*Mary M. v. City of Los Angeles,*

   54 Cal.3d 202 (1991) ............................................................................. 24

*Maryland v. Dyson,*

   527 U.S. 465 (1999) .......................................................................... 1, 10

*Mattos v. Agarano,*

   590 F.3d 1082 (9th Cir. 2010) ................................................... 18, 19, 20

*McGinest v. GTE Serv. Corp.,*

   360 F.3d 1103 (9th Cir. 2004) ................................................................ 17

*New York v. Belton,*

   453 U.S. 454 (1981) ................................................................................ 14

*Paff v. Kaltenbach,*

   204 F.3d 425 (3rd Cir. 2000) ................................................................. 16

*People v. Frawley,*

   82 Cal.App.4th 784 (2000) ....................................................................... 4

*People v. Vasquez,*

   25 Cal.4th 1225 (2001) ........................................................................ 4, 5

*Rizzo v. Goode,*

   423 U.S. 362 (1976) ................................................................................ 23

*Saucier v. Katz,*

   533 U.S. 194 (2001) ................................................................................ 21

*Scott v. Harris,*

   550 U.S. 372 (2007) ................................................................................ 17

*Sloman v. Tadlock,*
  21 F.3d 1462 (9th Cir. 1994) ..................................................................... 24

*Snodderly v. R.U.F.F. Drug Enforcement Task Force,*
  239 F.3d 892 (7th Cir. 2001) ...................................................................... 2

*Susag v. City of Lake Forest,*
  94 Cal.App.4th 1401 (2002) ....................................................................... 5

*Tatum v. City and County of San Fransisco,*
  441 F.3d 1090 (9th Cir. 2006) ................................................................... 16

*Thornton v. United States,*
  541 U.S. 615 (2004) ............................................................................ 14, 15

*United States v. Del Vizo,*
  918 F.2d 821 (9th Cir. 1990) ....................................................................... 9

*United States v. Dorsey,*
  418 F.3d 1038 (9th Cir. 2005) ................................................................... 14

*United States v. Holloway,*
  290 F.3d 1331 (11th Cir. 2002) ................................................................... 8

*United States v. Humphries,*
  372 F.3d 653 (4th Cir. 2004) ....................................................................... 9

*United States v. Richard,*
  732 F.Supp. 656 (W.D. Va. 1990) ............................................................... 9

*United States v. Terry-Crespo,*
  356 F.3d 1170 (9th Cir. 2004) ................................................................. 7, 8

*United States v. Valentine,*
  232 F.3d 350 (3d Cir. 2000) ....................................................................... 8

*United States v. Vasey,*
  834 F.2d 782 (9th Cir. 1987) ..................................................................... 14

*Virginia v. Moore,*
  553 U.S. 164 (2008) ............................................................................ 12, 13

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

*Wallace v. Kato*,

   549 U.S. 384 (2007)................................................................................... 2

*Whitaker v. Garcetti*,

   486 F.3d 572 (9th Cir. 2007) ................................................................... 3

*Yount v. County of Sacramento*,

   43 Cal.4th 885 (2008) .......................................................................... 5, 6

**Statutes**

42 U.S.C. § 1983 ............................................................................... 2, 3, 6

California Civil Code § 52.1 ................................................................... 24

California Government Code § 820.2 ..................................................... 25

California Government Code § 820.8 ..................................................... 25

California Government Code § 821.6 ..................................................... 24

California Health and Safety Code § 11357(a).................................... 14

California Health and Safety Code § 11357(b).............................. passim

California Penal Code § 1203.4 ........................................................... 4, 5

California Penal Code § 1203.4(a)............................................................ 4

California Penal Code § 1203.4a(a).......................................................... 4

California Penal Code § 148(a)(1)........................................................ 5, 6

California Penal Code Section 1203.4a ............................................... 4, 5

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   *HECK* BARS PLAINTIFF'S CLAIMS ARISING FROM FOUSTE'S
     SEARCH AND SEIZURE.

     A.   Plaintiff's Search And Seizure Claim For Fouste's Seizure And
          Search Necessarily Implies The Invalidity Of His Conviction.

Plaintiff argues that his claims that Fouste's search and seizure were
unreasonable would not necessarily imply the invalidity of his conviction for
possession of marijuana.  First, Plaintiff relies on a footnote in *Heck v. Humphrey*,
512 U.S. 477, 487 fn. 7 (1994), which recognized that *Heck* would not necessarily
apply in all cases of an allegedly unreasonable search.  *Id.*  The Supreme Court
noted the possibility that the fruits of an unreasonable search may be admitted in a
criminal case pursuant to exceptions to the exclusionary rule, such as independent
source, inevitable discovery, and because of the harmless error doctrine.  *Id.*

Plaintiff argues that this footnote applies to prevent *Heck* from applying to his
case, because the marijuana in Plaintiff's pocket would inevitably have been
discovered.  (Plaintiff's Opposition ("Opposition") at p. 16, fn. 23).  Plaintiff argues
Fouste would have asked Plaintiff's name and run it, found the protective order, then
arrest for violating the order, which would then have resulted in discovery of the
marijuana. (Opposition at p. 16, fn. 23).  This analysis is incorrect.  Without
discovering the marijuana in the first place, the Deputies would have had no
justification for searching Plaintiff's Range Rover – there would have been no
probable cause that drugs were in the car to justify an automobile search pursuant to
*Maryland v. Dyson*, 527 U.S. 465, 467 (1999), and there would not have been an
arrest for possession of marijuana that would have justified a search incident to
arrest of Plaintiff's car pursuant to *Arizona v. Gant*, __ U.S. __, 129 S.Ct. 1710,
1719, 1723 (2009).  Without searching the car, the Deputies would not have
discovered Plaintiff's knives.  Accordingly, the Deputies would not have had
probable cause to believe Plaintiff had violated the terms of his protective order by

possessing the knives[1].  There then would not have been a search incident to arrest to turn up the marijuana.  As a result, the inevitable discovery exception to the exclusionary rule could not have applied.  Plaintiff does not argue that the independent source exception to the exclusionary rule would apply or that the harmless error doctrine would apply to Fouste's search and seizure of Plaintiff.

