

O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSHUA RASHID RADWAN, | ) | CASE NO. SACV 08-0786 AG (ANx) |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING IN PART AND |
| | ) | DENYING IN PART INDIVIDUAL |
| v. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT; (2) |
| COUNTY OF ORANGE, et al., | ) | GRANTING COUNTY'S MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Joshua Rashid Radwan ("Plaintiff") asserts civil rights and related claims arising from his interactions with law enforcement officers. Defendants James Fouste ("Fouste"), Sean Hilliard ("Hilliard"), Matthew Prince, ("Prince"), Mark Kunar ("Kunar"), Mark Hergesheimer ("Hergesheimer"), Ira Essoe ("Essoe"), Michael Padilla ("Padilla"), Manuel Garcia ("Garcia"), Cyril Foster ("Foster"), David Hernandez ("Hernandez"), and Jarrett Kurimay ("Kurimay") (collectively "Individual Defendants") filed a "Motion for Summary Judgment and/or in the

1   Alternative Summary Adjudication" ("Individuals' Motion").  Defendants County of Orange

2   ("County") and Michael Carona ("Carona") also filed a "Motion for Summary Judgment and/or

3   in the Alternative Summary Adjudication" ("County's Motion").

4         The Court GRANTS IN PART and DENIES IN PART the Individual Defendants'

5   Motion and GRANTS the County's Motion.

6

7   **<u>BACKGROUND</u>**

8

9         Much of the evidence is disputed.  As it must for this Motion, the Court views the

10   evidence in the light most favorable to Plaintiff.  The following largely reflects the Plaintiff's

11   version of the facts.

12         Plaintiff and his girlfriend Cassandra Fults ("Fults") were next to Plaintiff's Range Rover

13   in a parking lot off of Paseo de Colinas.  (Plaintiff's Second Amended Statement of Material

14   Facts in Dispute ("PSMF") ¶¶ 3-4.)  All was not well.  "Fults was crying hysterically," and

15   Plaintiff kicked his tire while talking to her.  (PSMF ¶ 5-6.)  Around the same time, some of the

16   officer Defendants heard a dispatch call "requesting deputies respond to the area of Paseo de

17   Colinas . . . regarding a report that a person was being kicked by another person next to a Range

18   Rover."  (PSMF ¶ 7.)

19         Fouste arrived at Paseo de Colinas to find Plaintiff and Fults next to Plaintiff's Range

20   Rover.  (PSMF ¶¶ 8-9.)  He then interacted with Plaintiff and ended up searching Plaintiff's

21   pockets.  (Declaration of James Fouste ("Fouste Decl.) ¶¶ 8-11.)  The search revealed marijuana

22   and pepper spray.  (PSMF ¶¶ 11, 17.)

23         Around the time Fouste searched Plaintiff, Deputies Hillard, Prince, and Kunar arrived at

24   the scene.  (PSMF ¶¶ 14-15, 19.)  Prince searched Plaintiff's Range Rover and found three

25   knives and a bit more marijuana.  (PSMF ¶¶ 23-24.)

26         After the search, things got physical.  Among other things, Plaintiff was roughly put into

27   tight handcuffs and leg irons, (Declaration of Joshua Rashid Radwan ("Radwan Decl.") ¶¶ 46,

28   50), his face was shoved into the hood of a car, (Radwan Decl. ¶ 63), an officer repeatedly

2

kicked the chains of Plaintiff's leg restraints, (Radwan Decl. ¶ 63), and Plaintiff was taken to the ground and shot with a Taser, (Radwan Decl. ¶¶ 67-69).  Defendants claim that Plaintiff was resisting.

The officers also discovered (through a computer database) that Plaintiff was subject to a protective order, though there was some confusion about what, precisely, the protective order said.  (PSMF ¶¶ 32-33.)  Regardless, the Deputies decided to take Plaintiff to jail and book him for violating the protective order by possessing the knives.  (PSMF ¶ 37.)

At the jail, things again got physical.  Two officers pulled Plaintiff from a patrol car. (Radwan Decl. ¶ 81.)  Plaintiff had great difficulty walking because the leg restraints hurt him, and the officers refused to loosen Plaintiff's leg irons despite Plaintiff yelling in pain.  (Radwan Decl. ¶¶ 83-85.)  After Plaintiff could walk no more, two officers grabbed Plaintiff by his upper arms and one grabbed him by the chain of his leg restraints to carry Plaintiff into the jail. (Radwan Decl. ¶ 88.)

Things didn't get much better from there.  One officer stood and stepped on Plaintiff's leg chains.  (Radwan Decl. ¶ 89.)  Some officers carried Plaintiff upside down by holding his arms backwards behind him and holding the chain of his leg restraints.  (Radwan Decl. ¶¶ 92-94.) They took Plaintiff to a medical observation cell and pinned him and twisted his limbs.  (Radwan Decl. ¶¶ 95-101.)

Based on these facts and many others, Plaintiff filed this lawsuit asserting fourteen claims.  Plaintiff calls them "causes of action," but in federal court they're usually called "claims for relief."  Plaintiff contends the Individual Defendants violated his constitutional rights under the First and Fourth Amendments and also committed certain torts and statutory violations. Plaintiff also contends that the County and Carona should be liable for the Individual Defendants' actions.

Defendants filed these Motions asking the Court to dismiss Plaintiff's claims.  Because the parties' papers were somewhat confusing, the Court ordered the parties to submit a chart of the particular claims under attack by Defendants and Plaintiff's responses.  (Doc. 139.)  The parties submitted their charts.  (Docs. 140-142.)  The charts clarified some issues.  But

Defendants also raised new arguments in their chart that were not raised in their moving papers. The chart was designed to clarify the issues, not create new ones.  Further, Plaintiff did not have an adequate time to prepare evidence and argument in response to arguments raised for the first time in Defendants' chart.  Thus, the Court will not consider such arguments here.

**PRELIMINARY MATTERS**

The parties assert numerous evidentiary objections.  "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.*, No. 08-0582 AG (CWx), 2009 U.S. Dist. LEXIS 118878, at *2, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  Thus, the Court will address only objections to evidence that is central to the issues discussed in this Order.  Where the Court relies on evidence under objection, the applicable objections are OVERRULED.

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden,

then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

"If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d)(1). The court "should then issue an order specifying what facts – including items of damages or other relief – are not genuinely at issue. The facts so specified must be treated as established in the action." *Id.*

## ANALYSIS OF THE INDIVIDUAL DEFENDANTS' MOTION

## 1. PLAINTIFF'S SEARCH AND SEIZURE CLAIM

Plaintiff's first claim is under 42 U.S.C. § 1983 ("Section 1983") based on a violation of the Fourth Amendment right to be free from unlawful searches and seizures. Plaintiff's search and seizure claim is based on multiple separate incidents, each of which Plaintiff contends is independently sufficient to show a constitutional violation. The Individual Defendants make two main arguments that the search and seizure claim should be dismissed. For some of the incidents, the Individual Defendants argue that Plaintiff's search and seizure claim is barred by the *Heck v. Humphrey*, 512 U.S. 477 (1994). For all of the incidents, the Individual Defendants argue that the officers were protected by qualified immunity.

### 1.1 The Initial Investigatory Detention of Plaintiff

The first incident at issue is Fouste's search and seizure of Plaintiff during the initial investigatory detention of Plaintiff. Plaintiff contends that he was detained without reasonable suspicion. The Individual Defendants argue that Plaintiff's unreasonable search and seizure

claim regarding this incident should be dismissed both under *Heck* and on grounds of qualified immunity.  The Court agrees.

### 1.1.1   *Heck*

*Heck* addressed the extent a plaintiff may assert a Section 1983 claim when resolution of the claim would involve issues that would impact a conviction of the plaintiff.  *Heck* stated,

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (emphasis in original) (citation and footnote omitted).  Under *Heck* and its progeny, a Section 1983 claim "that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable . . . until and unless the plaintiff can prove that his conviction or sentence has been reversed on direct appeal."  *Harvey v. Waldron*, 210 F.3d 1008, 1014-16 (9th Cir. 2000) (citing *Heck*, 512 U.S. at 486-87), *overruled on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007), *as stated in Kucharski v. Leveille*, 526 F. Supp. 2d 768, 774 (E.D. Mich. 2007).

*Heck* then explained the role of district courts in applying the *Heck* rule:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).

So how does *Heck* apply here?  Plaintiff was eventually convicted of possessing marijuana, and that conviction is still "outstanding."  Thus, *Heck* bars any claim that, if successful, would imply that his conviction is invalid.  The Individual Defendants argue that, "under *Heck*, Plaintiff has no § 1983 claim for unreasonable search or seizure for Fouste's initial investigatory detention" of Plaintiff.  (Mot. 6:21-23.)

This argument is persuasive.  If the initial detention of Plaintiff was invalid, the officers would never have discovered the marijuana in his pocket or the marijuana and knives in the car.

Plaintiff contends that the marijuana and knives would have been inevitably discovered. Strangely, Plaintiff places this argument largely in a footnote[1] that is then bolded[2].  Plaintiff is correct that because of the existence of "doctrines like independent source and inevitable discovery," some successful Fourth Amendment claims "would not *necessarily* imply that the plaintiff's conviction was unlawful . . . ."  *Heck*, 512 U.S. at 487 n.7 (emphasis in original). Thus, Fourth Amendment claims may proceed despite *Heck* if the evidence at issue would have been found for some reason beyond the allegedly unlawful conduct, such as an independent tipster or alternate basis to search or arrest the plaintiff.  *See Harper v. Jackson*, 293 Fed. Appx. 389, 392 (6th Cir. 2008).  But here, concerning Plaintiff's initial detention, Plaintiff identifies no possible way that the marijuana or knives would've been independently discovered absent the allegedly illegal initial detention.