In addition to incorrectly arguing that the marijuana would have been inevitably discovered, Plaintiff relies on *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892 (7th Cir. 2001).  The Seventh Circuit expanded *Heck*'s footnote 7 to categorically allow any unreasonable search claims regardless of whether they were subject to the exclusionary rule or the harmless error doctrine.  *Id.* at 897 (quoting *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998)).  The Ninth Circuit has expressly rejected the Seventh Circuit's categorical rule.  *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (*abrogated on other grounds*, *Wallace v. Kato*, 549 U.S. 384, 392-96 (2007)).  *Harvey* rejected *Copus*, and found "[other] Circuits have taken the better approach and therefore hold that a 42 U.S.C. § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until... the conviction has been overturned." *Id.* *Harvey*'s application of *Heck* is substantively indistinguishable to this case.

> "In [*Harvey*], the evidence seized in the allegedly unlawful search-gaming devices-was an essential element of the crime of which Harvey was charged-illegal possession of gaming devices.  If Harvey had been tried and convicted of this crime, a § 1983 action challenging the legality of the search and resulting seizure of this evidence, if successful, would have implicated the validity of the resulting conviction and would not, therefore, have been

---

[1] Interestingly, Plaintiff apparently concedes that the conflicting databases with regard to the protective order – one reflecting a prohibition only on possession of firearms, the other reflecting a prohibition on possession of any weapon – were

2

cognizable under *Heck*."

*Id.* at 1015-16; *see also, Whitaker v. Garcetti*, 486 F.3d 572, 584 (9th Cir. 2007) ("[Plaintiffs] challenge the search and seizure of the evidence upon which their criminal... convictions were based. *Heck* and *Harvey* bar such a collateral attack through the vehicle of a civil suit.").

As a result, Plaintiff's claim that Fouste unreasonably seized and searched him, which resulted in the discovery of the marijuana, necessarily implies the invalidity of his conviction for possession of marijuana. Claims related to Fouste's seizure are barred by *Heck*, as noted in the moving papers, because the allegedly unreasonable search flowed from Fouste's intial detention, then arrest on probable cause of marijuana possession.

**B.      Withdrawal Of Plaintiff's Guilty Plea And Dismissal Of His Marijuana Count Pursuant to Penal Code § 1203.4/1203.4a Does Not Invalidate Plaintiff's Conviction.**

Plaintiff finally argues Plaintiff was permitted to withdraw his guilty plea, and plead not guilty pursuant to a California statutory rehabilitation provision, so there is no outstanding conviction for his unreasonable search and seizure claim to impugn. (Opposition at 16:16-17:4). As noted above and in the moving papers, a plaintiff may not recover damages pursuant to a Section 1983 violation, if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. The Supreme Court identified and circumscribed the ways in which a plaintiff could overcome the bar: "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus...." *Id.* at 486-87.

_____

sufficient to establish probable cause to believe Plaintiff violated the protective order, if the Deputies lawfully discovered Plaintiff's knives.

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Plaintiff admits he pleaded guilty to possession of marijuana, a violation of Health and Safety Code § 11357(b). Specifically, on January 18, 2008, Plaintiff withdrew his initial plea of Not Guilty, pled Guilty as to the marijuana charge, and was sentenced to pay a fine. (Defendants' Exhibit "K"). Plaintiff paid his fines and his case was closed. (Plaintiff's Exhibit "JJJJJ" at p. 6). On April 15, 2010, Plaintiff petitioned for relief under Penal Code § 1203.4/1203.4a[2] to withdraw his guilty plea and to have his marijuana charge dismissed. (Plaintiff's Exhibit "JJJJJ" at p. 6).

Under Penal Code § 1203.4/1203.4a, once a criminal defendant fulfills the terms of his or her probation or sentence, he or she may apply for relief whereby a plea of Guilty may be withdrawn to enter a plea of Not Guilty, and the charge is dismissed. Penal Code §§ 1203.4(a) and 1203.4a(a). The criminal defendant "shall thereafter be released from all penalties and disabilities resulting from the offense... [except as provided under certain other statutory provisions]." *Id.* However, "in any subsequent prosecution... the prior conviction may be pleaded and proved and shall have the same effect as if" relief under the statute had not been given. *Id.*

Relief under Penal Code § 1203.4/1203.4a is not a reversal on direct appeal, a declaration of invalidity, or issuance of a writ of habeas corpus. Neither is the relief an expungement by executive order. *People v. Vasquez*, 25 Cal.4th 1225, 1230 (2001) (*citing, People v. Frawley*, 82 Cal.App.4th 784, 790-792 (2000) ("The statute does not purport to render the conviction a legal nullity.")); *see also, Jennings v. Mukasey*, 511 F.3d 894, 898-91 (9th Cir. 2007) (holding relief not an expungement and distinguishing from executive pardon power). Furthermore, the "final judgment of conviction is a fact; and its effect cannot be nullified for the purpose here involved, either by the order of probation or by the later order dismissing the action

---

[2] Penal Code § 1203.4 applies to felony or misdemeanor convictions resulting in probation, whereas Penal Code § 1203.4a applies to misdemeanor convictions resulting in a sentence without probation. *Compare*, Penal Code § 1203.4(a) with Penal Code § 1203.4a(a).

after judgment [pursuant to Penal Code § 1203.4].'" *Vasquez*, 25 Cal.4th at 1230 (*citing*, *In re Phillips*, 17 Cal. 2d 55, 61 (1941) (affirming disbarment based on conviction subject to relief under Penal Code § 1203.4)). *Vasquez* reaffirmed "that 'action in mitigation of the defendant's punishment should not affect the fact that his guilt has been finally determined according to law.'" *Id.* (*citing In re Phillips*, 17 Cal. 2d at 61)). As a result, notwithstanding relief under Penal Code § 1203.4/1203.4a, "*Heck* will act to bar Plaintiff's claims regarding his arrest or the probable cause related thereto...." *Campos v. City of Merced*, __ F.Supp.2d __, 2010 WL 1729798 at *15 (E.D. Cal. 2010).

Moreover, since relief is premised on fulfillment of the terms of probation or criminal sentence, and relief is prospective in nature only, the statute leaves the criminal sentence in place. In other words, Plaintiff is not entitled to a refund of his fine for violating Health and Safety Code § 11357(b). Thus, not only is Plaintiff's conviction still a valid legal fact, Plaintiff's sentence remains undisturbed, even if it has been served. Plaintiff's claims that Fouste's search and seizure were unreasonable would still therefore impermissibly "necessarily imply the invalidity of his conviction *or sentence*...." *Heck*, 512 U.S. at 487 (emphasis added).

Therefore, Plaintiff's reliance on the relief granted under Penal Code § 1203.4/1203.4a is unavailing. Plaintiff's conviction remains a valid legal fact, which is still in legal effect as to certain statutory restrictions and future criminal prosecutions, and which Plaintiff has not overcome by any of the means identified in *Heck*. In addition, Plaintiff's sentence remains undisturbed. Accordingly, Plaintiff's claims of unreasonable seizure and search against Fouste remain barred by *Heck*.