Plaintiff also argues that Fourth Amendment claims for unlawful searches categorically do not imply that a conviction is invalid, citing *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 897 (7th Cir. 2001).  But the Ninth Circuit has expressly rejected the *Snodderly* rule, and declined to find that all search and seizure claims may proceed despite *Heck*. *Harvey*, 210 F.3d at 1015.  *See also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police*, 411 F.3d 427, 449 (3d Cir. 2005) ("Footnote seven of *Heck*

---

[1] A tactic often done to de-emphasize a point, but which often detracts from the flow of an argument.
[2] A tactic done to **emphasize** a point.

7

clearly states that an action may lie with respect to an unreasonable search, not that it shall or will lie. The use of the permissive word 'may' endorses the use of a fact-based approach because it precludes the automatic exemption of all Fourth Amendment claims from the Heck deferred accrual rule.") (citation omitted). Thus, this argument fails.

Plaintiff also argues that *Heck* cannot bar Plaintiff's claim because Plaintiff had his conviction set aside under California Penal Code § 1203.4. This argument fails too. "While a 1203.4 petition [to set aside conviction] does act to relieve a defendant from most penalties and disabilities resulting from the offense, it does not nullify the conviction. Rather, the final judgment of a conviction is a fact; and its effect cannot be nullified even by a 1203.4 set aside." *Engel v. Barry*, NO. CIV. S 03-2403 MCE KJM, 2005 U.S. Dist. LEXIS 33308, at *8-9 (C.D. Cal. Dec. 15, 2005) (citation omitted); *Campos v. City of Merced*, --- F.Supp.2d ----, 2010 WL 1729798, at * 15 (E.D. Cal. 2010) ("Whether or not Plaintiff's petition was granted, *Heck* will act to bar Plaintiff's claims regarding his arrest or the probable cause related thereto, but it will not preclude him from arguing that the police used excessive force.") (footnote omitted). *See also People v. Vasquez*, 25 Cal. 4th 1225, 1231 (2001) (Section 1203.4 "does not expunge or erase a person's felony conviction from the record, but only restores to the person certain civil rights lost as a result of the conviction").

In sum, success on Plaintiff's Fourth Amendment claim based on his initial detention would necessarily imply the invalidity of Plaintiff's conviction. Thus, *Heck* bars Plaintiff's claim based on that incident.

### 1.1.2   Qualified Immunity

The Individual Defendants argue that, even assuming *Heck* does not apply, Plaintiff's unreasonable search and seizure claim based on Plaintiff's initial detention should be dismissed based on qualified immunity. They argue that "Defendants are entitled to qualified immunity as their conduct did not violate Plaintiff's Fourth Amendment rights," or at least "a reasonable officer could conclude their conduct was reasonable." (Reply 6:21-23.) The Court agrees.

1   "A private right of action pursuant to 42 U.S.C. § 1983 exists against law enforcement

2   officers who, acting under the color of authority, violate federal constitutional or statutory rights

3   of an individual." *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005) (citing *Wilson v. Layne*,

4   526 U.S. 603, 609 (1999)). The defense of qualified immunity, however, shields an officer from

5   trial when the officer reasonably misapprehends the law governing the circumstances

6   confronted, even if the officer's conduct was constitutionally deficient. *Id.* (citing *Brosseau v.*

7   *Haugen*, 543 U.S. 194 (2004) (per curiam)). "Qualified immunity balances two important

8   interests—the need to hold public officials accountable when they exercise power irresponsibly

9   and the need to shield officials from harassment, distraction, and liability when they perform

10  their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

11      To rule on qualified immunity of a government official, a court must consider (1) whether

12  the facts alleged, taken in the light most favorable to the party asserting the injury, show that the

13  official's conduct would have violated a constitutional right, and (2) whether the law governing

14  the official's conduct was clearly established. *Id.* at 816. Before *Pearson*, courts were required

15  to consider, in order, first whether there was a constitutional violation, and second whether the

16  law was clearly established. *See Saucier v. Katz*, 533 U.S. 194 (2001), *overruled by Pearson*,

17  129 S. Ct. 808. *Pearson* overruled *Katz* and held that courts could consider the requirements in

18  either order. 129 S. Ct. at 821.

19      A court must also consider whether, under that law, a reasonable official could have

20  believed his conduct was lawful. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (citing

21  *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995)). The reasonableness inquiry "gives

22  ample room for mistaken judgments by protecting all but the plainly incompetent or those who

23  knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam). This

24  accommodation for reasonable error exists because "officials should not err always on the side

25  of caution" out of fear of legal liability. *Davis v. Scherer*, 468 U.S. 183, 196 (1984).

26      Defendants are entitled to qualified immunity for the initial detention of Plaintiff. "The

27  Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its

28  protections extend to brief investigatory stops of persons . . . ." *United States v. Arvizu*, 534 U.S.

266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).  Generally, police must have probable cause before detaining a person.  *See Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality opinion).  But there is a "limited exception" to the general rule requiring probable cause.  *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002).  "Under *Terry* and its progeny, the Fourth Amendment allows police to conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions." *Id*.  "The reasonable suspicion standard 'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Id*. (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

Here, Fouste had reasonable, articulable suspicion justifying his initial detention of Plaintiff.  Fouste was told by a 911 operator that a man was kicking another person next to a Range Rover by Paseo De Colinas.  (PSF ¶ 7; Plaintiff's Exhibit M.)  Fouste responded to the call and found Plaintiff and Fults at Paseo De Colinas by Plaintiff's Range Rover, with Fults crying loudly.  (PSF ¶¶ 8-9, 16.)  Under the circumstances, Fouste had reasonable suspicion that Plaintiff committed an assault on Fults, which justified detaining Plaintiff.  *See Gallegos*, 308 F.3d at 990.

Plaintiff argues that the 911 call is insufficient to establish reasonable suspicion, citing *Florida v. J.L.*, 529 U.S. 513 (2003), to support his argument.  *Florida v. J.L.* held that an anonymous tip identifying an individual as carrying a gun, without more, did not provide reasonable suspicion justifying an investigatory detention under *Terry* (also known as a "*Terry* stop and frisk").  *See id*. at 268; *United States v. Terry-Crespo*, 356 F.3d 1170 (9th Cir. 2004) (discussing *Florida v. J.L.*).  The Court reasoned that the tip was unreliable as a "bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id*. at 271.

The reliability problems found in *Florida v. J.L.* are not present here.  Rather, this case is more like *Terry-Crespo*, where the Ninth Circuit found that a partially corroborated 911 call was sufficient to support reasonable suspicion.  Among other things, the *Terry-Crespo* court found that 911 calls are generally "entitled to greater reliability than a tip concerning general

1  criminality because the police must take 911 emergency calls seriously and respond with

2  dispatch." 356 F.3d at 1176. *See also United States v. Holloway*, 290 F.3d 1131, 1139 (11th

3  Cir. 2002), *cert. denied* 537 U.S. 1161 (2003) (finding that 911 calls "are distinctive in that they

4  concern contemporaneous emergency events, not general criminal behavior") (quoted in *Terry-*

5  *Crespo*). "Calls to 911 . . . involve exigent situations that may limit the police's ability to gather

6  identifying information." *Terry-Crespo*, 356 F.3d at 1176. Further, 911 calls have greater

7  reliability than other anonymous tips because "[m]erely calling 911 and having a recorded

8  telephone conversation risks the possibility that the police could trace the call or identify [the

9  caller] by his voice." *Id.*

10  Here, like in *Terry-Crespo*, the 911 call was sufficiently reliable to support reasonable,

11  articulable suspicion that Plaintiff had committed a crime. Further, the circumstances described

12  in the 911 call were partially corroborated when Fouste found Plaintiff and Fults next to

13  Plaintiff's Range Rover by Paseo De Colinas. Under the circumstances, the initial detention of

14  Plaintiff was not unreasonable.

15  Plaintiff points out a discrepancy between the tipster's 911 call and the 911 operator's

16  dispatch call to Fouste and other officers. (Opp'n to Individual Defendants' Mot. 4:9-5:9.) The

17  original 911 call reported only that a man was "yelling and kicking, and there's someone next to

18  the ground" next to a Range Rover near Paseo de Colinas. (Plaintiff's Exhibit M.) The dispatch

19  call, however, stated that the 911 call reported a man kicking another person. (*Id.*)

20  This discrepancy does not change the existence of reasonable suspicion. Plaintiff fails to

21  explain how it detracts from the justification Fouste had for initially detaining Plaintiff. Under

22  the circumstances, Fouste had the requisite "'minimal level of objective justification'" to justify

23  detaining Plaintiff. *See Gallegos*, 308 F.3d at 990 (quoting *Wardlow*, 528 U.S. at 123).

24  Thus, the initial detention of Plaintiff was not unreasonable, and thus not a violation of

25  Plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures. Further,

26  even if Fouste lacked reasonable suspicion justifying his initial detention of Plaintiff, Fouste

27  would still be entitled to qualified immunity because the constitutional violation was not clearly

28  established. On the one hand, *Florida v. J.L.* states that a bare anonymous tip, without more, is

11

insufficient for reasonable suspicion.  But on the other hand, *Terry-Crespo* suggests that a corroborated 911 call *is* sufficient for reasonable suspicion.  Given the circumstances of this case and the uncertainty of the case law, any constitutional violation was not clearly established, and a reasonable officer could have concluded that Fouste's initial detention of Plaintiff was constitutional.

### 1.1.3   Conclusion

Summary adjudication is GRANTED as to Plaintiff's Fourth Amendment claim based on his initial detention.