With regard to the state law claims arising out of Fouste's search and seizure, Plaintiff appears to argue that *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401 (2002) and *Yount v. County of Sacramento*, 43 Cal.4th 885 (2008), are limited to their facts, as the plaintiffs in those cases asserted battery claims after being convicted of violating Penal Code § 148(a)(1) – obstructing, delaying or resisting a

peace officer.  However, in applying the *Heck* doctrine to the state law claims, those courts did not confine them to cases arising out of Penal Code § 148(a)(1).  Rather, in applying the *Heck* doctrine to the state law causes of action at bar, the California Supreme Court reasoned broadly that "*Heck* and California law express similar concerns about judicial economy and the avoidance of conflicting resolutions" and "we cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct." *Yount*, 43 Cal.4th at 902.

The California Supreme Court also reasoned it had previously relied on *Heck* to hold that a convicted criminal defendant could not bring a legal malpractice claim against his criminal defense attorney until obtaining postconviction relief. *Id.* (*citing, Coscia v. McKenna & Cuneo*, 25 Cal.4th 1194, 1197, 1204 (2001)).  Based on this analysis, the Ninth Circuit recently affirmed dismissal of a state law claim of false arrest. *Agner v. City of Hermosa Beach*, 315 Fed.Appx. 29, 30 (9th Cir. 2008) (not reported) (*citing, Yount*).  As a result, Plaintiff's state law claims arising out of Fouste's search and seizure are barred to the same extent the 42 U.S.C. § 1983 claims arising out of the same alleged misconduct are barred by *Heck*.

## II.   **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S FOURTH AMENDMENT CLAIMS.**

### A.   **Defendants Are Entitled To Qualified Immunity As To Plaintiff's Search And Seizure Claims.**

Notwithstanding *Heck*, Defendants are entitled to qualified immunity as their conduct did not violate Plaintiff's Fourth Amendment rights, and in any event a reasonable officer could conclude their conduct was reasonable.

#### 1.   **A 911 Call Is Sufficient To Establish Reasonable Suspicion.**

Plaintiff does not dispute that the Fourth Amendment authorizes brief, investigatory seizures (*Terry* stops), so long as police have reasonable, articulable suspicions of criminal activity. *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002).  "The reasonable suspicion standard 'is a less demanding standard

than probable cause,' and merely requires 'a minimal level of objective justification.'" *Id.* (quoting, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Plaintiff instead argues that the 911 call informing the Sheriff's Department of a possible assault was insufficient to establish reasonable suspicion because the caller's identity was anonymous. Plaintiff cites *Florida v. J.L.*, 529 U.S. 266 (2000).

In *J.L.*, an anonymous caller reported a young black male wearing a plaid shirt at a particular bus stop was carrying a concealed weapon. *Id.* at 268. The police arrived at the bus stop shortly and saw three black males; one had a plaid shirt, but there was no indication of any illegal conduct. *Id.* The officers frisked J.L. and found a gun. *Id.* The Supreme Court held that the anonymous tip could not support reasonable suspicion to detain J.L without sufficient indicia of reliability. *Id.*

The 911 call in this case is not an "anonymous tip" in the sense that term was used in *J.L.* The Supreme Court in *J.L.* "emphasized that the record was devoid of *any* documentation or audio recording of the tip whatsoever. [Citation.] Absent evidence of the original call, the specter of after-the-fact, police fabrication of an 'anonymous informant' would challenge any Fourth Amendment analysis." *United States v. Terry-Crespo*, 356 F.3d 1170, 1175 (9th Cir. 2004). The same concerns do not apply where the telephone call is noted and recorded. *Id.*

Moreover, a 911 call is different than an "anonymous tip" related to general criminality, as in *J.L.*

"Calls to 911, on the other hand, involve exigent situations that may limit the police's ability to gather identifying information. [Citation.] Police delay while attempting to verify an identity or seek corroboration of a reported emergency may prove costly to public safety and undermine the 911 system's usefulness. We do not believe that the Constitution requires that result.... The Fourth Amendment does not require the police to conduct further pre-response verification of a 911 caller's identity where the caller reports an emergency. Accordingly, an emergency 911 call is entitled to greater reliability than an

7

anonymous tip concerning general criminality."

*Id.* at 1176 (citation omitted).

The Eleventh Circuit has come to a similar conclusion with regard to anonymous 911 callers. "[T]he fact that a 911 caller chooses-or is forced-to remain anonymous may very well have little bearing on the veracity of the caller. If law enforcement could not rely on information conveyed by anonymous 911 callers, their ability to respond effectively to emergency situations would be significantly curtailed.... police officers must be given the authority and flexibility to act quickly, based on limited information, when human life is at stake.... The fact that no victims are found, or that the information ultimately proves to be false or inaccurate, does not render the police action any less lawful." *United States v. Holloway*, 290 F.3d 1331, 1339-40 (11th Cir. 2002).

In addition, a 911 call is substantively different that the *J.L.* "anonymous tip" because "[m]erely calling 911 and having a recorded telephone conversation risks the possibility that the police could trace the call or identify [the caller] by voice." *Terry-Crespo*, 356 F.3d at 1176 (*citing*, *J.L.*, 529 U.S. at 276 (Kennedy, J., concurring). Moreover, a 911 call reporting information only a few minutes old, seeking police assistance, and providing a description of the suspect, is entitled to greater reliance than an "anonymous tip." *Id.* at 1177 (citing *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000)). In this case, the 911 caller was recorded and conveyed recent information of a possible assault. She provided a description of the kicking man, of the person on the ground, and of the vehicle they were next to (a Range Rover). As a result, pursuant to *Terry-Crespo*, *Holloway*, and *Valentine*, there was sufficiently reliable and actionable information to justify the investigatory detention in this case.

Moreover, when Fouste arrived at the scene, he observed a woman (Cassandra Fults) on the ground next to a Range Rover with a man standing near her. Fults was crying hysterically. Since the 911 call is more reliable than a true "anonymous tip,"

even if it were insufficient on its own to establish reasonable suspicion, Fouste's personal observations provided the additional information necessary. *See, Alabama v. White*, 496 U.S. 325, 330 (1990) (less additional information required the more reliable the tip). As a result, the initial investigatory detention was reasonable.

Fouste is at least entitled to qualified immunity as a reasonable officer in his position could conclude there was reasonable suspicion for the initial detention.