## 1.2     The Search of Plaintiff

The second incident at issue is the search of Plaintiff, where Fouste discovered marijuana and pepper spray in Plaintiff's pocket.  Plaintiff claims that Fouste performed a full search on Plaintiff without probable cause.  The Individual Defendants again argue that this claim should be dismissed both under *Heck* and on grounds of qualified immunity.  The Individual Defendants' argument concerning *Heck* is persuasive.

### 1.2.1   Give 'Em *Heck*

If Plaintiff succeeds on his claim that the initial search was unconstitutional, it would demonstrate the invalidity of his conviction for possession of marijuana.  *See Heck*, 512 U.S. at 486-87.  Fouste searched Plaintiff, and found marijuana and pepper spray in his pocket.  Plaintiff was arrested, and the police then searched his vehicle as a search incident to arrest, and found more marijuana and some knives.  Plaintiff was then convicted of possession of marijuana. Plaintiff now asserts a claim for unreasonable search and seizure based on Fouste's initial detention and search of Plaintiff.  But if the initial detention and search were unconstitutional,

the marijuana would not have been discovered, and Plaintiff would not have been convicted of possession of marijuana. Thus, success on Plaintiff's unreasonable search claim based on Fouste's search would imply that Plaintiff's conviction is invalid. *See Heck*, 512 U.S. at 486-87.

Plaintiff argues that success on his claim would not imply his conviction's invalidity because the marijuana and knives would have been inevitably discovered even without the search and seizure. Plaintiff's argument fails. Recall that if the marijuana would have been inevitably discovered despite the allegedly unconstitutional search and seizure, *Heck* does not bar Plaintiff's claim. *Heck*, 512 U.S. at 487 n.7 (emphasis in original). Here, Plaintiff fails to persuade the Court that the marijuana would inevitably have been discovered.

This conclusion requires a brief discussion of the inevitable discovery doctrine. In its normal operation during a criminal prosecution, "the inevitable discovery doctrine permits the admission of illegally obtained evidence when 'the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]'" *United States v. Manzo-Jurado*, 457 F.3d 928, 940 (9th Cir. 2006) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). The requisite level of proof is different when the inevitable discovery doctrine is used to overcome *Heck* as a bar to a Section 1983 claim. *Heck* only bars claims that "would *necessarily* imply the invalidity of [a] conviction . . . ." *Heck*, 512 U.S. at 487 (emphasis added). So as long as there is a reasonable possibility that the evidence at issue would be inevitably discovered, success on a Fourth Amendment claim would not *necessarily* imply the invalidity of the conviction, and the Section 1983 claim may proceed.

Plaintiff fails to show there is any reasonable possibility that the marijuana would have been independently discovered. Plaintiff argues that, "Fouste would have assuredly asked the plaintiff his name, and upon running the same, would have discovered the protective order, that would have led to the arrest for the alleged violation of the same, which would have inevitably led to the discovery of the pot." (Opp'n to Individual Defendants' Mot. 16, n.23 (emphasis removed).) The Individual Defendants persuasively explain the flaws of this argument:

> Without discovering the marijuana in the first place, the Deputies would have had no justification for searching Plaintiff's Range Rover – there would have been no probable cause that drugs were in the car to justify an automobile search . . . and there would not have been an arrest for possession of marijuana that would have justified a search incident to arrest . . . .  Without searching the car, the Deputies would not have discovered Plaintiff's knives.  Accordingly, the Deputies would not have had probable cause to believe Plaintiff had violated the terms of his protective order [and thus there] would not have been a search incident to arrest to turn up the marijuana.

(Reply to Individual Defendants' Mot. 1:19-2:2.)

Accordingly, success on Plaintiff's claim that Fouste unreasonably searched him would necessarily imply the invalidity of Plaintiff's conviction.  *Heck* bars this claim.


### 1.2.2   Qualified Immunity


Because *Heck* bars Plaintiff's unreasonable search and seizure claim based on the search of Plaintiff, the Court need not address whether the Individual Defendants have qualified immunity on that claim.  But the issue of whether the search was unreasonable is relevant to the Court's analysis of other issues, and a brief discussion will assist the parties at oral argument.  Thus, the Court finds the following.

Admissible evidence viewed in the light most favorable to Plaintiff shows that there are disputed issues of fact concerning whether Fouste's search of Plaintiff was reasonable.  The Individual Defendants admit that Fouste did not do a *Terry* pat down of Plaintiff, but rather did a full blown search of Plaintiff.  There is a genuine issue of fact whether, at the time Fouste searched Plaintiff, he had probable cause to do so.

The Individual Defendants argue that probable cause existed because Fouste smelled marijuana on Plaintiff.  Defendants offer evidence that, after Plaintiff approached, "Fouste smelled the odor of unburned marijuana on [Plaintiff's] possession."  (Fouste Decl. ¶ 8.)  Fouste declares that he smelled marijuana on Plaintiff, he told Plaintiff that he smelled the marijuana, and then he searched Plaintiff and discovered the marijuana.  (Fouste Decl. ¶¶ 8-11.)

Plaintiff does not dispute that Fouste searched him and discovered the marijuana.  Rather,

1    Plaintiff attempts to create a disputed issue of fact about whether Fouste actually smelled the

2    marijuana before searching Plaintiff.  Plaintiff argues that Fouste could not have smelled

3    marijuana on him.  Plaintiff states that he "had only a small amount of marijuana (about a

4    teaspoon size amount) that was unburned, and was sealed in a plastic container; preventing a

5    person from being able to smell the small amount of marijuana at night, in the cold, . . . inside of

6    plaintiff's pocket."  (PSMF ¶ 11; Radwan Decl. ¶¶ 23-28.)  Defendants object to Plaintiff's

7    statements that Fouste could not have smelled marijuana as inadmissible lay opinion, immaterial,

8    and argumentative, but their objections are OVERRULED.

9        There is a disputed issue of fact about whether Fouste actually smelled marijuana on

10   Plaintiff before searching him.  The conditions of the incident permit a reasonable inference that

11   Fouste could not have smelled the small amount of marijuana in a sealed container in Plaintiff's

12   pocket.  *See O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1466-67 (9th Cir. 1986) ("We

13   scrutinize the evidence and reasonable inferences to determine whether there is sufficient

14   probative evidence to permit 'a finding in favor of the opposing party based on more than mere

15   speculation, conjecture, or fantasy.'"); *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 477 (8th

16   Cir. 2010) ("[T]here exists a genuine dispute as to material fact and ample evidence to question

17   the credibility of Officer Wright and his statement."); *Bazan v. Hidalgo County*, 246 F.3d 481,

18   491-93 (5th Cir. 2001).  *See also Anderson*, 477 U.S. at 248.

19       Thus, there is a disputed issue of fact about whether Fouste smelled marijuana on Plaintiff

20   before searching him.  The Court also notes that there is a dispute about whether Fouste even

21   told Plaintiff before searching him that he smelled like marijuana.  Plaintiff declares that Fouste

22   made no such statement until after he searched plaintiff.  (Radwan Decl. ¶ 29.)  Defendants

23   argue that Plaintiff's declaration is inadmissible because it contradicts Plaintiff's sworn

24   deposition testimony, but after reviewing the testimony cited by Defendants and its context, it is

25   not clear that Plaintiff's declaration contradicts his deposition testimony.  (*See* Radwan Depo.

26   111:4-18 (filed as Doc. 58, Ex. K).)

27       Considering these disputed issues, the Individual Defendants are not entitled to qualified

28   immunity concerning Fouste's search of Plaintiff.  If Fouste did not smell the marijuana, he did

1   not have probable cause to search Plaintiff.  If he did not have probable cause to search Plaintiff,

2   his search was unreasonable.  Under Plaintiff's version of the facts, Fouste made a clearly

3   established constitutional violation, and no reasonable officer could have concluded that his

4   conduct was constitutional.

5

6           1.2.3   Conclusion

7

8           While the Individual Defendants are not entitled to qualified immunity on this claim, the

9   claim is barred by *Heck*.

10

11   **1.3      The Search of Plaintiff's Vehicle**

12

13          The third incident at issue is the search of Plaintiff's vehicle.  The Individual Defendants

14   argue that they are entitled to qualified immunity regarding this incident.  The Court agrees.

15          Before discussing why qualified immunity exists, it is helpful to recognize that the search

16   of Plaintiff's vehicle is a distinct violation from the search of Plaintiff's person.  Plaintiff appears

17   to argue that, because the initial search of Plaintiff's person was unreasonable, the items found

18   during the initial search were fruit of the poisonous tree and Defendants cannot use those items

19   to justify later conduct like the search of Plaintiff's vehicle.  (*See* Opp'n to Individual

20   Defendants' Mot. 12:12-15.)  But courts have consistently declined to adopt Plaintiff's

21   reasoning.  *See, e.g.*, *Townes v. City of New York,* 176 F.3d 138, 149 (2d Cir.1999) ("[t]he lack

22   of probable cause to stop and search does not vitiate the probable cause to arrest, because

23   (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983

24   claimant.");  *Wren v. Towe,* 130 F.3d 1154, 1158 (5th Cir.1997) (exclusionary rule does not apply

25   in a § 1983 action);  *Reyes v. City of Glendale*, No. CV 05-0253 CAS (MANx), 2009 WL

26   2241602, at *14 (C.D. Cal. July 23, 2009).  Thus, in determining whether the Individual

27   Defendants have qualified immunity for the search of Plaintiff's vehicle, the Court must look to

28   the circumstances that existed when the decision to search the vehicle was made.  In other

words, the Court may not rely on earlier constitutional violations and the doctrine of the fruit of the poisonous tree to support a finding that the search of the vehicle was a separate constitutional violation.