## 2. Sergeant Fouste Searched Plaintiff Incident To An Arrest Based On Probable Cause.

Plaintiff makes an extended argument in his opposition that Fouste's search of Plaintiff was unreasonable because it extended beyond the scope of a lawful pat-down search for weapons (*Terry* frisk) pursuant to an investigatory detention. However, this entire argument is a red herring that misleads or confuses the issues. Defendants did not argue in their moving papers that Fouste's search of Plaintiff was justified as a *Terry* frisk. Rather, Defendants argued and maintain that the search of Plaintiff was incident to his arrest on probable cause that he possessed marijuana.

As stated in the moving papers, Plaintiff was arrested once Fouste told Plaintiff that he smelled marijuana on Plaintiff's person. *See, United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990) ("There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning."); *United States v. Richard*, 732 F.Supp. 656, 663 (W.D. Va. 1990) (*Terry* stop ripened into arrest when criminal defendants knew police had probable cause to arrest); *United States v. Humphries*, 372 F.3d 653, 659-660 (4th Cir. 2004) ("[I]f an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana.").

Plaintiff disputes whether Fouste could smell the marijuana in the first place, and states Fouste did not tell Plaintiff he smelled marijuana until after the search. As

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

1   set forth in Defendants' Reply Separate Statement of Undisputed Material Facts

2   ("Reply SS"), and in Defendants' Evidentiary Objections to Plaintiff's Evidence,

3   Plaintiff's speculation and/or lay opinion that Fouste could not smell the marijuana

4   in Plaintiff's possession is inadmissible.  In addition, Plaintiff's self-serving

5   declaration that Fouste told him he smelled the marijuana only after the search

6   impermissibly contradicts Plaintiff's prior sworn testimony that Fouste told him he

7   smelled marijuana while it remained in Plaintiff's pocket[3].  Accordingly, Plaintiff

8   has not raised a genuine disputed issue of material fact as to whether Fouste smelled

9   the marijuana or whether he told Plaintiff of the same before the search.

10  Accordingly, Plaintiff was lawfully searched incident to his arrest for possession of

11  marijuana.

12      Moreover, as set forth in the moving papers and based on the foregoing,

13  Fouste is entitled at least to qualified immunity because a reasonable officer in the

14  same position could believe that there was probable cause to arrest, that telling

15  Plaintiff before the search that he smelled marijuana on his person transformed the

16  investigatory detention into an arrest, and that the subsequent search of Plaintiff's

17  person was a lawful search incident to arrest.

18                **3.    The Search Of Plaintiff's Vehicle Was Reasonable.**

19                **i.     Defendants Had Probable Cause To Believe There Were**

20                        **Drugs In Plaintiff's Vehicle.**

21      Plaintiff does not provide any argument in opposition to the applicability of

22  the "automobile search" provision of the Fourth Amendment as set forth in the

23  moving papers and *Maryland v. Dyson*, 527 U.S. 465, 467 (1999).  Rather, Plaintiff

24  apparently relies solely on the fact that the search of Plaintiff's person that

25

26

27  ───────────────

    [3] Indeed, Plaintiff's declaration to the contrary is illogical, since there would have

28  been no reason for Fouste to tell Plaintiff he smelled marijuana *__after__* discovering
    the marijuana during the search.  In fact, any statements by Plaintiff in response

                                        10

discovered marijuana was unreasonable in the first place.  However, for the reasons set forth above and in the moving papers, Fouste's search of Plaintiff was reasonable and Plaintiff cannot contend otherwise under *Heck*.  Having discovered marijuana on Plaintiff's person, Defendants had probable cause to believe more contraband would be in the car recently driven by Plaintiff, and the search of Plaintiff's vehicle was therefore a reasonable "automobile search."  *Id.*

Moreover, Defendants are entitled at least to qualified immunity as a reasonable officer in their position could have believed the conduct was reasonable under the Fourth Amendment and *Dyson*.

### ii.   The Search Of Plaintiff's Vehicle Was A Reasonable Search Incident To Arrest.

With regard to the vehicle search as incident to arrest, Plaintiff repeats his unavailing and *Heck*-barred argument that Fouste's initial seizure and search were unlawful.  However, Plaintiff also argues the search of Plaintiff's vehicle was not a reasonable search incident to arrest because Plaintiff was allegedly "not subjected to an actual custodial arrest for marijuana possession," because Health and Safety Code § 11357(b) "prohibits taking a person into custody for possessing less than an ounce of marijuana..." and Defendants "had not arrested him but only detained him for a citeable only offense.  *See*, *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)."  (Opposition at 12:1-9).

As set forth above and in the moving papers, Plaintiff was arrested on probable cause that he possessed marijuana when Fouste told Plaintiff that Fouste smelled the odor of unburned marijuana on his person.

Plaintiff's reference to Health and Safety Code § 11357(b) is misleading.  That provision provides in pertinent part:

"In any case in which a person is arrested for a violation of this subdivision

_____

after the search, would have been inadmissible in Plaintiff's criminal case as he was not yet given any *Miranda* warning.

11

[possession of less than 28.5 grams of marijuana, other than concentrated cannabis[4]] and does not demand to be taken before a magistrate, such person shall be released by the arresting officer upon presentation of satisfactory evidence of identity and giving his written promise to appear in court, as provided in Section 853.6 of the Penal Code, and shall not be subjected to booking."

Health and Safety Code § 11357(b).

Thus, rather than prohibiting a custodial arrest, as Plaintiff argues, the statute mandates release from custody ***after*** arrest.  Moreover, until the search of the vehicle was complete, Defendants could not confirm Plaintiff had less than 28.5 grams of marijuana.  Even if the statute prohibited an arrest, it would be irrelevant to determining whether the arrest or search incident to the arrest was constitutional.