Keeping this in mind, the search of Plaintiff's vehicle was not unreasonable.  The search can be justified under two exceptions to the general requirement of obtaining a warrant before a search: (1) the search incident to arrest exception, and (2) the automobile exception.

### 1.3.1 Search Incident to Arrest

"The Fourth Amendment generally requires that police officers have probable cause before searching a car." *United States v. Villasenor*, 608 F.3d 467, 473 (9th Cir. June 10, 2010).  "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'"  *Arizona v. Gant*, -- U.S. --, 129 S. Ct. 1710, 1719 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One such exception is a search incident to a lawful arrest.  *Id.*

The Supreme Court in *Gant* recently explained when searches of vehicles are valid as searches incident to arrest.  Generally, this exception "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."  *Gant*, 129 S. Ct. at 496.  But there is also another situation where a vehicular search incident to arrest is valid. "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 129 S. Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)).

Here, the search of Plaintiff's vehicle was valid under the second situation.  It was reasonable to believe that evidence relevant to Plaintiff's possession of marijuana would be found in Plaintiff's vehicle.  Marijuana was found on Plaintiff before the search, and narcotics

1  offenses "will supply a basis for searching the passenger compartment of an arrestee's vehicle

2  and any containers therein." *Id*. at 1719.

3        Plaintiff argues that he was not formally arrested before his vehicle was searched, so the

4  search could not have been a search incident to a lawful arrest. (Opp'n to Individual Defendants'

5  Mot. 14:1-4.)  This argument fails.  Numerous courts have recognized that a search incident to

6  arrest may be valid even though the search comes *before* the arrest.  *See, e.g.*, *Rawlings v.*

7  *Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of

8  the challenged search of petitioner's person, we do not believe it particularly important that the

9  search preceded the arrest rather than vice versa."); *United States v. Ricard*, 563 F.2d 45, 49 (2d

10  Cir. 1977) (quoting *United States v. Jenkins*, 496 F.2d 57, 72-73 (2d Cir. 1974)) ("The mere fact

11  that the trooper reversed the procedure, conducting the search before the arrest, did not render it

12  illegal as long as probable cause to arrest existed at the time of the search. . . . Any other holding

13  would, without rational basis, exalt form over substance.").  Here, after Fouste initially

14  discovered marijuana on Plaintiff, probable cause to arrest Plaintiff existed for possession of

15  marijuana.  *See* Cal. Health and Safety Code § 11357(b) (contemplating that a person may be

16  "arrested" for possession of a small amount of marijuana); *United States v. McCall*, 268 Fed.

17  Appx. 646, 648 (9th Cir. 2008) ("Although California law requires release after an arrest for

18  violation of the statute prohibiting possession of not more than 28.5 grams of marijuana after

19  presenting satisfactory identification, by its terms, 'in which a person is arrested for a violation

20  of this subdivision,' the statute contemplates that arrest for violation of the subdivision is

21  permissible.").  Thus, the fact that a formal arrest came after the search of the vehicle does not

22  prohibit application of the search incident to arrest exception.

23        Plaintiff also argues that the search incident to arrest exception should not apply because

24  Plaintiff was arrested for possessing knives in violation of a court order, not for possessing

25  marijuana.  Plaintiff states that no officer "ever told [Plaintiff] that [he] was under arrest for

26  possession of marijuana."  (Radwan Decl. ¶ 32.)  But even assuming Plaintiff's statement creates

27  a disputed issue of fact concerning whether anyone told him he was arrested for possession of

28  marijuana, the search incident to arrest exception still applies.  Plaintiff was arrested after the

1   search of his vehicle, which was after probable cause to arrest Plaintiff existed.  The fact that

2   evidence of a different crime was discovered during the vehicular search, and the officers may

3   have told Plaintiff he was under arrest for that different crime, does not render the search of

4   Plaintiff's vehicle invalid.

5          The search was reasonable under the search incident to arrest exception.  Even if it was

6   not, the law was not clearly established at the time of the incident to give a fair warning that the

7   search was unconstitutional.  *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  *Accord San Jose*

8   *Charter of Hells Angels Motorcycle Club v. City of San Jose*, 492 F.3d 962 (9th Cir. 2005)

9   (defendants "are not entitled to qualified immunity simply because there is no case on all fours

10  prohibiting this particular manifestation of unconstitutional conduct").

11         Thus, the Individual Defendants are entitled to qualified immunity under the search

12  incident to arrest exception.

13

14              1.3.2   The Automobile Exception

15

16         Another exception to the warrant requirement is the automobile exception.  Under the

17  automobile exception, a search of a vehicle "is not unreasonable if based on facts that would

18  justify the issuance of a warrant, even though a warrant has not actually been obtained."  *United*

19  *States v. Ross*, 456 U.S. 798, 809 (1982); *Gant*, 129 S. Ct. at 1721  ("If there is probable cause to

20  believe a vehicle contains evidence of criminal activity, [*Ross*] authorizes a search of any area of

21  the vehicle in which the evidence might be found.").

22         To determine whether the automobile exception applies, the Court must ask whether,

23  before Plaintiff's vehicle was searched, there was probable cause to believe the vehicle

24  contained marijuana.  Of course probable cause existed to arrest *Plaintiff* after marijuana was

25  found on Plaintiff.  *See* Section 2.3.1 *supra*.  It's a different question whether, after marijuana

26  was found on Plaintiff, probable cause existed to search *Plaintiff's vehicle*.

27         "Probable cause exists when, under the totality of the circumstances, there is a fair

28  probability that contraband or evidence of a crime will be found in a particular place."  *United*

1   *States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (quoting *United States v. Luong*, 470 F.3d

2   898, 902 (9th Cir. 2006)) (internal quotation marks omitted).  Here, because marijuana was

3   discovered on Plaintiff, there was a fair probability that it would be discovered in Plaintiff's car

4   as well.  *See Gant*, 129 U.S. at 1719.  Thus, the search of Plaintiff's vehicle was reasonable

5   under the automobile exception.

6          Even if the search was unreasonable, the law was not sufficiently clear on the point to

7   give a reasonable officer "fair warning" that the search would be unconstitutional.  *See Hope*,

8   536 U.S. at 741.  A reasonable officer could have concluded that the search was constitutional.

9          Thus, the Individual Defendants are entitled to qualified immunity under the automobile

10  exception.

11

12                  1.3.3   Conclusion

13

14         The warrantless search of Plaintiff's vehicle was reasonable under both the search

15  incident to arrest exception and the automobile exception.  Summary adjudication is GRANTED

16  on Plaintiff's first claim to the extent it is based on this search.

17

18  **1.4      The Arrest of Plaintiff**

19

20         The fourth incident at issue is the arrest of Plaintiff.  The Individual Defendants again

21  argue that this claim should be dismissed both under *Heck* and on grounds of qualified

22  immunity.

23         There is some confusion about when, exactly, Plaintiff was arrested.  The Individual

24  Defendants contend that Fouste's detention of Plaintiff ripened into an arrest before he searched

25  Plaintiff.  (*See* Individual Defendants' Reply 10:15-23.)  It's not clear that this is so, especially

26  considering the multiple disputed issues surrounding Fouste's search.  *See* Section 1.2 *supra*.

27  *See also United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990) (stating that a totality of

28  the circumstances test governs when an investigatory detention ripens into an arrest).  But to the

extent Plaintiff *was* arrested before he was searched, the illegality of that arrest would imply the invalidity of Plaintiff's conviction for marijuana possession. *Heck*, 512 U.S. at 486-87.

On the other hand, to the extent Plaintiff was arrested *after* he was searched, *Heck* does not bar this claim. In such a case, Fouste's initial search had already revealed marijuana on Plaintiff. Even if Plaintiff's later arrest was invalid, it would not imply the invalidity of Plaintiff's conviction for marijuana, since Plaintiff certainly could have been convicted for the marijuana without being arrested.

But while *Heck* does not bar Plaintiff's claim based on an arrest after he was searched, the Individual Defendants are entitled to qualified immunity on such a claim. Marijuana was discovered on Plaintiff, and it was reasonable to arrest Plaintiff for possession of marijuana. *See* Cal. Health & Safety Code § 11357(b).

Further, once the officers discovered that Plaintiff might have violated a protective order by possessing knives, it was reasonable to arrest him for that offense as well. Plaintiff argues that there was no probable cause to arrest Plaintiff for violating a protective order because computer databases showed two conflicting protective orders concerning Plaintiff. (PSMF ¶¶ 32-33.) One database stated that a protective order prohibited Plaintiff from possessing any *weapons*. (PSMF ¶ 32.) Another database stated that Plaintiff was prohibited from possessing any *firearms*. (PSFM ¶ 33.) Under the first database, Plaintiff's possession of knives would have violated the protective order. But not so under the second database. The Individual Defendants provide evidence that Prince attempted to call the custodian of Orange County-based restraining orders to resolve the discrepancy. (SUF ¶ 35.)

Plaintiff tries to create a material issue of fact out of the conflicting databases, but his efforts fail. It is undisputed that Prince and Hilliard believed Plaintiff "may have been restrained from [possessing] any weapons at all" and that Plaintiff violated the protective order. (PSMF ¶ 33.) Such a belief is sufficient for probable cause to arrest Plaintiff for violation of the protective order. *See Paff v. Kaltenback*, 204 F.3d 425, 436 (3d Cir. 2000) ("While probable cause to arrest requires more than mere suspicion, the law recognizes that probable cause determinations . . . *do not require the fine resolution of conflicting evidence* that a reasonable

doubt or even a preponderance standard demands.") (emphasis added); *Rodis v. City and County of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009), *cert. denied*, -- U.S. --, 130 S. Ct. 1050 (2010) ("'Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person arrested.'").  Plaintiff also tries to dispute the evidence that Prince attempted to resolve the discrepancy between the databases, but Plaintiff does not identify sufficient evidence to create such a dispute.  (*See* PSMF ¶ 35.)