In *Virginia v. Moore*, 553 U.S. 164 (2008), police officers arrested a criminal defendant for a misdemeanor, although a Virginia statute required release from custody upon issuance of a summons, and a search of his person resulted in evidence used against him at trial.  *Id.* at 166-67.  The Supreme Court first determined that "warrantless arrests [based on probable cause] for crimes committed in the presence of an arresting officer are reasonable under the Constitution" notwithstanding any state law to the contrary.  *Id.* at 176.  The Supreme Court reasoned that "an arrest based on probable cause serves interests that have long been seen as sufficient to justify the seizure."  *Id.* at 173.  Those interests include discontinuing the criminal activity, safeguarding the evidence, and "enabl[ing] officers to conduct an in-custody investigation."  *Id.*  The Supreme Court rejected the criminal defendant's challenge to the search incident to arrest.  "We have recognized, however, that officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence.  We have described this rule as

---

[4] The possession of any amount of concentrated cannabis is a felony.  Health and Safety Code § 11357(a).

covering ***any lawful arrest***, with constitutional law as the reference point." *Id.* at 176-77 (citation omitted) (emphasis added). "The interests justifying search are present whenever an officer makes an arrest." *Id.* at 177. The Supreme Court specifically distinguished *Knowles*, because whereas the officer in *Knowles* searched after actually issuing a citation for a traffic infraction in lieu of arrest, *Knowles*, 525 U.S. at 114, in *Moore* "[t]he state officers *arrested* Moore," *Moore*, 553 U.S. at 177 (emphasis in original). Whether or not the officers should have issued a citation was irrelevant. *Id.* at 177-78.

Indeed, the crux of *Knowles* was the fact that once a citation has in fact been issued, there is no justification for a search. Officer safety is not an issue because a stop and citation "is a relatively brief encounter and is more analogous to a so-called *Terry* stop... than to a formal arrest." *Knowles*, 525 U.S. at 117 (citation omitted). In addition, once the citation has been issued, there is no longer "the need to discover and preserve evidence." *Id.* at 118. "Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." *Id.*

This case falls under *Moore* rather than *Knowles*. As in *Moore*, Plaintiff was arrested, and whether or not a citation should have been issued in lieu of arrest, the arrest was reasonable under the Fourth Amendment. Indeed, as the Supreme Court noted, Plaintiff's arrest in this case served the interest in discontinuing Plaintiff's criminal conduct, safeguarding evidence, and enabling further in-custody investigation. As noted above, until the search of Plaintiff's vehicle, there was no way to confirm the total marijuana in Plaintiff's actual and constructive possession. Unlike *Knowles*, Plaintiff was never issued a citation in lieu of arrest, before or after the search of his person or vehicle. As Plaintiff was arrested and in custody based on probable cause for possession of marijuana, the searches incident to his arrest were reasonably likely to yield further evidence. The outcome of the search in fact

affected whether Plaintiff was subject to cite-and-release.  *See*, Health and Safety Code § 11357(a)-(b) (bookable felony to possess more than 28.5 grams of marijuana).  As a result, the search incident to the arrest was reasonable notwithstanding the fact that Defendants had not yet determined to take Plaintiff to jail to be booked.  *In re Demetrius A.*, 208 Cal.App.3d 1245, 1248 (1989).

Therefore, the search incident to arrest of both Plaintiff's person and Plaintiff's vehicle was reasonable.  *Arizona v. Gant*, __ U.S. __, 129 S.Ct. 1710, 1723 (2009) (search of vehicle incident to arrest reasonable where reasonable to believe evidence relevant to arrest would be in vehicle; where offense of arrest is drug possession, nothing more is needed); *Thornton v. United States*, 541 U.S. 615, 629-31 (2004) (Scalia, J., concurring).

Plaintiff's citation to *United States v. Vasey*, 834 F.2d 782, 787 (9th Cir. 1987) is inapposite to this case.  In *Vasey*, the Court distinguished *New York v. Belton*, 453 U.S. 454 (1981) (recognizing reasonableness of search incident to arrest of arrestee's vehicle).  *Vasey*, 234 F.2d at 787.  However, the Ninth Circuit did not do so on the basis of the arrestee's placement in handcuffs in the back of a patrol car[5]; rather the Ninth Circuit held the search was not sufficiently incident to the arrest where the officers waited 30-45 minutes after the arrest.  *Id.*  Indeed, in 2004, the Supreme Court upheld a search incident to arrest of an arrestee's vehicle, even where the arrestee was in handcuffs in a patrol car before the search.  *Thornton v. United States*, 541 U.S. 615, 618, 623-24 (2004).  In 2005, the Ninth Circuit also held that a search incident to arrest of a vehicle was reasonable pursuant to *Belton*, where the search occurred after the arrestee was placed in the backseat of a patrol car.  *United States v. Dorsey*, 418 F.3d 1038, 1041, 1043-44 (9th Cir. 2005).  In this case, the search was sufficiently incident to the arrest, and Plaintiff's presence in the backseat of the patrol vehicle is irrelevant.

_____

[5] The Ninth Circuit made this distinction solely in relation to the broader *Chimel* provision for search incident to arrest of areas within a person's reach.

Moreover, as set forth in the moving papers, Defendants are at least entitled to qualified immunity as a reasonable officer in their position could have believed their conduct was reasonable.  To the extent *Gant* in 2009 narrowed *Belton* and *Thornton* to require a reasonable basis to believe evidence of the offense of arrest is inside the vehicle, even if such reasonable basis were absent in this case, which it is not, Defendants could reasonably rely on *Belton*, *Thornton*, and *Dorsey* since those cases did not impose the requirement announced for the first time in *Gant*.  *See*, *Gant*, 129 S.Ct at 1722-23 ("Because a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding.").

### 4.   The Decision To Transport Plaintiff To Jail For Booking Was Supported By Probable Cause.

As noted above and in the moving papers, it was not until Defendants searched Plaintiff's vehicle that they could conclude that he possessed less than 28.5 grams of marijuana.  Accordingly, as Defendants conceded in their moving papers, Plaintiff's transportation to the jail for booking could not be based on the arrest for marijuana possession.  However, it is undisputed Plaintiff had a can of pepper spray foam on his person and three knives in his vehicle.  It is further undisputed Plaintiff was then subject to a protective order in an unrelated criminal case.  Hilliard's records check turned up the order in two separate databases.  One said Plaintiff was prohibited from possessing any weapons, whereas another only reflected a prohibition on firearms specifically.  Prince thereafter called "Control One" for guidance, but "Control One" was unable to resolve the conflict[6].

---

[6] Plaintiff's attempt to dispute this fact is unavailing.  Plaintiff solely cites the fact that the call to "Control One" was not included in Prince's reports.  Notwithstanding any evidentiary objections to Plaintiff's evidence, the omission of the call in the reports cannot establish a genuine disputed issue of material fact in light of Prince's express sworn declaration stating he called "Control One."  In addition, Plaintiff's assertion that "Control One" "should have been able to 'shed

15

Based on the information available to Prince, there was probable cause to believe Plaintiff committed the misdemeanor of violating the court order. Apart from the databases' warning not to rely solely on the information contained therein, the constitutional issue is whether "the available facts suggest a 'fair probability' that the suspect has committed a crime." *Tatum v. City and County of San Fransisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). "While probable cause to arrest requires more than mere suspicion, the law recognizes that probable cause determinations have to be made 'on the spot' under pressure and ***do 'not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands*.'"** *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3rd Cir. 2000) (*citing*, *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975)) (emphasis added).