In sum, the arrest of Plaintiff was reasonable and not a constitutional violation.  Even if it was a constitutional violation, it was not a clearly established constitutional violation.  A reasonable officer could have believed that probable cause existed to arrest Plaintiff based on the database that stated Plaintiff could not possess any weapons.

Summary adjudication is GRANTED on Plaintiff's first claim to the extent it is based on this arrest of Plaintiff.

### 1.5    The Decision to Take Plaintiff to Jail to be Booked

The fifth incident at issue is the decision to transport Plaintiff to jail to be booked.  Because California Health and Safety Code Section 11357(b) states that Plaintiff could not have been booked for possession of a small quantity of marijuana, the decision to take Plaintiff to jail for booking could not be based on his marijuana offense.  Thus, it must be based on his alleged violation of the protective order.

As stated in Section 1.4, there was probable cause to arrest Plaintiff for violation of the protective order, or at least there was no clearly established constitutional violation.  Accordingly, the decision to take Plaintiff to jail for booking based on a potential violation of the protective order was also reasonable or not a clearly established constitutional violation.

Summary adjudication is GRANTED on Plaintiff's first claim to the extent it is based on the decision to transport Plaintiff to jail for booking.

### 1.6 Conclusion

The Individual Defendants' Motion is GRANTED as to Plaintiff's first claim.

## 2. PLAINTIFF'S EXCESSIVE FORCE CLAIM

Plaintiff's second claim is for excessive force in violation of the Fourth Amendment. The Individual Defendants argue that they are entitled to qualified immunity on this claim.

The excessive force claim is based on three main incidents. Under the *Katz/Pearson* inquiry, the Court must determine for each of these alleged incidents (1) whether there Defendants violated Plaintiff's constitutional right to be free from excessive force, and (2) whether, in the context of the circumstances faced by Defendants, the right was clearly established at the time of the incident.

Concerning whether the alleged incidents amounted to an unconstitutional use of excessive force, the test for excessive force involves a three part inquiry.

> First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted. Second, we analyze the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. At this stage of the analysis, we may also consider other factors, such as the availability of alternative methods of capturing or subduing a suspect. Finally, we weigh the gravity of the intrusion against the government's interest to determine whether the force used was constitutionally reasonable.

*Mattos v. Agarano*, 590 F.3d 1082, 1086 (9th Cir. 2010). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the Ninth Circuit has "held on many occasions that summary judgment or judgment

1   as a matter of law in excessive force cases should be granted sparingly." *Espinosa v. City &*
2   *County of San Francisco*, 598 F.3d 528, 544 (9th Cir. 2010) (quoting *Santos v. Gates*, 287 F.3d
3   846, 854 (9th Cir. 2002)).

4       The Court now turns to the alleged excessive force incidents and applies the Ninth
5   Circuit's test.

6

7       **2.1**    **The use of force at the scene of the arrest**

8

9           2.1.1   The Severity of the Force

10

11      The first alleged excessive force incident is based on the force used against Plaintiff at the
12  scene of his arrest.  This necessarily requires general descriptions that are then used in balancing
13  different factors.  The force applied at the scene of the arrest was moderate.  Plaintiff lists a
14  number of the Individual Defendants' actions during this incident that he contends were
15  excessive.

16      Some of the allegedly excessive uses of force were pain compliance techniques.  The
17  Ninth Circuit has recently classified such uses of force as "less than intermediate."  *See Brooks*
18  *v. City of Seattle*, 599 F.3d 1018, 1027-28 (9th Cir. 2010).  Plaintiff states that Hergesheimer
19  "pulled [Plaintiff's] handcuffed hands up behind [his] back, causing [him] to suffer substantial
20  pain . . . ."  (Radwan Decl. ¶ 50.)  Plaintiff also provides evidence that he was shot with a taser
21  in drive-stun mode without warning in his lower back at least once.  (Radwan Decl. ¶ 67.)
22  While these uses of force were "serious intrusions" that may have caused Plaintiff pain, the
23  Ninth Circuit has held that such force is of "less than intermediate" severity.  *See Brooks*, 599
24  F.3d at 1027-28 (finding that use of taser in drive-stun mode three times against a pregnant
25  woman was less than intermediate force).

26      But the use of force at the scene of Plaintiff's arrest goes beyond the use of pain
27  compliance techniques.  Plaintiff also provides evidence of the following uses of force.
28  Hergesheimer kicked the leg chains that were already tight and painful on Plaintiff.  (Radwan

1   Decl. ¶ 53.)  Hergesheimer also grabbed Plaintiff's testicles, which hurt him.  (Radwan Decl. ¶

2   51.)  Further, Prince slammed Plaintiff's face into the hood of a car, which broke Plaintiff's

3   glasses and caused a welt on his nose.  (Radwan Decl. ¶ 63; Plaintiff's Exhibit R at 9:18-9:25.)

4   And Prince later threw Plaintiff to the ground while he was handcuffed and leg-ironed.  (Radwan

5   Decl. ¶ 66.)

6        Overall, the use of force against Plaintiff at the scene of his arrest was moderate.  While

7   the police did not use deadly or the extremely violent force found in some cases, they did slam

8   Plaintiff's head against a car hood, kick his already tight leg irons, painfully grab Plaintiff's

9   testicles, and throw Plaintiff to the ground.  Such uses of force given the circumstances make the

10  overall use of force at the scene of the arrest moderate.

11

12            2.1.2   The Need for the Force

13

14        It's worth repeating that the need for the force is the most important factor.  Under

15  Plaintiff's version of the facts, the need for the force was very low.

16        When determining the need for police force, courts look to sub-factors known as the

17  *Graham* factors.  These factors require courts to consider "(1) the severity of the crime at issue,

18  (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3)

19  whether the suspect was actively resisting arrest" or posed a flight risk.  *Mattos*, 590 F.3d at

20  1086 (quoting *Miller v. Clark County* 340 F.3d 959, 964 (9th Cir. 2003)); *see Graham v.*

21  *Connor*, 490 U.S. 386, 396 (1989).  The *Graham* factors and other circumstances concerning the

22  reasonableness of force "are not to be considered in a vacuum but only in relation to the amount

23  of force used to effect a particular seizure."  *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

24        The first factor, the severity of the crime at issue, weighs against a finding of excessive

25  force.  Plaintiff was initially suspected of committing an assault, which is a more serious offense.

26  *See Bryan v. MacPherson*, 608 F.3d 614, 625 (9th Cir. 2010).  Because Plaintiff was suspected

27  of assault, the first factor weighs against a finding of excessive force.

28

1    The second and most important *Graham* factor is the threat posed to officers or

2    bystanders. *See Brooks*, 599 F.3d at 1028.  Under Plaintiff's version of the facts, Plaintiff posed

3    a very minimal threat.  For most of the uses of force against Plaintiff, he was already placed in

4    tight handcuffs and leg irons.  Further, Plaintiff was subdued with Prince's hand securely on

5    Plaintiff's neck, holding Plaintiff's head down next to the hood of a police car.  In this position,

6    Plaintiff posed very little threat to anyone. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1055-

7    56 (9th Cir. 2007).

8    The Individual Defendants contend that they were worried Plaintiff "may attempt to spit

9    on them."  (SUF ¶ 68.)  The video evidence shows that this argument lacks plausibility.

10   Plaintiff's head was held down close to the hood of a patrol car, and relatively far from any of

11   the Individual Defendants.  (*See* Plaintiff's Exhibit R.)  It would require abnormally skillful

12   spitting technique for Plaintiff to successfully spit on anyone from this position.

13   The Individual Defendants also contend that they were worried Plaintiff would "escalate

14   his physical resistance."  While this may be so, and such worries might even have been

15   objectively reasonable, they do not justify the Individual Defendants' use of force against

16   Plaintiff where Plaintiff was securely under control.  For instance, Prince clearly had Plaintiff

17   under control when he slammed Plaintiff's head against the hood of a patrol car.

18   The Individual Defendants further argue that Plaintiff posed a threat to them by actively

19   resisting arrest before Prince threw him to the ground and tasered him.  Of course, Plaintiff states

20   that he was not resisting.  (*See generally* Radwan Decl.)  But the Individual Defendants argue

21   that the Court must find that it is undisputed Plaintiff was resisting because video evidence

22   proves it.  The Court disagrees.

23   The video evidence submitted does not establish that Plaintiff was resisting before he was

24   thrown to the ground and tasered.  The Individual Defendants argue that the video proves

25   Plaintiff looked back, stiffened his body, and arched his back.  While the video does show

26   Plaintiff move his head slightly to look back, it does not show him stiffen his body or

27   significantly arch his back.  Further, Plaintiff states that his looking backwards was done in

28   response to Hergesheimer and Hilliard kicking Plaintiff's leg irons, because it hurt Plaintiff and

26

1  he wanted to tell them he was cooperating.  (Radwan Decl. ¶¶ 53-54.)  The video evidence is

2  inconclusive on whether Plaintiff was resisting.  Thus, it does not contradict Plaintiff's version

3  of the events.

4      Thus, Plaintiff did not pose an immediate threat to the Individual Defendants, so the

5  second (and most important) *Graham* factor weighs strongly in favor of finding excessive force.

6      The third factor is whether Plaintiff was resisting arrest or posed a flight risk.  As just

7  stated, under Plaintiff's version of the facts, Plaintiff was not resisting.  Further, Plaintiff was in

8  handcuffs and leg irons, so he posed no flight risk.  Thus, the third *Graham* factor weighs

9  strongly in favor of finding excessive force.