Accordingly, Prince was not required to resolve the conflicting evidence with regard to the wording of the protective order and to come to a preponderance of Plaintiff's guilt. Rather, the conflicting databases established at least a "fair probability" that Plaintiff was in violation of the order. As a result, there was probable cause to arrest Plaintiff for violating the order. Therefore, Plaintiff's transportation to the jail to be booked was reasonable.

Defendants are at least entitled to qualified immunity as a reasonable officer in their position could conclude they had probable cause to arrest Plaintiff for violating the order, and subsequently having him transported to jail to be booked. Plaintiff asserts peace officers categorically are not entitled to qualified immunity for arrests without probable cause. (Opposition at 13:6-11). However, the cases

---

light' on the discrepancy" is also insufficient to create a genuine disputed issue of material fact. Plaintiff is impermissibly requesting this Court to reject Prince's declaration on the basis of credibility. <u>Dominguez-Curry v. Nevada Transp. Dept.</u>, 424 F.3d 1027, 1035-36 (9th Cir. 2005) (credibility is "a determination that is exclusively within the province of *1036 the factfinder at trial, not the district court on summary judgment"); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

Plaintiff cites do not categorically bar qualified immunity for claims of arrest without probable cause; rather, they denied qualified immunity on the facts of those particular cases.  The Supreme Court has recognized qualified immunity for officers who mistakenly believed there is probable cause to arrest.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

**B.**  **Defendants Are Entitled To Qualified Immunity As To Plaintiff's Unreasonable Force Claims.**

    **1.**  **The Use Of Force At The Arrest Scene Was Reasonable.**

Plaintiff does not dispute that the appropriate standard for a Fourth Amendment unreasonable force claim is whether the force is "objectively reasonable."  *See*, *Graham v. Connor*, 490 U.S. 386, 396 (1989).  In addition, Plaintiff does not dispute that the same standard applies to determine whether a peace officer had committed assault or battery.  Instead, Plaintiff relies primarily on his own self-serving declaration to establish purported disputed issues of material fact.  However, as set forth in Defendants' Evidentiary Objections and Reply Separate Statement, Plaintiff's self-serving declaration is insufficient and inadmissible to the extent it contradicts the video evidence.  *Scott v. Harris*, 550 U.S. 372, 378-381 (2007) (at the summary judgment stage, if a party's version of the story is contradicted by a videotape in the record, then the facts should be viewed in the light depicted by the videotape).

Plaintiff quotes Hergesheimer from the video out of context, "I'll get him good," to support his contention Hergesheimer grabbed Plaintiff's testicles to provoke Plaintiff's resistance.  (Opposition at 19:22-28).  However, apart from the objective propriety of making some contact with an arrestee's genitals in order to search him, the full exchange from the video discloses Hergesheimer said "I'll get him good" not to provoke Plaintiff but to assure the other deputies that he would

---

1113 n.5 (9th Cir. 2004) ("[W]hen ruling on a summary judgment motion, the district court is not empowered to make credibility determinations.").

1    thoroughly search Plaintiff.  The exchange is as follows:

2         "Prince:  He may have a belt... Sarge searched him, so I don't know.

3         Hergesheimer:  I'll get him good."

4    Defendants' Exhibit "F" at Timestamp 09:18-09:22 (volume all the way up).

5         With regard to whether or not the leg restraints were applied before the search

6    or after the Taser application, Plaintiff's declaration is inconsistent with the video

7    evidence, in which Hergesheimer orders Plaintiff to spread his feet, a fact which is

8    undisputed.  (Reply SS 65; Defendants' Exhibit "F" at Timestamp 12:12).

9    Similarly, the video belies Plaintiff's claims he was not attempting to lift his upper

10   torso off the hood of the car and looking back, thereby arching his back and tensing

11   his arms and neck.  (Defendants' Exhibit "F" at Timestamp 12:13-12:55).  In

12   addition, rather than slamming Plaintiff's face into the hood, Prince was holding

13   Plaintiff's head down as Plaintiff strained to lift it up – once Plaintiff released,

14   Prince's counter-pressure caused Plaintiff's head to hit the hood.  (Reply SS 76;

15   Defendants' Exhibit "F" at 13:30-3:40).  In fact, Prince subsequently took the care to

16   remove Plaintiff's glasses so he could simply place his head directly on the hood.

17        With regard to the use of the Taser, Plaintiff physically resisted Deputies'

18   efforts to search him and subdue him, and made increasingly provocative,

19   belligerent, and threatening statements, such as asking Defendants to attempt to kill

20   him.  Plaintiff's citation to *Bryan v. McPherson*, 590 F.3d 767 (9th Cir. 2009), is

21   inapposite.  In that case, the Ninth Circuit held the use of a Taser in its dart-shooting,

22   incapacitating mode was unrasonable where the plaintiff was half-naked and

23   obviously unarmed, without warning, and where he merely stood outside his car

24   over twenty feet away from the officer, without being belligerent.  Id. at 780-81.

25        This case is rather controlled by two other Ninth Circuit cases.  In *Mattos v.*

26   *Agarano*, 590 F.3d 1082, 1088 (9th Cir. 2010), the plaintiff was the wife of a suspect

27   in a fight at their apartment.  *Id.* at 1084.  As the defendant officer reached for the

28   husband, the plaintiff could not get out of the way and incidentally touched the

defendant.  *Id.* at 1087.  As a result, the defendant deployed his Taser.  *Id.*  The court held the use of the Taser in this instance was reasonable.  *Id.* at 1089.  The court found that although a Taser represents a serious Fourth Amendment intrusion, the defendant was justified in using it where her incidental interference heightened the ***possibility*** of her husband's physical resistance, his belligerence and apparent intoxication, and his being suspected of a recent assault, and close proximity.  *Id.* at 1088.  In this case, Plaintiff had already exhibited physical resistance and belligerence, his incoherent requests to be killed and beaten up evidenced possible intoxication, was suspected of recently being in an assault, and Plaintiff was in touching distance of the Deputies.