10     On balance, the three *Graham* factors weigh strongly in favor of finding excessive force.

11  In addition to the *Graham* factors, courts also consider the totality of the circumstances and may

12  look to other factors.  *Brooks*, 559 F.3d at 1029.  Here, no other circumstances weigh strongly

13  for or against a finding of excessive force.

14     Accordingly, under Plaintiff's version of the facts, there was a very low need for the

15  force, which favors a finding of excessive force.

16

17         2.1.3   The Balance of the Force Used against the Need

18

19     The Court must balance the force used against the need for the force to determine whether

20  it was reasonable.  Here, the force used against Plaintiff was moderate, and the need for the force

21  was very low.  On balance, the force used was not reasonable.

22

23         2.1.4   Conclusion

24

25     Plaintiff has submitted sufficient evidence to establish an excessive force violation of his

26  Fourth Amendment rights.  The Court also finds that this violation was clearly established.  *See*

27  *Pearson*, 129 S. Ct. at 815.  When the incident occurred in 2006, there was not much Supreme

28  Court or Ninth Circuit guidance on the use of tasers.  But there was such guidance on much of

the type of force used here.  *See Palmer v. Sanderson*, 9 F.3d 1433, 1434-36 (9th Cir. 1993) (finding excessive force where an officer jerked plaintiff out of his car, handcuffed him extremely tightly, shoved him into a patrol car, and refused to loosen his handcuffs); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989).  The Court finds that, under Plaintiff's version of the facts, no reasonable officer would have found the use of force against Plaintiff to be constitutional.

The Individual Defendants also argue that summary adjudication on this claim should be granted for Defendants Fouste, Kunar, Kurimay, Hernandez, Padilla, Garcia, and Essoe because there is no evidence they participated in any constitutional violation.  The Court agrees, and summary adjudication is GRANTED as to these Defendants.  But as to Prince, Hilliard, and Hergesheimer, summary adjudication is DENIED.

## 2.2    The use of force in removing Plaintiff from the police car

The Court must repeat the process to determine whether the force used in removing Plaintiff from a patrol car and lifting him by his arms and ankle cuffs was reasonable.  The Court finds that, under Plaintiff's version of the facts, the force was not reasonable.

### 2.2.1   The Severity of the Force

The use of force in the second incident was low to moderate.  Plaintiff was tightly handcuffed and leg-ironed, and Defendants refused to loosen Plaintiff's restraints even after Plaintiff complained about being in great pain.  (Radwan Decl. ¶¶ 83-84.)  Further, Hergesheimer and Padilla grabbed Plaintiff by his upper arms while they were behind his back, which Plaintiff states caused him excruciating pain in his shoulders.  (Radwan Decl. ¶ 88.)  Plaintiff's version of these events is consistent with the video evidence.  (*See* Plaintiff's Exhibit G.)

The video evidence supports a finding of excessive force when it is viewed in the light

1   most favorable to Plaintiff.  One interpretation of the video evidence, which would be consistent

2   with Plaintiff's statements, is that Plaintiff was in extreme pain and unable to walk, yet the

3   officers dragged him out of the patrol car and forced him to try to walk when he couldn't,

4   causing him to begin to collapse.  (Plaintiff's Exhibit G 6:05-6:50.)  Defendants, of course,

5   provide a different interpretation.  But all that does is raise an issue of fact for a later stage.  The

6   video evidence further shows Plaintiff was carried by the officers by the chain of his restraints

7   and by holding his arms up behind his back.  This use of force is not as severe as the other two

8   main incidents in this case, and the Court finds that the force used was low to moderate.

9

10              2.2.2   The Need for the Force

11

12        The Court again turns to the *Graham* factors in analyzing the need for the force.  Again,

13   these factors strongly favor finding excessive force.

14        The first factor, the severity of the crimes at issue, weighs against a finding of excessive

15   force.  The analysis here is the same as it was in Section 2.1.2.

16        The second factor, whether Plaintiff posed a threat to officers or bystanders, strongly

17   favors finding excessive force.  Plaintiff was in handcuffs and leg irons, and he was surrounded

18   by multiple police officers.  Like in the analysis for the first excessive force incident, Defendants

19   contend Plaintiff was resisting and kicking his legs, and Plaintiff denies such conduct.  Further

20   like the first incident, the video evidence is inconclusive concerning whether Plaintiff was

21   actually resisting.  Thus, under Plaintiff's version of the facts, Plaintiff posed very little threat to

22   any officers or bystanders.  *See Davis*, 478 F.3d at 1055-56.

23        The third factor, whether Plaintiff was resisting or posed a flight risk, also strongly favors

24   finding excessive force.  Again, the video evidence is inconclusive concerning whether Plaintiff

25   was resisting, so the Court must accept Plaintiff's version of the events, where he was not

26   resisting.  And Plaintiff posed no flight risk since he was in restraints and surrounded by police

27   officers.

28

On balance, the *Graham* factors (and thus the need for the force) strongly favor finding excessive force.

### 2.2.3   The Balance of the Force Used against the Need

Viewing the evidence in the light most favorable to Plaintiff, there was a low to moderate use of force but only a minimal need for the force.  The balance of these interests supports a finding of excessive force.

### 2.2.4   Conclusion

The evidence viewed in the light most favorable to Plaintiff supports a finding of excessive force.  Further, this constitutional violation was clearly established at the time of the incident.  *See Palmer*, 9 F.3d at 1434-36 (finding excessive force where an officer jerked plaintiff out of his car, handcuffed him extremely tightly, shoved him into a patrol car, and refused to loosen his handcuffs).

The Individual Defendants also argue that Essoe, Fouste, Prince, Hilliard, Kunar, Hergesheimer, Garcia and Kurimay are entitled to qualified immunity because they did not personally participate in the use of force during this incident.  (Defendants' Chart 50:19-51:1.)  The Court agrees, and summary adjudication is GRANTED as to these Defendants.  But as to Padilla and Foster, who personally participated in this incident, summary adjudication is DENIED.

### 2.3     The Use of Force in the Medical Observation Cell

The third incident is the use of the force in the medical observation cell. The Court finds that, under Plaintiff's version of the facts, this force was not reasonable.

### 2.3.1   The Severity of the Force

The use of force in the medical observation cell incident was moderate when the evidence is viewed in the light most favorable to Plaintiff.  Plaintiff was still unable to walk due to the pain from his leg restraints, and the officers refused to loosen the restraints.  (Plaintiff's Exhibit G 11:15-11:25.)  The officers lifted Plaintiff by holding his arms backwards behind him and holding the chain of the leg restraints that were hurting him.  (Plaintiff's Exhibit G 11:25-12:16.)  Then an officer stood on the chains of Plaintiff's leg irons, and other officers twisted Plaintiff's arms and pinned Plaintiff's legs, all of which caused him pain.  (Plaintiff's Exhibit G 12:16-18:30; Radwan Decl. ¶¶ 95-101.)  This use of force was moderate.

### 2.3.2   The Need for the Force

The analysis for the second factor, the need for the force, is similar to the analysis in Section 2.2.2.  The crime at issue weighs against finding excessive force.  But the threat posed by Plaintiff and whether he was resisting or a flight risk weigh very strongly in favor of finding excessive force.  Thus, this factor strongly favors finding excessive force.

### 2.3.3   The Balance of the Force Used against the Need

Viewing the evidence in the light most favorable to Plaintiff, there was a moderate use of force but only a minimal need for the force.  The balance of these interests supports a finding of excessive force.

### 2.3.4   Conclusion

The evidence viewed in the light most favorable to Plaintiff supports a finding of excessive force.  Further, this constitutional violation was clearly established at the time of the

1    incident, and no reasonable officer would have believed the use of force to be constitutional.  *See*

2    *Palmer*, 9 F.3d at 1434-36.

3         The Individual Defendants also argue that Essoe, Fouste, Prince, Hilliard, Kunar,

4    Hergesheimer, and Kurimay are entitled to qualified immunity because they did not personally

5    participate in the use of force during this incident.  (Defendants' Chart 50:19-51:1.)  The Court

6    agrees, and summary adjudication is GRANTED as to these Defendants.  But as to Garcia,

7    Hernandez, Padilla, and Foster, who personally participated in this incident, summary

8    adjudication is DENIED.

9

10   **3.    PLAINTIFF'S FIRST AMENDMENT CLAIM**

11

12        The Individual Defendants argue that the Court should dismiss Plaintiff's claim for

13   violation of his First Amendment rights.  The Court agrees.

14        "'The First Amendment protects a significant amount of verbal criticism and challenge

15   directed at police officers.'"  *Duran v. Douglas*, 904 F.2d 1372, 1378 (1989) (quoting *Houston v.*

16   *Hill*, 482 U.S. 451, 461 (1987)).  A plaintiff can establish a First Amendment claim of retaliation

17   for protected speech against an officer if (1) the plaintiff's speech was entitled to constitutional

18   protection, (2) the speech was a "substantial" or "motivating" factor in the officer's action, and

19   (3) the same action would not have been taken in the absence of the protected activity.  *See*

20   *Gillette v. Delmore*, 886 F.2d 1194, 1197 (9th Cir. 1989).  A plaintiff can also show a First

21   Amendment violation if an officer's conduct deterred or chilled the plaintiff's protected speech,

22   "and such deterrence was a substantial or motivating factor" in the officer's conduct.  *See*

23   *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).