More recently, in *Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010), the Ninth Circuit held it was reasonable to deploy a Taser three times against a pregnant plaintiff who was resisting arrest by nonviolently refusing to get out of her car after she was told she was being arrested for a traffic infraction.  *Id.* at 1021.  When the officers attempted to physically remove her, the woman stiffened her body and clutched the steering wheel.  *Id.*  A defendant officer then discharged a Taser in "drive stun" mode against the woman's thigh.  *Id.*  When she continued to resist, the officer Tasered her two more times, against her shoulder and neck, until she complied.  *Id.*  Despite the fact that the Taser was deployed three times against a pregnant woman, the officers' conduct did not amount to a constitutional violation.  *Id.* at 1030-31.

Whereas the plaintiff in *Brooks* merely stiffened to prevent her extraction from her car, Plaintiff stiffened, looked back, and rose from the hood of the patrol car in resisting Deputies' attempt to thoroughly search Plaintiff.  Thus, more than in *Brooks*, the use of a Taser in this case was reasonable.  Moreover, unlike in *Bryan*, the use of a Taser as a pain-compliance technique in "drive-stun" mode was a "markedly different" and less intrusive quantum of force than a "dart-shooting" application designed to incapacitate.  *Brooks*, 599 F.3d at 1027-28.  Therefore, its

1   use on Plaintiff was not unreasonable.  *See*, *Id.* at 1030-31 (use of pain compliance

2   "drive stun" Taser application three times held reasonable where pregnant plaintiff

3   refused to exit her vehicle).

4          Moreover, *Mattos* surveyed the state of the law with regard to excessive force

5   claims involving Tasers.  It found that before 2009, the only Taser-related excessive

6   force cases found them reasonable.  *Mattos*, 590 F.3d at 1089-90.  The court noted

7   that though a 2009 Eleventh Circuit case and *Bryan* rejected qualified immunity, the

8   use of the Taser in the circumstances of *Mattos* was not "so 'patently violative' of

9   Jayzel Mattos's constitutional rights 'that reasonable officials would know without

10  guidance from the courts that the action was unconstitutional.'"  *Id.* at 1090.  As a

11  result, *Mattos* held that even if the Taser in that case violated the plaintiff's

12  constitutional rights, the defendants would be entitled to qualified immunity.  *Id.*  As

13  the facts of this case present a more reasonable use of a Taser than *Mattos*,

14  Defendants are similarly at least entitled to qualified immunity.

15         With regard to the tightness of the leg restraints, Plaintiff complained once

16  initially that the leg restraints were too tight, but for the duration of the car ride to

17  the jail, he did not complain, and in fact moved about in the back seat without any

18  expression of pain or even discomfort with his ankles.  (Reply SS 96-99).

19  Moreover, Plaintiff's shoes and socks, over which the leg restraints had been

20  secured, were eventually removed without difficulty, showing they were not too

21  tight.  (Reply SS 143-144).

22         As set forth in the moving papers and above, this was a paradigm of

23  "circumstances that are tense, uncertain, and rapidly evolving."  *Graham v. Connor*,

24  490 U.S. 386, 396-97 (1989).  Therefore, the split-second judgments" to use force

25  and apply the Taser were not unreasonable.  Moreover, Defendants are at least

26  entitled to qualified immunity as a reasonable officer could conclude their conduct

27  was reasonable.

28

### 2. The Use Of Force At The Jail Was Reasonable.

#### i. Removing Plaintiff From The Car And Carrying Him At His Request Was Reasonable.

As set forth in the moving papers, the video evidence establishes Defendants used only as much force as was necessary at the jail. Plaintiff was unable to exit the car by himself, and specifically asked to have his legs pulled out. As this was the only way to extract Plaintiff, Padilla's and Foster's doing just that cannot be an unreasonable use of force, if it is a use of force at all. In addition, Plaintiff yelled and screamed and eventually stopped walking. Plaintiff claims it was because his leg restraints were too tight around his ankles and repeatedly requested to be carried. Padilla, Foster, and Garcia relented to Plaintiff's demand and carried him inside the jail. Once they began carrying Plaintiff, he stopped yelling and screaming. Defendants' conduct in these respects was reasonable. They assisted Plaintiff in the manner he specifically requested, and he did not complain when they did.

Moreover, as set forth in the moving papers, Defendants are entitled to qualified immunity as a reasonable officer in their position could conclude that their extraction of Plaintiff and carrying him were reasonable. In *Saucier v. Katz*, 533 U.S. 194, 198 (2001), the Supreme Court recognized qualified immunity were officers carried a demonstrator by his arms. Plaintiff has not met his burden to show Defendants' extraction and carrying of Plaintiff was unreasonable by clearly established law so that no reasonable officer could conclude it was reasonable.

#### ii. Placement Of Plaintiff In A Medical Observation Cell Was Reasonable.

Plaintiff complains that he refused or could not walk because the Deputies did not remove or loosen the leg restraints on the way to the uncuff area. It is absurd to require jail deputies to uncuff someone before getting to the designated uncuff area, based solely on an arrestee's subjective expression of discomfort. Moreover, as set forth in the moving papers, by the time Defendants decided to divert Plaintiff from

21

the normal booking process to the medical observation cell, Plaintiff had exhibited bizarre behavior consistent with intoxication; he had expressed suicidal thoughts to the triage nurse, had been screaming, repeatedly fell to the floor refusing to walk or incapable of doing so.  Furthermore, as Plaintiff refused or could not walk, carrying him to the medical observation cell was the only reasonable way to get him there.

Once in the cell, Deputies used control holds to maintain control as they removed Plaintiff's restraints and clothes, pursuant to the mental health staff's concerns over his suicidal thoughts.  The use of the control holds to maintain physical control over Plaintiff in such tight quarters, as the Deputies removed Plaintiff's restraints and clothing, was objectively reasonable even if it caused pain or injury.  *See, Forrester v. City of San Diego*, 25 F.3d 804, 806-07 (9th Cir. 1994) ("pain compliance techniques" to remove nonviolent protesters objectively reasonable even where resulting in pain, bruises, pinched nerve, and broken wrist). The control holds were no more than necessary to maintain physical control over Plaintiff and to prevent any opportunity for resistance or striking a deputy.  Plaintiff was not Tasered, and the warning is encouraged by the Ninth Circuit.  *See, Brooks*, 599 F.3d at 1030 (warning weighs against finding constitutional violation for subsequent Taser use).  The video footage immediately following the Deputies' exit shows Plaintiff able to roll on his side and back and moving his arms.  In addition, Plaintiff does not dispute that he later was able to move about the cell freely, standing and even kicking the door during periodic checks.  (Reply SS 170-179).

At the very least, then, Defendants are entitled to qualified immunity as a reasonable officer could believe their conduct was reasonable.