24        The Individual Defendants assert that "there is no evidence any of the alleged misconduct

25   was animated by an intent to stop or punish Plaintiff's speech."  (Individual Defendants' Reply

26   24:1-3.)  Plaintiff argues that, at multiple times during their interactions with Plaintiff, the

27   Individual Defendants acted with intent to inhibit Plaintiff's speech.  (Plaintiff's Chart at 53-73.)

28        Plaintiff first argues that Fouste placed Plaintiff in a patrol car "because [Plaintiff] called

out to his girlfriend . . . and told her to tell the deputies what had happened . . . ." (Plaintiff's Chart 53:12-17.) But Plaintiff cites no evidence to support a finding that Plaintiff's speech was a factor in Fouste's actions. Fouste states that he ordered Plaintiff to his feet, handcuffed him, and placed him in a patrol car because Plaintiff "was verbally uncooperative and kept distracting [Fouste] from [his] ability to supervise the other deputies on the scene . . . ." (Declaration of James Fouste (Plaintiff's Exhibit YY) ¶ 16.) Plaintiff's own Declaration states that, "Fouste told me that he was 'detaining' me because of domestic violence laws; to check-out whether my and Cassandra Fults' stories checked-out. Pursuant to that detention, he handcuffed me, and took me over to [the] patrol car, and placed me inside of [it]." (Radwan Decl. ¶ 35.) The only evidence of Fouste's motive for placing Plaintiff in a patrol car shows that Fouste sought to complete an investigation, not to inhibit Plaintiff's speech or retaliate for such speech. Thus, summary adjudication is GRANTED to the extent Plaintiff seeks to base a claim for First Amendment violations on Fouste's placing him in the patrol car.

Plaintiff concedes that he has not presented evidence that any Defendants searched Plaintiff's vehicle based on Plaintiff's exercise of protected speech. (*See* Plaintiff's chart 56:16-2.) Thus, summary adjudication is GRANTED to the extent Plaintiff seeks to base a claim for First Amendment violations on the search of Plaintiff's vehicle.

Plaintiff next argues that "there is evidence from which a reasonable jury could find that a substantial or motivating factor in the decision of [Defendants] to arrest plaintiff and transport him to [jail] was . . . plaintiff calling out to his girlfriend during his initial detention." (Plaintiff's Chart 60:4-12.) But again, Plaintiff identifies no evidence to support his argument concerning Defendants' motivation. Indeed, the evidence submitted shows that Plaintiff was arrested and taken to jail because of the officers' beliefs that he violated the law. (*See, e.g.*, Declaration of Matthew Prince ¶ 22.) There is no triable issue of fact on whether Plaintiff was arrested or transported to jail based on his speech, so summary adjudication is GRANTED to the extent Plaintiff seeks to base a claim for First Amendment violations on the decision to arrest Plaintiff and transport him to jail.

Plaintiff next argues that at the scene of the arrest, "a substantial or motivating factor in

1   [Defendants'] decision to use . . . force upon Plaintiff . . . was plaintiff's exercise of

2   constitutionally protected speech." (Plaintiff's Chart 60:18-24.) The Court disagrees.

3        There is insufficient evidence to establish that any Defendants acted with intent to inhibit

4   Plaintiff's speech. Rather, the evidence shows that Defendants were merely trying to maintain

5   control of the scene, where Plaintiff was acting in an agitated manner. While the video evidence

6   shows that Prince pushed Plaintiff's face into the hood of a police car, there is no evidence that

7   this was motivated by Plaintiff's speech. Moreover, while Plaintiff submits evidence that *he* told

8   the officers he would not "keep [his] mouth shut," Plaintiff does not submit evidence that any

9   Defendants actually told him to shut his mouth. Viewing the evidence in the light most

10  favorable to Plaintiff, there was no First Amendment violation at the scene of Plaintiff's arrest.

11  Even if there was such a violation, the conduct at issue was not a clearly established

12  constitutional violation, and a reasonable officer could have believed such conduct was

13  constitutional. Summary adjudication is GRANTED concerning this claim.

14       Plaintiff next argues that certain Defendants violated Plaintiff's First Amendment rights

15  by "removing the Plaintiff from [a] patrol car and lifting him by his arms and ankle cuffs."

16  (Plaintiff's Chart 65:26-66:2.) Plaintiff argues that "there is substantial evidence that a . . . factor

17  in said defendants' decision to so use unreasonable force . . . was [Plaintiff's] exercise of

18  constitutionally protected speech." (Plaintiff's Chart 66:2-6.) But Plaintiff fails to identify

19  evidence that Defendants' removal of Plaintiff from the patrol car or lifting him by the arms and

20  ankle cuffs was based on Plaintiff's speech. Thus, summary adjudication is GRANTED to the

21  extent Plaintiff seeks to base a claim for First Amendment violations on the removal of Plaintiff

22  from the patrol car or lifting him by the arms and ankle cuffs.

23       Plaintiff next argues that certain Defendants' placement of Plaintiff in a medical

24  observation cell was improperly based on Plaintiff's exercise of constitutionally protected

25  speech. (Plaintiff's Chart 69:8-22.) Again, Plaintiff has not identified any evidence that the

26  placement of Plaintiff in the medical observation cell was based on Plaintiff's speech. Thus,

27  summary adjudication is GRANTED to the extent Plaintiff seeks to base a claim for First

28  Amendment violations on the placement of Plaintiff in the medical observation cell.

1   Accordingly, summary adjudication is GRANTED concerning Plaintiff's claim for First

2   Amendment violations.

3

4   **4.      PLAINTIFF'S CLAIM FOR BYSTANDER AND SUPERVISOR LIABILITY**

5

6   Now that the Court has addressed Plaintiff's primary claims for constitutional violations,

7   the Court turns to Plaintiff's claim that certain Individual Defendants who did not commit the

8   primary violations may be liable for their failure to intercede in the violations.  The Individual

9   Defendants argue that they are entitled to qualified immunity concerning Plaintiff's fourth claim,

10   which is against all Defendants for "bystander liability" under Section 1983, and Plaintiff's fifth

11   claim, which is against Fouste and Essoe for supervisor liability under Section 1983.

12   Plaintiff's entire response to this argument in his Opposition consists of a heading and a

13   citation sentence, with no textual argument, as follows:

14

15   VII.    DEFENDANTS ARE LIABLE FOR FAILING TO
     INTERVENE TO PREVENT THE USE OF UNREASONABLE
16   FORCE ON THE PLAINTIFFS BY THE OTHER DEFENDANTS
     TO THIS ACTION.
17
     *See, Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th
18   Cir. 2002)[, *affirmed by Groh v. Ramirez*, 540 U.S. 551 (2004)].

19

20   (Opp'n to Individual Defendants' Mot. 25:21-24.)

21   Contrary to Plaintiff's suggestion, *Ramirez* does not support a claim against the

22   Individual Defendants for bystander liability or supervisor liability.  *Ramirez* has only a brief

23   discussion concerning dismissal of a claim against police officers as "bystander[s] for failing to

24   intercede and prevent" alleged constitutional violations committed by other police officers.   298

25   F.3d at 1029-30.  The court upheld dismissal of the claim and did not go into particulars about

26   "bystander liability" or "supervisor liability" for the constitutional violations of other police

27   officers.  *Id.*

28

The Individual Defendants correctly state that Plaintiff's "bystander" claims are "more accurately based on a theory that a defendant failed to intercede to prevent or stop a constitutional violation." (Individual Defendants' Reply 23:7-9.) "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1446 n. 25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996). "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Id.* at 1447.

But law enforcement officers are only liable for failure to intercede if they had a "realistic opportunity" to do so. *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). If an officer is not present during a constitutional violation, or the violation happens too quickly, there may be no realistic opportunity to intercede. *See id.*; *Knapps v. City of Oakland,* 647 F. Supp. 2d 1129, 1159-60 (N.D. Cal. 2009).

With these rules in mind, the Court must look to the primary alleged constitutional violations found in Sections 2 and 3. For each violation, the Court must determine whether the Defendants other than the primary actor had a realistic opportunity to intercede and failed to do so. *See Cunningham*, 229 F.3d at 1289-90.

Concerning the Fourth Amendment excessive force claims, the only Defendant that had a reasonable opportunity to intercede in another's violation but failed to do so was Essoe. Essoe watched other deputies use potentially excessive force in the medical observation cell, and he had a realistic chance to intervene and stop that use of force. (*See* Essoe Decl. ¶¶ 7-27.) When the evidence is viewed in the light most favorable to Plaintiff, at the time of the incident, Essoe's failure to intercede was a violation of a clearly established federal right, and no reasonable officer would have thought Essoe's conduct was constitutional. *See Cunningham*, 229 F.3d at 1289-90.

Thus, summary adjudication is GRANTED to all of Plaintiff's fourth and fifth claims, except that summary adjudication is DENIED to the extent they assert a failure to intercede claim against Essoe for excessive force at the medical observation cell.

5.      **PLAINTIFF'S CLAIM FOR FALSE ARREST/FALSE IMPRISONMENT**

Plaintiff's seventh claim is for "False Arrest/False Imprisonment" under California state law.  The Individual Defendants argue that this claim must fail to the extent it is based on Fouste's "initial investigatory detention/arrest and search of" Plaintiff.  (Individual Defendants' Reply 6:23-25.)  The Court agrees concerning Fouste's initial detention and search of Plaintiff, but not concerning plaintiff's arrest.

California cases have incorporated *Heck* to bar state law claims that would imply an outstanding conviction is invalid.  *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008); *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1412-13 (2002).  Thus, Plaintiff's state law false arrest/false imprisonment claim must fail to the extent it requires establishing that Plaintiff's conviction for marijuana is invalid.

Under California law, "[t]he elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."  *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000).  The second element, "without lawful privilege," is the key here.  For Plaintiff to succeed on a false arrest/false imprisonment claim, he must show that the Individual Defendants did not have a lawful privilege to arrest or imprison him.  In other words, he must show that their arrest or imprisonment of him was unreasonable under the Fourth Amendment.  To the extent Plaintiff's false arrest/false imprisonment claim is based on Fouste's initial detention or search of Plaintiff, such a showing would necessarily imply the invalidity of Plaintiff's conviction for possession of marijuana.  *See* Section 2 *supra*.

The same is not true concerning the arrest of Plaintiff.  The Individual Defendants contend that Fouste's detention of Plaintiff ripened into an arrest before he searched Plaintiff.  (*See* Individual Defendants' Reply 10:15-23.)  But it's not clear that this is so.  *See United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990) (stating that a totality of the circumstances test governs when an investigatory detention ripens into an arrest).  As stated in Section 2.4, if

1  Plaintiff's later arrest was invalid, it would not imply the invalidity of Plaintiff's conviction for

2  marijuana, since Plaintiff could have been convicted without being arrested.

3      Thus, summary adjudication is GRANTED as to Plaintiff's false arrest/false

4  imprisonment claim to the extent it is based on Fouste's initial detention or search of Plaintiff.

5  Further, at oral argument, counsel for Defendants argued that this claim should be dismissed

6  concerning any arrest of Plaintiff that took place after Fouste searched him.  Counsel clarified,

7  while *Susag* does not bar a false arrest claim claim concerning the arrest of Plaintiff after the

8  search, the Court has found that such an arrest was reasonable under the Fourth Amendment, *see*

9  Section 1.4, so no state law false arrest claim can be based on such conduct.  This argument is

10  persuasive, and summary adjudication is GRANTED concerning the arrest of Plaintiff after

11  Fouste's initial search.  To the extent this claim is based on conduct not discussed in this

12  Section, summary adjudication is DENIED.

13

14      **7.      PLAINTIFF'S CLAIMS FOR BATTERY AND ASSAULT**

15

16      Plaintiff's eighth claim is for battery and his ninth claim is for assault.  In the

17  Individual Defendants' Motion, they make no argument that summary judgment or adjudication

18  should be granted on these claims.  In their chart, however, they assert several arguments for

19  summary adjudication on these claims.  (*See* Ds' Chart at 39-45.)  But the chart was intended to

20  clarify the issues in the pending motions, not to add new ones.  As the Individual Defendants'

21  arguments were not raised in their moving papers, or even in their reply, Plaintiff did not have

22  sufficient notice to prepare evidence or arguments opposing the Individual Defendants'

23  arguments.  Thus, summary adjudication is DENIED on these claims.

24

25      **8.      NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

26

27  Plaintiff's twelfth claim is against all Defendants for negligent infliction of emotional

28  distress.  The Individual Defendants argue that they are entitled to summary adjudication on this

1   claim because negligent infliction of emotional distress is not an independent tort from

2   negligence.  Plaintiff's eleventh claim already purports to be for negligence, and Plaintiff's

3   twelfth claim adds nothing particularly related to a claim for negligent infliction of emotional

4   distress.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993).  Thus, summary

5   adjudication is GRANTED on Plaintiff's twelfth claim.

6

7   **9.      STATE STATUTORY IMMUNITIES**

8

9         The Individual Defendants argue that some of Plaintiff's state law claims are barred under

10  California's statutory immunities found in California Government Code § 820.8 ("Section

11  820.8") and California Government Code § 821.6 ("Section 821.6").

12        The Individual Defendants first argue that Section 821.6 bars Plaintiff's claims for false

13  arrest/false imprisonment, negligence, negligent infliction of emotional distress, intentional

14  infliction of emotional distress, and violation of Civil Code § 52.1.  (Individual Defendants'

15  Mot. 23:16-18.)  This argument is unfounded.  Section 821.6 provides that "a public employee is

16  not liable for injury caused by his instituting or prosecuting any judicial or administrative

17  proceeding within the scope of his employment, even if he acts maliciously and without probable

18  cause."  Cal. Gov. Code § 821.6.  *See also Allison v. County of Ventura*, 68 Cal. App. 3d 689,

19  695 n.3 (1977) (describing scope of § 821.6).  Section 821.6 shields the Individual Defendants

20  from state law claims based on their "actions taken in preparation of . . . formal proceeding[s]"

21  against Plaintiff.  *See Tuggles v. City of Antioch*, 2009 U.S. Dist. LEXIS 92495 (N.D. Cal. Oct.

22  2, 2009).  The only remaining claim that is shielded by this protection is Plaintiff's claim for

23  negligence to the extent it is based on resolution of the inconsistent databases regarding the

24  protective orders against Plaintiff.  Summary adjudication is GRANTED as to these claims.

25        Section 820.8 states that, "[e]xcept as otherwise provided by statute, a public employee is

26  not liable for an injury caused by the act or omission of another person.  Nothing in this section

27  exonerates a public employee from liability for injury proximately caused by his own negligent

28  or wrongful act or omission."  The Individual Defendants argue that this provision precludes

liability.  The Court disagrees and finds that Section 820.8 does not bar any of Plaintiff's claims that otherwise survive summary judgment, because such claims are based on actual acts or omissions.  For example, the failure to intervene in another officer's use of excessive force is in independent omission, and not a claim prohibited by Section 820.8.

**10.    ARGUMENTS CONCERNING INDIVIDUAL OFFICERS**

The Individual Defendants argue that "it is undisputed that [Kurimay] was not present or otherwise involved in either the patrol incident or the jail incident," so "each of Plaintiff's claims against [Kurimay] must fail on this basis alone."  (Individual Defendants' Mot. 4:12-15 (citing PMF ¶¶ 181, 183).)  Plaintiff does not respond to this argument in his Opposition.  Further, in Plaintiff's chart, Plaintiff does not offer any argument that Kurimay is liable for any claim.  Moreover, the evidence submitted shows no triable issue of fact concerning any theory on which Kurimay may be liable.  The Individual Defendants' Motion is GRANTED as to the claims against Kurimay.

The Individual Defendants also argue that Kunar was not involved in any incident so all claims against him should be dismissed.  The Court agrees.  Kunar was not involved in any incident to an extent sufficient to make him liable on any of Plaintiff's claims.  The Individual Defendants' Motion is GRANTED as to the claims against Kunar.

**11.    CONCLUSION**

The Individual Defendants' Motion is GRANTED IN PART and DENIED IN PART.

**ANALYSIS OF THE COUNTY'S MOTION**

Plaintiff contends that Defendants County and Carona are liable for the constitutional violations that survive the Individual Defendants' Motion.  The County and Carona, in their

1  Motion, argue that all claims against them should be dismissed.  The Court agrees with them.

2      Plaintiff asserts claims based on (1) alleged constitutional violations, and (2) theories of

3  state law liability.  Neither type of claim survives.

4      Plaintiff's constitutional claims fail.  Under *Monell v. New York Department of Social*

5  *Services*, 436 U.S. 658, 690 (1978), "a municipality cannot be held liable solely because it

6  employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a

7  respondeat superior theory."  To establish liability under *Monell*, a plaintiff must establish that

8  the unconstitutional acts of government employees "represent official policy."  *Id*. at 694.

9      The crux of this analysis is that plaintiff must demonstrate proof of a custom or policy.

10  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under

11  *Monell*, unless proof of the incident includes proof that it was caused by an existing,

12  unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."

13  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality).  "Otherwise the existence of

14  the unconstitutional policy, and its origin, must be separately proved."  *Id*. at 824; *see also Davis*

15  *v. Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989) ("a plaintiff cannot prove the existence of

16  a municipal policy or custom based solely on the occurrence of a single incident of

17  unconstitutional action by a nonpolicy making employee.").

18      Under these standards, Plaintiff fails to show sufficient evidence to establish an

19  unconstitutional municipal policy.  Plaintiff makes much of certain officers' statements that the

20  conduct shown on the video evidence in this case conformed to the policies of Orange County.

21  (*See* Opp'n to County's Motion 14:25-17:26.)  But the videos are largely inconclusive.  They do

22  not show as a matter of law that Plaintiff was subjected to unreasonable force.  All that the Court

23  found in analyzing the Individual Defendants' Motion was that the videos, *when viewed in the*

24  *light most favorable to Plaintiff*, do not contradict his version of the events and establish

25  potential excessive force violations.

26      Plaintiff also points to other isolated incidents of potential constitutional violations.  (*See*

27  Opp'n to County's Mot. 6:7-7:9, 17:26-19:14.)  But these incidents are not attributable to any

28  policymaker, and they are insufficient to impose *Monell* liability.  *See Tuttle*, 471 U.S. at 823-24.

1       And Plaintiff also claims that the County's policies regarding Tasers were unreasonable

2  and caused the potentially excessive force against Plaintiff.  But these policies instructed to

3  comply with constitutional standards, for example, stating that tasers may be used only to control

4  or subdue violent or potentially violent subjects under objectively reasonable circumstances.

5  (*See, e.g.*, Plaintiff's Exhibit JJJ.)

6       Plaintiff has failed to provide sufficient evidence to survive summary judgment on his

7  *Monell* claims.

8       Further, Plaintiff fails to establish that the County or Carona may be liable under any state

9  law theories of liability.  Indeed, Plaintiff's Opposition to the County's Motion contains no

10  argument that Plaintiff's state law claims can survive.

11       Thus, the County's Motion is GRANTED.

12

13  **DISPOSITION**

14

15       The Individual Defendants' Motion is GRANTED IN PART and DENIED IN PART.

16  The County's Motion is GRANTED.

17

18

19  IT IS SO ORDERED.

20  DATED: August 18, 2010

21

22                       Andrew J. Guilford

23                   United States District Judge

24

25

26

27

28