## III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S FEDERAL BYSTANDER/SUPERVISORY CLAIMS.

Preliminarily, Plaintiff concedes Kurimay was not present at the arrest scene or at the jail, effectively conceding he is entitled to summary judgment.  Plaintiff makes no argument that Essoe is liable under either a bystander or supervisory

theory of liability.  Accordingly, since Essoe did not otherwise participate in or cause any conduct that allegedly violated Plaintiff's rights, he is entitled to summary judgment. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978); *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989); *Rizzo v. Goode*, 423 U.S. 362, 374-77 (1976). In addition, Fouste did not personally participate in or cause Plaintiff's arrest for violating the court order or any use of excessive force.

Plaintiff's "bystander" claims (more accurately based on a theory that a defendant failed to intercede to prevent or stop a Constitutional violation), fail because there was no Constitutional violation. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).  In addition, liability for failure to intercede attaches only where there is a realistic opportunity to intercede. *Id.* at 1289-90.  Plaintiff concedes Fouste is not liable under such a theory.  Moreover, Plaintiff does not dispute that no Defendant other than Fouste is liable for Plaintiff's search and seizure claims with regard to Fouste's conduct, as Fouste's seizure and search of Plaintiff occurred before the arrival of any other Defendant.  In addition, Plaintiff concedes Defendant Kunar is not liable under a bystander/failure to intercede theory of liability.  Finally, Plaintiff concedes Hergesheimer is not liable for actions that occurred after Plaintiff was diverted to the medical observation cell.

Moreover, with regard to Plaintiff's unreasonable force claims, even if the conduct were unreasonable, others would not have a duty to intercede where the unreasonable force was sudden or lasted for only a short time. *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 fn. 3 (1st Cir. 1990).

Finally, Defendants are at least entitled to qualified immunity as a reasonable officer could believe their conduct, not intervening to prevent apparently reasonable conduct that lasted only a short while in any event, was reasonable.

## IV.   INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S FIRST AMENDMENT CLAIMS.

Plaintiff offers no evidence any Defendants acted with the intent to inhibit

speech.  While Plaintiff literally spoke during the patrol and jail incidents, there is no evidence any of the alleged misconduct was animated by an intent to stop or punish Plaintiff's speech.  As a result, Plaintiff's First Amendment claims fail.  *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).  Moreover, Defendants are at least entitled to qualified immunity as a reasonable officer could conclude that their conduct did not violate the First Amendment.

## V.   PLAINTIFF CONCEDES THERE IS NO LIABILITY FOR CONSPIRACY.

Plaintiff offers no evidence or argument that any Defendants are liable for a conspiracy.  As a result, Plaintiff effectively concedes Defendants are entitled to summary adjudication of that claim.

## VI.   STATUTORY IMMUNITIES BAR SEVERAL OF PLAINTIFF'S STATE LAW CLAIMS.

### A.   Government Code § 821.6 Bars Plaintiff's 11th, 12th, 13th, and 14th Causes Of Action With Regard To The Arrest Incident.

Plaintiff argues Government Code § 821.6 does not immunize Defendants against state false arrest and Civil Code § 52.1 claims.  Defendants concede that Section 821.6 does not immunize Defendants against false arrest claims[7].  *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 752-53 (1997).  However, Defendants are entitled to Section 821.6 immunity against Plaintiff's Civil Code § 52.1 claims to the extent the underlying misconduct is subject to the immunity.  *See, Gillan v. City of San Marino*, 147 Cal.App.4th 1033, 1050-51 (2007) (underlying misconduct determines applicability of immunity to § 52.1 claims).

With regard to Plaintiff's Negligence claim, Plaintiff's citation to *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 208-210 (1991) is unavailing.  That case did not consider application of Section 821.6 immunity and merely held that an on-duty

---

[7] However, Plaintiff's arrest was lawful, and in any event cannot be challenged pursuant to *Heck* and *Susag/Yount*.

police officer's rape of a woman was within the scope of his employment for purposes of vicarious liability. *Id.* As noted in the moving papers, *Johnson v. City of Pacifica*, 4 Cal.App.3d 82, 84-88 (1970) recognized that the immunity applied to claims of negligence arising out of a criminal investigation.

**B.** **Plaintiff Concedes Government Code § 820.8 Bars Liability For Others' Actions.**

Plaintiff does not address Defendants' assertion that Government Code § 820.8 bars liability against each of them for the actions of any of the others. Instead, Plaintiff inexplicably argues Defendants are not entitled to Government Code § 820.2 immunity, which was not an issue raised by the Motion. As a result, Plaintiff effectively concedes the point.

**VII. PLAINTIFF CONCEDES NO SEPARATE CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

Plaintiff does not address this issue, and therefore effectively concedes Defendants are entitled to summary adjudication of his Twelfth Cause of Action.

**VIII. CONCLUSION.**

For the foregoing reasons, as well as the reasons set forth in the moving papers, Defendants respectfully request that this Court grant them summary judgment, or in the alternative, summary adjudication of the issues identified in the notice of motion, and enter judgment in their favor.

DATED: May 28, 2010          Respectfully submitted,

LAWRENCE BEACH ALLEN, & CHOI, PC

By _Daniel C_____

DAVID D. LAWRENCE
DANIEL S. CHA
Attorneys for Defendants,
COUNTY OF ORANGE, SEAN
HILLIARD, JAMES FOUSTE, JARRETT
KURIMAY, DAVID HERNANDEZ,
CYRIL FOSTER, MANUEL GARCIA,
MICHAEL PADILLA, IRA ESSOE,
MARK HERGESHEIMER, MARK
KUNAR, MATTHEW PRINCE and
MICHAEL CARONA

25

**PROOF OF SERVICE**

STATE OF CALIFORNIA; COUNTY OF ORANGE

I, Debbie Pryor, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1600 North Broadway, Suite 1010, Santa Ana, California 92706.

On May 28, 2010, I electronically filed the foregoing **INDIVIDUAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES TO PLAINTIFF'S OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

1. Jerry L. Steering, Esq.    jerrysteering@yahoo.com
2. Carol E. Lavacot, Esq.    law@lavacot.com

___  BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business.

___  BY FEDERAL EXPRESS
I caused such envelope to be delivered via Federal Express to the offices of the address(es) listed above.

___  BY PERSONAL SERVICE

___  I hand delivered such envelope by hand to the addressee(s) listed above.

_X_  (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 28, 2010 at Santa Ana, California

_____
Declarant

26
INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION